# Hacker Declaration

# Exhibit 2
## 2002 RISPE

# 30 YEAR TREASURY AMENDMENT TO RISPE DATED 2002

## Certification of Resolution
## Instrument Adopting Plan Restatements

WHEREAS, MONY Life Insurance Company (the "Company") sponsors the (1) Retirement Plan For Field Underwriters of the Mutual Life Insurance Company of New York (the "FURP"), (2) Investment Plan Supplement For Employees of the Mutual Life Insurance Company of New York (the "MIP"), and (3) Retirement Income Security Plan For Employees of the Mutual Life Insurance Company of New York (the "RISPE"), collectively the Plans;

WHEREAS, the Benefits Committee of the Board of Trustees of the Company (the "Administrative Committee") of the Plans, or its delegate, has the authority to amend the Plans;

WHEREAS, the Administrative Committee has delegated its amendment authority regarding restatement of the Plans to the Secretary of the Benefit Plans Administration Committee; and

WHEREAS, the Administrative Committee and its delegate desire to restate the Plans to (1) incorporate all prior amendments to the January 1, 1994 plan documents, (2) comply with the applicable provisions of GUST (as defined in Revenue Procedure 2001-55), the Economic Growth and Tax Relief Reconciliation Act of 2001, and other applicable administrative guidance, (3) reflect the merger of the Investment Plan Supplement for Field Underwriters of MONY Life Insurance Company into the MIP, (4) reflect the name change from the Mutual Life Insurance Company of New York to MONY Life Insurance Company, and (5) make other miscellaneous administrative changes to reflect current operations of the Plans.

THEREFORE, in consideration of the foregoing, the Plans are hereby amended and restated in their entirety, in the form attached hereto in Exhibits A, B, and C.

IN WITNESS WHEREOF, this Instrument has been executed by a duly authorized delegate of the Administrative Committee on this 26th day of June, 2002.

MONY LIFE INSURANCE COMPANY

By: _____
    Robert Beecroft, Secretary,
    Benefits Plan Administration Committee

**EXHIBIT C**

RETIREMENT INCOME SECURITY PLAN FOR EMPLOYEES OF
<u>MONY LIFE INSURANCE COMPANY</u>
As Amended and Restated through January 1, 2001

Retirement Income Security Plan for Employees of
MONY Life Insurance Company

## Table of Contents

Page

PURPOSE OF PLAN ........................................................................................ 1

SECTION 1. DEFINITIONS ............................................................................ 3
    1.1    Account Balance .................................................................... 3
    1.2    Accrued Benefit .................................................................... 3
    1.3    Actuarial Equivalent ............................................................ 3
    1.4    Actuary ................................................................................. 5
    1.5    Administrator ....................................................................... 5
    1.6    Affiliate ................................................................................ 5
    1.7    Allocable Income/Loss ........................................................ 6
    1.8    Average Contribution Percentage ....................................... 6
    1.9    Beneficiary ........................................................................... 6
    1.10    Benefit Commencement Date .............................................. 6
    1.11    Benefits Committee .............................................................. 6
    1.12    Board of Directors ............................................................... 7
    1.13    BPAC .................................................................................... 7
    1.14    Break in Service .................................................................. 7
    1.15    Career Contract ................................................................... 8
    1.16    Cash Balance Account ........................................................ 8
    1.17    CIS Employee ...................................................................... 8
    1.18    Code ...................................................................................... 9
    1.19    Company ............................................................................... 9
    1.20    Company Contribution ........................................................ 9
    1.21    Company Contribution Subaccount ..................................... 9
    1.22    Compensation ...................................................................... 9
    1.23    Contribution Percentage .................................................... 12
    1.24    Covered Compensation ...................................................... 12
    1.25    Defined Benefit .................................................................. 13
    1.26    Defined Benefit Plan ......................................................... 13
    1.27    Defined Contribution ......................................................... 13
    1.28    Defined Contribution Plan ................................................. 14
    1.29    Defined Contribution Subaccount ..................................... 14
    1.30    Disability or Disabled ....................................................... 14
    1.31    Disability Commencement Date ........................................ 15
    1.32    Early Retirement Age ........................................................ 15
    1.33    Early Retirement Date ....................................................... 15
    1.34    Effective Date .................................................................... 15
    1.35    Eligible Employee ............................................................. 15
    1.36    Employee ............................................................................ 16
    1.37    Employer ............................................................................ 17
    1.38    Employer Contribution Account ........................................ 17
    1.39    Employer Stock .................................................................. 17
    1.40    Employment ....................................................................... 17
    1.41    Employment Commencement Date .................................... 17
    1.42    ERISA ................................................................................ 18

Retirement Income Security Plan for Employees of
MONY Life Insurance Company

## Table of Contents

Page

| | | |
|---|---|---|
| 1.43 | Excess Aggregate Contributions | 18 |
| 1.44 | Excess Pension Assets | 18 |
| 1.45 | Field Underwriter | 18 |
| 1.46 | Final Average Salary | 18 |
| 1.47 | Fresh Start Date | 19 |
| 1.48 | Health Benefits Account | 20 |
| 1.49 | Highly Compensated Employee | 20 |
| 1.50 | Hour of Service | 20 |
| 1.51 | Investment Fund | 21 |
| 1.52 | Investment Manager | 22 |
| 1.53 | IRS | 22 |
| 1.54 | IRS Regulations | 22 |
| 1.55 | Labor Department | 22 |
| 1.56 | Leave of Absence | 22 |
| 1.57 | MIP | 22 |
| 1.58 | Non-Highly Compensated Employee | 22 |
| 1.59 | Normal Retirement Age | 23 |
| 1.60 | Normal Retirement Date | 23 |
| 1.61 | Paid Through Date | 23 |
| 1.62 | Part-Time Employee | 23 |
| 1.63 | Participant | 23 |
| 1.64 | Participating Affiliate | 24 |
| 1.65 | PBGC | 24 |
| 1.66 | Plan | 24 |
| 1.67 | Plan Year | 24 |
| 1.68 | Qualified Joint and Survivor Annuity | 24 |
| 1.69 | Qualified Preretirement Survivor Annuity | 25 |
| 1.70 | Qualified Transfer | 25 |
| 1.71 | Required Beginning Date | 25 |
| 1.72 | Retirement Date | 26 |
| 1.73 | Service | 26 |
| 1.74 | Spousal Consent | 27 |
| 1.75 | Spouse | 28 |
| 1.76 | SSIB | 28 |
| 1.77 | Straight Life Annuity | 28 |
| 1.78 | Surviving Spouse | 28 |
| 1.79 | Termination from Service | 28 |
| 1.80 | Trust Agreement | 29 |
| 1.81 | Trust | 29 |
| 1.82 | Trustee | 29 |
| 1.83 | Valuation Date | 29 |
| 1.84 | Year of Benefit Accrual Service | 29 |
| 1.85 | Year of Vesting Service | 30 |

| SECTION 2. | PARTICIPATION | 31 |
|---|---|---|
| 2.1 | Initial Participation Prior to January 1, 2001 | 31 |

Retirement Income Security Plan for Employees of
MONY Life Insurance Company

## Table of Contents

|  |  | Page |
|---|---|---|
| 2.2 | Initial Participation On or After January 1, 2001 | 31 |
| 2.3 | Termination of Participation | 31 |
| **SECTION 3.** | **ACCRUED BENEFIT** | 32 |
| 3.1 | Calculation | 32 |
| 3.2 | Cost of Living Adjustments | 33 |
| 3.3 | Grandfathered Benefit | 34 |
| 3.4 | Early Retirement | 35 |
| 3.4.1 | Early Retirement Adjustment Factor | 35 |
| 3.4.2 | Supplement | 37 |
| 3.4.3 | Deferral | 38 |
| 3.5 | Fresh Start Rules | 38 |
| 3.5.1 | Definitions | 38 |
| 3.5.2 | Benefit | 39 |
| 3.6 | Disability Before Retirement | 40 |
| 3.7 | Reduction for Prior Service | 40 |
| 3.8 | Employer Contribution Account | 40 |
| 3.9 | Investment of Employer Contribution Accounts | 41 |
| 3.9.1 | Direction of Investments | 41 |
| 3.9.2 | Default Investment Option | 42 |
| 3.9.3 | Costs and Charges | 42 |
| 3.9.4 | Transfers Between Funds | 43 |
| 3.9.5 | Valuation of Employer Contribution Accounts | 44 |
| 3.10 | Employer Contribution Account Report | 44 |
| 3.11 | Cash Balance Accounts | 45 |
| 3.11.1 | Applicability | 45 |
| 3.11.2 | Establishment of Account | 45 |
| 3.11.3 | Crediting of Accounts | 46 |
| 3.11.4 | Value of Cash Balance Accounts | 46 |
| 3.12 | Contribution Percentage Test | 46 |
| 3.12.1 | Aggregation of Contributions | 47 |
| 3.13 | Distribution of Excess Aggregate Contributions | 47 |
| **SECTION 4.** | **CODE SECTION 415 LIMITATION ON BENEFITS AND ALLOCATIONS** | 49 |
| 4.1 | General Rule | 49 |
| 4.2 | Incorporation of Code Section 415 Limits | 49 |
| 4.3 | Adjustment to Benefits Due to Increase in Code Section 415 Limits | 49 |
| 4.4 | Participation in Multiple Qualified Plans | 49 |
| **SECTION 5.** | **RETIREMENT** | 51 |
| 5.1 | Normal Retirement | 51 |
| 5.2 | Early Retirement | 51 |
| 5.3 | Late Retirement | 51 |
| 5.4 | Vested Termination | 51 |

Retirement Income Security Plan for Employees of
MONY Life Insurance Company

## Table of Contents

| | | Page |
|---|---|---|
| SECTION 6. | ELIGIBILITY FOR DISTRIBUTIONS | 52 |
| 6.1 | Distribution Upon Retirement | 52 |
| 6.2 | Distribution Upon Death | 52 |
| | 6.2.1   Death After Commencement of Benefits | 52 |
| | 6.2.2   Death Prior to Commencement of Benefits | 53 |
| 6.3 | Distribution Prior to Normal and Early Retirement Age | 55 |
| 6.4 | Benefit Upon Disability | 56 |
| 6.5 | Cash Outs and Notice of Right to Elect Optional Benefit Forms | 56 |
| | 6.5.1   Benefit Less Than or Equal to $3,500 | 56 |
| | 6.5.2   Benefit Greater Than $3,500 | 57 |
| 6.6 | Loan Provisions | 58 |
| SECTION 7. | VESTING PROVISIONS | 63 |
| 7.1 | Determination of Vesting | 63 |
| | 7.1.1   General Rule | 63 |
| | 7.1.2   Early Retirement Age and Normal Retirement Age | 63 |
| | 7.1.3   Disability | 63 |
| | 7.1.4   Plan Termination | 63 |
| | 7.1.5   Death While an Employee | 64 |
| 7.2 | Employer Contribution Account | 64 |
| 7.3 | Code Section 420 Qualified Transfer | 64 |
| 7.4 | Aegon Transaction | 64 |
| 7.5 | CSC Transaction | 65 |
| 7.6 | Rules for Crediting Vesting Service | 65 |
| | 7.6.1   General Rule | 65 |
| | 7.6.2   Special Rules | 65 |
| 7.7 | Change in Vesting Schedule | 67 |
| SECTION 8. | TOP HEAVY PROVISIONS | 68 |
| 8.1 | General Rule | 68 |
| 8.2 | Definitions | 68 |
| 8.3 | Top Heavy Vesting | 72 |
| 8.4 | Top Heavy Accrual | 72 |
| 8.5 | RESERVED | 73 |
| 8.6 | Other Plans | 73 |
| SECTION 9. | METHOD OF PAYMENT OF BENEFITS | 74 |
| 9.1 | Normal Form | 74 |
| 9.2 | Optional Forms | 74 |
| 9.3 | Limitations on Optional Forms | 76 |
| | 9.3.1   Combination of Fixed and Variable Annuities | 76 |
| | 9.3.2   Combination of Lump Sums and Annuities | 76 |
| 9.4 | Basis of Annuity Income | 76 |
| 9.5 | Qualified Preretirement Survivor Annuity | 77 |
| 9.6 | Spouse/Survivors Income Benefit | 78 |

Retirement Income Security Plan for Employees of
MONY Life Insurance Company

Table of Contents

Page

9.7  Required Beginning Date .................................................................. 79
9.8  Small Benefits and Cashouts ............................................................ 82
9.9  Suspension of Benefits .................................................................... 83
9.10 Time of Distribution ...................................................................... 84
9.11 Direct Rollover .............................................................................. 84
9.12 Restrictions On Benefits for Highly Compensated Employees ........... 85

SECTION 10. PLAN ADMINISTRATION ............................................... 87
  10.1  Benefits Committee ..................................................................... 87
        10.1.1 General ............................................................................ 87
        10.1.2 Named Fiduciary .............................................................. 87
        10.1.3 Membership ...................................................................... 88
  10.2  Benefit Plans Administration Committee (BPAC) ......................... 89
        10.2.1 General ............................................................................ 89
        10.2.2 Membership ...................................................................... 90
  10.3  Administrator .............................................................................. 90
  10.4  Powers of the Benefits Committee, BPAC, and Administrator .......... 92
  10.5  Authorization .............................................................................. 93
  10.6  Dual Capacity Fiduciaries ............................................................ 94
  10.7  Allocation or Delegation of Fiduciary Responsibility ...................... 95
  10.8  Domestic Relations Orders ........................................................... 95
  10.9  Payment of Expenses .................................................................... 97
  10.10 Claims Procedure ........................................................................ 98
        10.10.1      Claims Denial Procedure .......................................... 98
        10.10.2      Claims Appeal Procedure ......................................... 99
  10.11 Beneficiaries .............................................................................. 100
        10.11.1 General Rule .................................................................... 101
        10.11.2      Special Rule for Surviving Spouses .......................... 101
  10.12 Correction of Mistaken Payments ................................................ 101

SECTION 11. PLAN INVESTMENTS AND TRUST FUND ...................... 103
  11.1  Establishment of Trust ................................................................. 103
  11.2  Trustee ....................................................................................... 103
        11.2.1 Authority .......................................................................... 103
        11.2.2 Administration of Authority ............................................... 103
  11.3  Plan Investments ......................................................................... 104
        11.3.1 General ............................................................................ 104
        11.3.2 Investment Funds .............................................................. 105
        11.3.3 Direction of Account Balances ........................................... 106
  11.4  Voting and Tender Offers .............................................................. 106
  11.5  Investment Managers .................................................................... 106

SECTION 12. PARTICIPATION IN THE PLAN BY AN AFFILIATE ........ 109
  12.1  Evidence of Participation ............................................................. 109
  12.2  Requirements of Participating Affiliates ........................................ 109
  12.3  Agency Appointment .................................................................... 110

Retirement Income Security Plan for Employees of
MONY Life Insurance Company

Table of Contents

| | | Page |
|---|---|---|
| 12.4 | Transfer Between Affiliates and Participating Affiliates | 110 |
| 12.5 | Discontinuance of Participation | 110 |
| 12.6 | Authority for Administrator Actions | 111 |
| | | |
| **SECTION 13. PLAN AMENDMENT OR TERMINATION** | | 112 |
| 13.1 | Plan Amendment Procedure | 112 |
| | 13.1.1 General | 112 |
| | 13.1.2 Procedure | 113 |
| 13.2 | Complete or Partial Plan Termination | 113 |
| | 13.2.1 Right to Terminate the Plan | 113 |
| | 13.2.2 Vesting on Termination | 113 |
| | 13.2.3 Procedure on Termination | 113 |
| | 13.2.4 Distribution of Benefits on Plan Termination | 114 |
| | | |
| **SECTION 14. HEALTH BENEFITS ACCOUNT AND QUALIFIED TRANSFER** | | 116 |
| 14.1 | Establishment of Health Benefits Account | 116 |
| 14.2 | Definitions | 116 |
| | 14.2.1 Qualified Current Retiree Health Liabilities | 116 |
| | 14.2.2 Applicable Health Benefits | 116 |
| | 14.2.3 Qualified Transfer | 116 |
| | 14.2.4 Excess Pension Assets | 116 |
| | 14.2.5 Health Benefits Account | 117 |
| | 14.2.6 Maintenance Period | 117 |
| 14.3 | Benefits Payable From the Health Benefits Account | 117 |
| 14.4 | Contributions | 117 |
| 14.5 | Diversion of Health Benefits Account Contributions | 118 |
| 14.6 | Priority of Payment | 118 |
| 14.7 | Limitation on Transfers | 118 |
| 14.8 | Special Vesting | 119 |
| 14.9 | Minimum Cost and Benefit Requirements | 119 |
| | | |
| **SECTION 15. MISCELLANEOUS PROVISIONS** | | 121 |
| 15.1 | Indemnification | 121 |
| 15.2 | Exclusive Benefit of Participants | 122 |
| 15.3 | Plan Not a Contract of Employment | 123 |
| 15.4 | Source of Funding and Benefits | 123 |
| 15.5 | Benefits Not Assignable | 123 |
| 15.6 | Benefits Payable to Minors, Incompetents and Others | 124 |
| 15.7 | Transfers Between Field Underwriter and Eligible Employee Status | 124 |
| 15.8 | Merger or Transfer of Assets | 125 |
| | 15.8.1 General Rule | 125 |
| | 15.8.2 Protection of Benefits | 125 |
| 15.9 | Action by Employer | 126 |
| 15.10 | Provision of Information | 126 |
| 15.11 | Controlling Law | 126 |
| 15.12 | Place of Payment | 126 |

Retirement Income Security Plan for Employees of
MONY Life Insurance Company

Table of Contents

Page

15.13  Singular and Plural and Article and Section References ...................127
15.14  Notice ...................................................127
15.15  Required Information ...........................................128
15.16  Validity of Provisions ...........................................128
15.17  Mistake of Fact ...............................................128
15.18  Lost Payees ..................................................129
15.19  Legal Service ................................................129
15.20  Military Service ..............................................129
15.21  Electronic Administration .......................................130

APPENDIX 1.  VOLUNTARY ENHANCED RETIREMENT PROGRAM ..........................1
A1.1   Definitions ....................................................1
A1.2   Temporary and Limited Application of this Section ....................3
A1.3   Elections ......................................................4
A1.4   Computation of Benefits Under the Program .........................6
A1.5   Miscellaneous .................................................9

APPENDIX 2.  PENSION ENHANCEMENT PROGRAM ...............................1
A2.1   Definitions ....................................................1
A2.2   Limited Application of this Section ................................3
A2.3   Elections ......................................................3
A2.4   Computation of Benefits Under the Program .........................5
A2.5   Miscellaneous .................................................8

APPENDIX 3.  VOLUNTARY ENHANCED RETIREMENT BENEFITS ...................1
A3.1   Definitions ....................................................1
A3.2   Temporary and Limited Application of this Section ....................2
A3.3   Elections ......................................................3
A3.4   Computation of Benefits Under the Program .........................5
A3.5   Miscellaneous .................................................9

APPENDIX 4.  VOLUNTARY ENHANCED PENSION PROGRAM .....................1
A4.1   Definitions ....................................................1
A4.2   Temporary and Limited Application of this Section ....................4
A4.3   Elections ......................................................5
A4.4   Computation of Benefits Under the Program .........................7
A4.5   Miscellaneous .................................................11

APPENDIX 5.  HISTORICAL PROVISIONS .....................................1
A5.1   Participation – Participation for Employees Hired After 1975 and Prior
       to 1985 .......................................................1
A5.2   Participation – Participation for Employees Hired After 1984 and Prior
       to 1989 .......................................................2
A5.3   Participation – Participation for Employees Hired After 1989 and Prior
       to August 26, 1999 .............................................3

Retirement Income Security Plan for Employees of
MONY Life Insurance Company

## Table of Contents

Page

A5.4 Participation – Participation for Employees Hired On or After August 26, 1999 and Prior to January 1, 2001 ...... 4
A5.5 Accrued Benefit – Calculation After January 1, 1989 and Prior to January 1, 1994 ...... 4
A5.6 Employer Contributions to Participants' Employer Contribution Accounts On or Prior to May 28, 1999 ...... 5

APPENDIX 6. GUST AMENDMENTS ...... 1
A6.1 Repeal of Family Aggregation Rules – Compensation ...... 1
A6.2 Change in Definition of Actuarial Equivalent for GATT ...... 1
A6.3 Repeal of Family Aggregation Rules – Excess Aggregate Contributions ...... 3
A6.4 Repeal of Family Aggregation Rules – Family Member ...... 3
A6.5 Modification of Definition of Highly Compensated Employee ...... 3
A6.6 Repeal of Family Aggregation Rules – Non-Highly Compensated Employee ...... 4
A6.7 Switch to Prior Year Testing for ACP Test ...... 4
A6.8 Repeal of Family Aggregation Rules – ACP Test ...... 5
A6.9 Repeal of Code Section 415(e) – 415 Limits ...... 5
A6.10 Repeal of Code Section 415(e) – Top Heavy Rules ...... 6
A6.11 Implementation of Permissible Waiver of Plan Distribution Waiting Period ...... 6

APPENDIX 7. EGTRRA "GOOD FAITH" AMENDMENTS ...... 1
A7.1 Preamble ...... 1
A7.2 Increase in Compensation Limit ...... 1
A7.3 Limitations on Benefits ...... 2
A7.4 Modification of Top Heavy Rules ...... 5

PURPOSE OF PLAN

The Retirement Income Security Plan for Employees of MONY Life Insurance Company was established on October 10, 1946.  This amendment and restatement of the Plan is generally effective January 1, 2001.  Notwithstanding the general effective date of this restatement, certain Plan sections shall be effective as indicated in Appendix 6 to the Plan.

Effective November 16, 1998, the Mutual Life Insurance Company of New York changed its name to MONY Life Insurance Company.  Prior to this name change, the Plan was known as the Retirement Income Security Plan for Employees of The Mutual Life Insurance Company of New York.

The purpose of the Plan is to provide retirement benefits and certain other benefits to eligible employees of the MONY Life Insurance Company and its Participating Affiliates and to the beneficiaries of such eligible employees, and thereby to encourage employees to make and continue careers with MONY Life Insurance Company, all as set forth herein and in the Trust Agreement adopted as a part of the Plan.  The Plan, as hereby amended, and the Trust established hereunder, are intended to qualify as a defined benefit plan with an individual account feature and a trust which meet the requirements of Code Sections 401(a), 401(h) and 501(a), respectively or any other applicable provisions of law.

The Plan was previously amended to comply with the Tax Reform Act of 1986, the Omnibus Budget Reconciliation Act of 1986, the Omnibus Budget Reconciliation Act of 1987, the Tax and Miscellaneous Revenue Act of 1988, the Omnibus Budget

Reconciliation Act of 1989, the Omnibus Reconciliation Act of 1990, the Unemployment Compensation Amendments Act of 1992, and the Omnibus Budget Reconciliation Act of 1993. The Plan was previously amended and restated in its entirety, effective January 1, 1994. The Plan is hereby amended and restated effective January 1, 2001 (unless otherwise provided herein) to comply with GUST (as defined in Rev. Proc. 2001-55) and to include "good faith" provisions of the Economic Growth and Tax Relief Reconciliation Act of 2001 (see Section 16) as required by IRS Notice 2001-42.

The rights of any person who Terminated from Service or who retired on or before the effective date of a particular amendment, including his or her eligibility for benefits and the time and form in which benefits, if any, will be paid, shall be determined solely under the terms of the Plan as in effect on the date of his or her Termination from Service or retirement, unless such person is thereafter reemployed and again becomes a participant or unless otherwise made applicable to former employees.

## SECTION 1.  DEFINITIONS

When used herein these terms shall have the following meanings:

1.1     Account Balance

Account Balance means the value of a Participant's Employer Contribution Account determined as of the applicable Valuation Date.

1.2     Accrued Benefit

Accrued Benefit means the value of a Participant's Defined Benefit and Employer Contribution Account under the Plan expressed as a Straight Life Annuity determined according to the terms of the Plan.

1.3     Actuarial Equivalent

Actuarial Equivalent means an amount of equivalent value when computed using the following assumptions:

(a)     For purposes of determining lump sum distributions and for all other payment forms subject to Code Section 417(e) (as described in Sections 3.11.4, 6.2.2, 6.3, 6.5.1, 9.2, 9.6, and 9.8), payable to Participants who commence payments after December 31, 1999, Actuarial Equivalent value shall be calculated using the following assumptions:

Applicable Mortality Table:     The 1983 Group Annuity Mortality Table as modified and set forth under IRS Revenue Ruling 95-6 or such other mortality table as prescribed by the Secretary of the Treasury under Code Section 417(e).

Applicable Interest Rate:         The annual rate of interest on 30-year Treasury securities, as specified in guidance published by the IRS for the fourth full calendar month preceding the Plan Year containing the Benefit Commencement Date.

(b)     Notwithstanding the foregoing, for each lump sum distribution and for all other payment forms subject to Code Section 417(e) (as described in Sections 3.11.4, 6.2.2, 6.3, 6.5.1, 9.2, 9.6, and 9.8), with a date of payment after December 31, 1999, but before January 1, 2001, Actuarial Equivalent value shall be the greater of (i) the amount determined by using the Applicable Interest Rate and the Applicable Mortality Table described in (a) and (ii) the amount determined using an annual rate of interest on 30-year Treasury securities, as specified in guidance published by the IRS for the fourth full calendar month preceding the Benefit Commencement Date and the Applicable Mortality Table described in (a).

(c)     Actuarial Equivalence for all other purposes:

For all other purposes under the Plan, Actuarial Equivalent value shall be calculated using the following assumptions:

Mortality:         The 1951 Group Annuity Table Projected to 1972 by Scale C, with a 3-year set back for both males and females

Interest Rate:         An interest rate of 7% per year compounded

- 4 -

annually

1.4   Actuary

Actuary means the enrolled actuary (within the meaning of the ERISA) engaged by the Administrator.

1.5   Administrator

Administrator means the BPAC, or such other person or committee designated by the Benefits Committee to be the Administrator.

1.6   Affiliate

Affiliate means any corporation or unincorporated trade or business (other than the Company), whether domestic or foreign, while it is:

    (a)    a member of a controlled group of corporations (within the meaning of Code Section 414(b)) of which the Company is a member; provided, however, that for purposes of Sections 4 and 8, the phrase "more than 50%" shall be substituted for the phrase "at least 80%" wherever the latter phrase appears in Code Section 1563(a)(1);

    (b)    a trade or business under "common control" (within the meaning of Code Section 414(c)) with the Company; provided, however, that for purposes of Sections 4 and 8, the phrase "more than 50%" shall be substituted for the phrase "at least 80%" wherever the latter phrase appears in Code Section 1563(a)(1);

    (c)    a member of an "affiliated service group" (within the meaning of Code

Section 414(m));

(d)     any other entity required to be aggregated with the Company under Code Section 414(o).

1.7     Allocable Income/Loss

Allocable Income/Loss means with respect to any Excess Contributions or Excess Aggregate Contributions which must be returned to a Participant or forfeited under Section 3, the income or loss allocable to such contributions, determined in accordance with applicable regulations, for (a) the year with respect to which the applicable limitation applies, and (b) the period between the end of such year and the date returned to the Participant or forfeited.

1.8     Average Contribution Percentage

Average Contribution Percentage means for any group of Participants the average (expressed as a percentage to the nearest 1/100th of 1%) of the Contribution Percentage for each of the Participants in that group, including those Participants on whose behalf Company Contributions are not being made.

1.9     Beneficiary

Beneficiary means the person or persons designated pursuant to Section 10.11.

1.10    Benefit Commencement Date

Benefit Commencement Date  means the date as of which a Participant receives or begins to receive payment of his or her benefits under the Plan.

1.11    Benefits Committee

Benefits Committee means the Benefits Committee of the Board of Directors, or such other committee as the Board of Directors may name to act on its behalf with respect to the Plan from time to time.

1.12    Board of Directors

Board of Directors means the Board of Directors of the Company.

1.13    BPAC

BPAC means the Benefit Plans Administration Committee or such other committee as the Benefits Committee may from time to time designate to have day to day responsibility for Plan administrative matters. If no BPAC or other committee is established, the responsibility and authority provided to the BPAC in this Plan is reserved to the Benefits Committee.

1.14    Break in Service

Break in Service shall mean one or more consecutive twelve-month periods measured from a Participant's Employment Commencement Date, and each anniversary thereof, during which an Employee does not complete at least 501 Hours of Service; provided, however, that a Break in Service shall not include any Plan Year during which the Employee was on Leave of Absence if the Employee returns to service with the Company or an Affiliate immediately following the end of the Leave of Absence. If the Employee does not return to Service with the Company or an Affiliate immediately following the end of the Leave of Absence, such Leave of Absence shall not prevent a Break in Service in any Plan Year in which the Employee does not complete at least 501

- 7 -

Hours of Service.  Solely for the purpose of determining whether a Break in Service has occurred, an Employee who is absent from work for any period by reason of:  (i) the Employee's pregnancy; (ii) the birth of a child of the Employee; (iii) the placement of a child with the Employee for adoption by such Employee; or (iv) caring for such child immediately following such birth or adoption, shall be credited with the lesser of (1) the Hours of Service which would normally have been credited to the Employee but for such absence, or if the Administrator is unable to determine such hours, 10 hours per day of such absence, or (2) 501 hours; provided, that if such absence spans more than one Plan Year, such hours shall be credited in either the Plan Year in which such absence commenced (if the Employee would thereby be prevented from incurring a Break in Service) or in the immediately following Plan Year.  Additionally, no leave granted pursuant to the Family and Medical Leave Act of 1993 shall be considered in determining whether a Break in Service has occurred.

1.15   Career Contract

Career Contract means a benefits bearing contract between a person and an Employer under which the person performs services as a full-time life insurance salesperson.

1.16   Cash Balance Account

Cash Balance Account means the cash balance account established for a CIS Employee pursuant to Section 3.11.2.

1.17   CIS Employee

CIS Employee means a Corporate Information Systems Department Employee who Terminated from Service and commenced with CSC, Inc. as of January 1, 1995 because of the outsourcing of such Employee's position.

1.18   Code

Code means the Internal Revenue Code of 1986, as now in effect or as amended hereafter.  A reference to a specific provision of the Code shall include such provision and any applicable regulations pertaining thereto.

1.19   Company

Company means MONY Life Insurance Company or any successor legal entity. Prior to November 16, 1998, the Company was known as the Mutual Life Insurance Company of New York.

1.20   Company Contribution

Company Contribution means any contribution and/or allocation to the Plan by the Employer which was allocated to a Participant's Company Contribution Subaccount in accordance with Section 3.8, for the purpose of matching a Participant's contributions to the MIP at a rate of 100% of the Participant's contributions to the MIP in each payroll period, up to a maximum of 3% of Compensation for each payroll period.

1.21   Company Contribution Subaccount

Company Contribution Subaccount means the separate subaccount that was established for a Participant pursuant to Section 3.8.

1.22   Compensation

(a)      General Rule

Compensation means a Participant's rate of salary, actually paid during the month

from the Employer, including "benefits bearing" incentive compensation, any salary

reduction amounts contributed pursuant to a Section 132(f)(4) plan, any salary reduction

amounts contributed pursuant to a cafeteria plan established by an Employer under Code

Section 125 and any 401(k) elective deferrals.  Compensation does not include expense

reimbursements, overtime, fringe benefits, any amounts contributed to or payable from a

non-qualified retirement program, amounts payable under an equity-based compensation

program (including any stock options, restricted stock or other stock-based

compensation), moving expenses, tuition reimbursements, prizes from contests, hiring

and referral bonuses, Employer paid group life insurance premiums, disability or other

welfare benefits received under the Security Plan for Employees of MONY Life

Insurance Company, commissions paid to dual capacity Employees, and other

extraordinary compensation.

(b)      Special Definition of Compensation for Certain Code Requirements

(i)      Compensation for purposes of Sections 1.23, 1.43 and 1.49 of the

Plan for any Plan Year means wages reported in box 1 of Form W-2 for such Plan

Year, plus any elective deferrals (as defined in Code Section 402(e)(3)), and,

effective January 1, 1998, any amount which is contributed or deferred by the

Employer at the election of the Employee which is not includible in gross income

of the Employee by reason of Code Sections 125, 457, or, effective January 1,

2001, 132(f)(4).

(ii)    Compensation for purposes of Sections 4, 8 and 9.12 of the Plan means compensation as defined in Code Section 415(c)(3) and IRS Regulation § 1.415-2(d).  Effective January 1, 1998, Compensation paid or made available during such Limitation Year shall include any elective deferral (as defined in Code Section 402(e)(3)), and any amount which is contributed or deferred by the Employer at the election of the Employee which is not includible in gross income of the Employee by reason of Code Section 125, 457, or, effective January 1, 2001, 132(f)(4).

(c)    Section 401(a)(17) Limitation

Notwithstanding any provision of this Section to the contrary, Compensation taken into account for a Participant as of any date of determination for any 12-month period commencing on or after January 1, 1994 for the calculation of benefit accruals under Section 3, Final Average Salary under Section 1.46, and Contribution Percentage under Section 1.23 shall not exceed $150,000 or such adjusted amount as may be prescribed for such averaging period for determining Final Average Salary pursuant to Code Section 401(a)(17) and the related rulings and regulations.

(d)    Part-Time Employees

For purposes of subsection (a) of this Section, a Part-Time Employee's Compensation shall be the greater of (i) and (ii) as follows:

(i)    The sum of:

(1)     The Part-Time Employee's annualized compensation (determined by multiplying his or her hourly pay rate times 7.25 hours per day times 261 work-days per year); and

(2)     Any bonuses paid to the Part-Time Employee.

(ii)     Actual compensation paid to the Part-Time Employee.

(e)     Field Underwriters

Compensation shall not include any compensation received pursuant to service as a Field Underwriter under a Career Contract.

(f)     CIS Employees

For CIS Employees who transferred to CSC, Inc., Compensation for purposes of subsection (a) of this Section, solely as it relates to the Cash Balance Account, shall be determined as of December 31, 1994, in an amount not to exceed $66,000.

1.23    Contribution Percentage

Contribution Percentage means the ratio of the Company Contributions, if any, allocated to a Participant's Company Contribution Subaccount for the Plan Year, to the Participant's Compensation for the Plan Year.  For purposes of determining the Contribution Percentage, a Participant's Compensation for a Plan Year shall not include Compensation paid during any period while he or she was not a Participant.

1.24    Covered Compensation

Covered Compensation means an Employee's Covered Compensation, for a Plan Year, which is the average (without indexing) of the Social Security "taxable wage bases"

in effect for each calendar year, with rounding to the nearest multiple of $3,000, during the 35-year period ending with the last day of the calendar year in which the Employee attains (or will attain) Social Security Retirement Age as defined by the Social Security Act. For this purpose, "taxable wage base" with respect to any year is the maximum amount of Compensation that may be considered "wages" for that year under Code Section 3121(a). In determining an Employee's Covered Compensation for a Plan Year, the taxable wage base for the current Plan Year and any subsequent Plan Year shall be assumed to be the same as the taxable wage base in effect as of the beginning of the Plan Year for which the determination is being made. An Employee's Covered Compensation for a Plan Year after the 35-year period described above is the Employee's Covered Compensation for the Plan Year during which the Employee attained Social Security Retirement Age. An Employee's Covered Compensation for a Plan Year before the 35-year period described above is the taxable wage base in effect as of the beginning of the Plan Year. An Employee's Covered Compensation shall be recalculated each Plan Year.

1.25   Defined Benefit

Defined Benefit means the portion of a Participant's Accrued Benefit not attributable to the Participant's Employer Contribution Account.

1.26   Defined Benefit Plan

Defined Benefit Plan means any plan of the type defined in Code Section 414(j) or 414(k), where applicable, maintained by the Company or an Affiliate.

1.27   Defined Contribution

Defined Contribution means any contribution that was allocated to a Participant's Defined Contribution Subaccount in accordance with Section 3.8, for the purpose of contributing 2% of a Participant's Compensation in each payroll period through May 28, 1999.

1.28   Defined Contribution Plan

Defined Contribution Plan means any plan of the type defined in Code Section 414(i) or 414(k), where applicable, maintained by the Company or an Affiliate.

1.29   Defined Contribution Subaccount

Defined Contribution Subaccount means the separate subaccount that was established for a Participant pursuant to Section 3.8.

1.30   Disability or Disabled

Disability or Disabled means that a Participant:

(a)   Has either:

(i)   Completed six months of full-time service; or

(ii)   Completed 1,000 Hours of Service in three or more Plan Years of service as a Part-Time Employee;

(b)   Is unable to perform his or her duties of employment with the Employer so that he or she experiences a total disability under the terms of the Security Plan for Employees of MONY Life Insurance Company; and

(c)   Is actually approved for long term disability benefits from the Security Plan for Employees of MONY Life Insurance Company.

1.31   Disability Commencement Date

Disability Commencement Date means the date on which a Participant's Disability is determined to have commenced.

1.32   Early Retirement Age

Early Retirement Age means the date on which a Participant has (1) attained age 55 and (2) completed at least five Years of Vesting Service, but has not attained Normal Retirement Age.

1.33   Early Retirement Date

Early Retirement Date means the first day of the month next following a Participant's retirement after reaching his or her Early Retirement Age, but prior to the Participant's Normal Retirement Date.  Notwithstanding the foregoing, if a Participant elects to receive payment of his or her Employer Contribution Account in a lump sum, a Participant's Early Retirement Date with respect to his or her Employer Contribution Account may be on any date after he or she attains his or her Early Retirement Age.

1.34   Effective Date

Effective Date means January 1, 2001, except as otherwise expressly provided herein.  The original effective date of the Plan was October 1, 1946.

1.35   Eligible Employee

All Employees of the Employer, other than:

(a)     Employees included in a unit of employees covered by a collective bargaining agreement between the Employer and an employee representative (not

including any organization more than half of whose members are owners, officers or executives of the Employer) in the negotiation of which retirement benefits were the subject of good faith bargaining, unless such bargaining agreement provides for participation in the Plan;

(b)     leased employees within the meaning of Code Section 414(n)(2);

(c)     Field Underwriters in their capacity as such; and

(d)     Employees who are nonresident aliens and who receive no earned income from United States sources.

Notwithstanding anything herein to the contrary, the term "Eligible Employee" shall not include any person who is not recorded on the employment and payroll records of the Employer as a common law employee. An "Eligible Employee" does not include any other common law employee, leased employee, or other individual. In particular, it is expressly intended that individuals not treated as common law employees by the Employer on its employment and payroll records, including, but not limited to, those individuals recorded as independent contractors, working pursuant to an employee leasing arrangement, or working under any other non-employee or non-payroll classification, are to be excluded from Plan participation even if a court, regulatory body, or administrative agency determines that any such individuals are common law employees of the Employer.

1.36   Employee

Employee means any person engaged in rendering personal services under the direction or control of the Employer, an Affiliate, any person receiving disability benefits

- 16 -

under the Security Plan for Employees of MONY Life Insurance Company, and leased employees within the meaning of Code Section 414(n)(2). Notwithstanding the foregoing, if a plan is maintained for leased employees of the Employer which meets the requirements of Code Section 414(n)(5), the term "Employee" shall not include such leased employees.

1.37    Employer

Employer means the Company and each Participating Affiliate, or any of them.

1.38    Employer Contribution Account

Employer Contribution Account means a Participant's individual account maintained on behalf of a Participant and consisting of the Company Contribution and Defined Contribution Subaccounts.

1.39    Employer Stock

Employer Stock means common stock of The MONY Group Inc.

1.40    Employment

Employment means service performed for the Company or an Affiliate, including service performed as a Field Underwriter.

1.41    Employment Commencement Date

Employment Commencement Date means, for purposes of determining Years of Vesting Service, the date an Employee first performs an Hour of Service for an Employer or an Affiliate. For purposes of determining an Employee's Years of Benefit Accrual Service, Employment Commencement Date means that date an Employee first performs

an Hour of Service for an Employer, and an Employee who is rehired after incurring a Break in Service shall have a new Employment Commencement Date on the date he or she again first performs an Hour of Service for an Employer.

1.42   ERISA

ERISA means the Employee Retirement Income Security Act of 1974, as amended from time to time.  Reference to a specific provision of ERISA shall include such provision and any applicable regulation pertaining thereto.

1.43   Excess Aggregate Contributions

Excess Aggregate Contributions means, with respect to any Plan Year, the amount of Company Contributions, if any, in excess of the maximum amount permitted by the Contribution Percentage Test of Section 3.12 (effective January 1, 1997, determined by hypothetically reducing contributions made on behalf of Highly Compensated Employees in order of their contribution percentages, as defined in the MIP, beginning with the highest of such percentages) allocable to a Participant who is a Highly Compensated Employee.

1.44   Excess Pension Assets

Excess Pension Assets means excess pension assets, as such term is defined in Section 14.2.4 of the Plan.

1.45   Field Underwriter

Field Underwriter means a person under any Career Contract with the Company.

1.46   Final Average Salary

Final Average Salary means a Participant's average annual Compensation for the 36 consecutive months in which his or her Compensation was highest in the 120 months of Service rendered immediately prior to his or her Retirement or Paid Through Date and while such Participant was in the employ of the Employer. If the Participant reaches his or her Retirement Date with less than 36 months of Compensation, Final Average Salary shall be determined by using the Participant's monthly Compensation for the months paid to such Participant for such lesser number of months. In determining a Participant's Final Average Salary for any partial calendar year in which a Participant has received Compensation, such partial calendar year Compensation shall include Compensation earned through the Paid Through Date.

In the case of Accrued Benefits after a Fresh Start Date, Final Average Salary shall still be based on actual Compensation subject to Code Section 401(a)(17) limitations.

Notwithstanding the foregoing, Final Average Salary is determined as of December 31, 1994 for CIS Employees who transferred to CSC, Inc. and who did not subsequently return to Employment. The Final Average Salary for CIS Employees who transferred to CSC and who subsequently returned to Employment shall be the greater of the Final Average Salary determined as of December 31, 1994, the Final Average Salary determined under the general rules of this definition, or, if applicable, the Final Average Salary determined under a window-benefit program established under the Plan.

1.47   Fresh Start Date

Fresh Start Date means December 31, 1988 for the Tax Reform Act of 1986

- 19 -

("TRA '86") or December 31, 1993 for the Omnibus Budget Reconciliation Act of 1993 ("OBRA '93"), as applicable.

1.48   Health Benefits Account

Health Benefits Account means the account described in Section 14.2.5.

1.49   Highly Compensated Employee

Highly Compensated Employee means any Employee who (1) was a 5-percent owner (as defined in Code Section 416(i)(1)) at any time during the Plan Year or the previous Plan Year, or (2) during the previous Plan Year earned more than $80,000 (as adjusted pursuant to Code Section 414(q)) in Compensation and was in the "top paid group" (as defined in Temporary IRS Regulation § 1.414(q)-1T, Q&A-9) for the preceding Plan Year.

Notwithstanding the foregoing provisions of this Section, a former Employee shall be treated as a former Highly Compensated Employee if such Employee was a Highly Compensated Employee (a) when he or she Terminated from Service or (b) at any time after attaining age 55.

1.50   Hour of Service

Hour of Service shall include:

(a)      Each hour for which an Employee is paid, or entitled to payment, by the Employer or an Affiliate for the performance of duties.  These hours shall be credited to the Employee for the period during which the duties are performed; and

(b)      Each hour for which an Employee is paid, or entitled to payment, by the

Employer or an Affiliate on account of a period of time during which no duties are performed (irrespective of whether he or she has Terminated from Service) due to vacation, holiday, illness, incapacity (including Disability), layoff, jury duty, military duty or Leave of Absence. Not more than 501 Hours of Service will be credited under this paragraph for any single continuous period (whether or not such period occurs in a single computation period). Hours under this paragraph will be calculated and credited pursuant to section 2530.200b-2 of the Labor Department Regulations which are incorporated herein by this reference; and

(c)     Each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by the Employer. The same Hours of Service will not be credited both under subparagraph (a) or subparagraph (b), as the case may be, and under this subparagraph (c). These hours will be credited to the Employee for the computation period or periods to which the award or agreement pertains rather than for the computation period in which the award, agreement or payment is made.

(d)     Part-Time Employees shall be credited with actual Hours of Service performed for an Employer or an Affiliate.

(e)     Employees other than Part-Time Employees shall be credited with 10 Hours of Service for each business day in which the Employee completes an Hour of Service.

(f)     This definition shall be construed in accordance with any applicable provisions of the Family and Medical Leave Act of 1993.

1.51   <u>Investment Fund</u>

Investment Fund means one or more investment funds designated pursuant to Section 11 for the investment of a Participant's Employer Contribution Account.

1.52   Investment Manager

Investment Manager means any person appointed pursuant to Section 11 having the power to direct the investment of assets in accordance with that Section.

1.53   IRS

IRS means the United States Internal Revenue Service.

1.54   IRS Regulations

IRS Regulations means any proposed, temporary, or final regulations published by the Secretary of Treasury or his or her designee.

1.55   Labor Department

Labor Department means the United States Department of Labor.

1.56   Leave of Absence

Leave of Absence means a leave granted by the Employer or an Affiliate in accordance with standard personnel policies of the Employer or the Affiliate applied in a nondiscriminatory manner to all Employees similarly situated.

1.57   MIP

MIP  means the Investment Plan Supplement for Employees and Field Underwriters of MONY Life Insurance Company.

1.58   Non-Highly Compensated Employee

Non-Highly Compensated Employee means an Employee of the Company or an

Affiliate who is not a Highly Compensated Employee.

1.59   Normal Retirement Age

Normal Retirement Age means the date on which the Participant has attained his or her 65th birthday and has either completed five Years of Vesting Service or has attained his or her fifth anniversary of participation in the Plan.

1.60   Normal Retirement Date

Normal Retirement Date means the first day of the month next following a Participant's retirement after reaching Normal Retirement Age.

1.61   Paid Through Date

Paid Through Date means the last date on which an Employee is considered as such.

1.62   Part-Time Employee

Part-Time Employee means an Employee with at least 1,000 but no more than 1,885 Hours of Service during a one-year computation period beginning on the Employee's Employment Commencement Date or an anniversary of such Employment Commencement Date.

1.63   Participant

Participant means any Eligible Employee who accrues benefits in the Plan in accordance with Section 2.  In addition, where applicable, Participant shall also include (1) an individual who is no longer an Eligible Employee but who has an Accrued Benefit that has not yet been paid or forfeited by the Plan, and/or (2) an alternate payee pursuant

- 23 -

to the terms of a qualified domestic relations order.

1.64   Participating Affiliate

Participating Affiliate means an Affiliate of the Company, designated by the Benefits Committee as such, the board of directors or equivalent governing body of which shall adopt the Plan and the Trust Agreement by appropriate action and the Employees of which shall be eligible to participate in the Plan in the manner and to the extent determined by the Benefits Committee so long as such Affiliate remains so designated.

1.65   PBGC

PBGC means the Pension Benefit Guaranty Corporation.

1.66   Plan

Plan means this Retirement Income Security Plan for Employees of MONY Life Insurance Company, as set forth herein and as may be amended from time to time.

1.67   Plan Year

Plan Year means the calendar year.

1.68   Qualified Joint and Survivor Annuity

Qualified Joint and Survivor Annuity means a benefit form providing an annuity for the life of a Participant, ending with the payment due on the last day of the month coincident with or preceding the date of his or her death, and, if the Participant dies leaving a Surviving Spouse, a survivor annuity for the life of such Surviving Spouse equal to 50% (or if the Participant elects, 66 2/3%, 75%, or 100%) of the annuity payable for the life of the Participant under his or her Qualified Joint and Survivor Annuity,

- 24 -

commencing as soon as administratively practicable, but not later than 90 days following the date of the Participant's death and ending with the payment due on the last day of the month coincident with or preceding the date of such Surviving Spouse's death. However the Participant may elect, without need for Spousal Consent, an annuity in the form of a joint and 66 2/3%, 75% or 100% survivor annuity.

1.69    Qualified Preretirement Survivor Annuity

Qualified Preretirement Survivor Annuity means a benefit providing for payment of an annuity to a Participant's Surviving Spouse, or the Surviving Spouse of a former Participant with a deferred vested benefit, if any, for the life of such Surviving Spouse determined in accordance with the provisions of Section 6.2.2 of the Plan.

Notwithstanding the foregoing, a Qualified Preretirement Survivor Annuity shall be calculated as follows:

(a)    Determine the Qualified Preretirement Survivor Annuity based on the forgoing provisions of this Section without regard to the Code Section 415 limits on a Participant's Accrued Benefit, and

(b)    Reduce the amount calculated in (a), if necessary, to the maximum benefit permitted under Code Section 415 (as described in Section 4 of the Plan).

1.70    Qualified Transfer

Qualified Transfer means a qualified transfer, as such term is defined in Section 14.2.3 of the Plan.

1.71    Required Beginning Date

- 25 -

Required Beginning Date means a required beginning date, as such term is defined in Section 9.7 of the Plan.

### 1.72   Retirement Date

Retirement Date means a Participant's Early Retirement Date, Normal Retirement Date or any other retirement date that has become effective in lieu thereof pursuant to Section 6. A Participant's Disability Commencement Date is not a Retirement Date.

### 1.73   Service

Service means all Employment as an Employee through the Employee's Paid Through Date; provided, however, that Service does not include periods of Employment rendered by an individual prior to October 10, 1946, or prior to January 1, 1985, if such periods would have been disregarded under the rules of the Plan as then in effect with respect to Breaks in Service, except that Employees of MONY Life Insurance Company will have pre-ERISA Breaks in Service counted as Service for benefit accrual purposes. To the extent and for the purposes determined by the Administrator, under rules uniformly applicable to all Employees similarly situated, and in accordance with Labor Regulation Sections 2530.200b-2(b) and (c), Service includes (i) periods of vacation, (ii) periods of layoff, (iii) periods of absence authorized by the Employer for sickness, disability or personal reasons and (iv) if and to the extent required by the Uniformed Services Employment and Reemployment Rights Act of 1994 or any other federal law, service in the Armed Forces of the United States. Service may also include any period of a Participant's prior employment by any organization upon such terms and conditions as

the Administrator may approve and subject to any required IRS approval.

1.74    Spousal Consent

Spousal Consent means the written consent of a Participant's Spouse to the designation of anyone other than the Spouse as Beneficiary or the waiver of the Qualified Joint and Survivor Annuity benefit. Such consent shall:

(a)    Acknowledge the form in which the Participant's Accrued Benefit is to be paid (if such consent is a waiver of a Qualified Joint and Survivor Annuity);

(b)    Acknowledge the specific Beneficiary, including any class of Beneficiaries or any contingent Beneficiaries, which may not be changed without Spousal Consent (or the Spouse expressly permits designations by the Participant without any further Spousal consent);

(c)    Acknowledge the effect of the Spousal Consent; and

(d)    Be witnessed by a notary public.

Such Spousal Consent shall be effective only with respect to such Spouse and such specified Beneficiary(ies) (unless the Spousal Consent is a general consent that expressly permits designations by the Participant without any further Spousal Consent). A revocation of a Spousal Consent may be made by a Participant without the consent of the Spouse at any time before the commencement of benefits. The number of revocations shall not be limited.

Spousal Consent shall not be necessary if the Participant establishes to the satisfaction of the Administrator that:

(1)     he or she has no Spouse;

(2)     his or her Spouse has been declared judicially dead;

(3)     the Participant did not have an Hour of Service after August 23, 1984; or,

(4)     such other circumstances exist as the Administrator may, in accordance with applicable regulations, deem appropriate to waive the requirement of Spousal Consent.

1.75   Spouse

Spouse means the person married to a Participant unless otherwise provided under a qualified domestic relations order.

1.76   SSIB

SSIB means the Spouse/survivors income benefit described in Section 9.6.

1.77   Straight Life Annuity

Straight Life Annuity means an annuity payable for the life of a Participant, former Participant, or Beneficiary, as applicable.

1.78   Surviving Spouse

Surviving Spouse means the Spouse of a Participant on the earlier of

(a)     the date of the Participant's death; or

(b)     the Participant's Benefit Commencement Date, or as may be specified pursuant to the terms of a qualified domestic relations order.

1.79   Termination from Service

Termination from Service or Terminated from Service means the termination of a

Participant's service with the Company and all Affiliates.

1.80   Trust Agreement

Trust Agreement means the agreement between the Company and the Trustee with respect to the Trust.

1.81   Trust

Trust means a trust, or any successor or predecessor trust(s), established by the Company to hold some or all of the Plan's assets.

1.82   Trustee

Trustee means the trustee or trustees of the Trust and any successor Trustee.

1.83   Valuation Date

Valuation Date means the last business day of a month in a Plan Year and any other date as the Administrator in its discretion may determine from time to time.

1.84   Year of Benefit Accrual Service

Year of Benefit Accrual Service means a twelve-month period beginning on an Employee's Employment Commencement Date, and each anniversary thereof (a "Benefit Accrual Period"), during which an Employee performs at least 1,000 Hours of Service. An Employee who performs at least 1,000 Hours of Service but less than 1,885 Hours of Service during a Benefit Accrual Period shall, notwithstanding any other provision of the Plan, be credited for such Benefit Accrual Period with a fraction of a Year of Benefit Accrual Service equal to the number of Hours of Service the Participant performed during such Benefit Accrual Period divided by 1,885. Notwithstanding the foregoing, Hours of

Service completed by an Employee while such Employee is not an Eligible Employee shall not be considered in determining such Employee's Years of Benefit Accrual Service or Defined Benefit.

Notwithstanding any provision of the Plan to the contrary, Years of Benefit Accrual Service shall continue to be credited to CIS Employees as of December 31, 1994 until the earlier of (a) December 31, 1997, (b) termination from service with CSC, Inc., or (c) reemployment by an Employer as a result of the termination of the outsourcing agreement with CSC, Inc.

1.85   Year of Vesting Service

Year of Vesting Service means a twelve-month period beginning on an Employee's Employment Commencement Date, and each anniversary thereof, during which an Employee completes at least 1,000 Hours of Service, as determined by the Administrator in accordance with the applicable regulations.

## SECTION 2.  PARTICIPATION

2.1     Initial Participation Prior to January 1, 2001

Each Participant who was a Participant in the Plan on December 31, 2000, shall

continue to be a Participant in the Plan on January 1, 2001, provided he or she is an

Eligible Employee on that date.

2.2     Initial Participation On or After January 1, 2001

Each Employee who commences Employment on or after January 1, 2001, shall

automatically become a Participant in the Plan on the date on which the Employee

becomes an Eligible Employee.  The Administrator shall take any necessary or

appropriate action to enroll each Eligible Employee who has met the requirements of this

Section 2 and, if it is determined that an Eligible Employee has for any reason not been a

Participant in the Plan, such Eligible Employee shall be considered a Participant

retroactively.

2.3     Termination of Participation

An individual shall cease to be a Participant on the earliest of the date that:

(a)     the individual, if he or she is a non-vested Participant, Terminates from

Service and is considered under the terms of the Plan to have received a lump sum cash-

out of zero dollars;

(b)     the Participant has received all benefits due him or her under the Plan; or

(c)     the Participant dies.

## SECTION 3.  ACCRUED BENEFIT

3.1   <u>Calculation</u>

A Participant's annual Accrued Benefit is equal to the sum of:

(a)    For Participants born before January 1, 1938:

The product of:

(i)     0.75 percent of Final Average Salary not in excess of Covered Compensation plus 1.5 percent of his or her Final Average Salary in excess of Covered Compensation; and

(ii)    Years of Benefit Accrual Service, but not to exceed 35 Years of Benefit Accrual Service;

Plus:

(iii)   the Actuarial Equivalent annuity value of the Participant's Employer Contribution Account and the Actuarial Equivalent annuity value of the Participant's Cash Balance Account (as valued prior to annuitization pursuant to the terms of Section 3.11.4).

(b)    For Participants born after December 31, 1937 and before January 1, 1955: The product of:

(i)     0.8 percent of Final Average Salary not in excess of Covered Compensation plus 1.5 percent of Final Average Salary in excess of Covered Compensation; and

(ii)    Years of Benefit Accrual Service, but not to exceed 35 Years of

Benefit Accrual Service;

Plus:

(iii)   the Actuarial Equivalent annuity value of the Participant's Employer Contribution Account and the Actuarial Equivalent annuity value of the Participant's Cash Balance Account (as valued prior to annuitization pursuant to the terms of Section 3.11.4).

(c)   For Participants born after December 31, 1954:

The product of:

(i)   0.85 percent of Final Average Salary not in excess of Covered Compensation plus 1.5 percent of Final Average Salary in excess of Covered Compensation; and

(ii)   Years of Benefit Accrual Service, but not to exceed 35 Years of Benefit Accrual Service;

Plus:

(iii)   the Actuarial Equivalent annuity value of the Participant's Employer Contribution Account and the Actuarial Equivalent annuity value of the Participant's Cash Balance Account (as valued prior to annuitization pursuant to the terms of Section 3.11.4).

3.2   <u>Cost of Living Adjustments</u>

(a)   1993 Cost of Living Adjustment

(i)   Participants who retired prior to January 1, 1989 shall receive the

following cost of living adjustment:

| Annual Annuity Payment | Less Than 15 Years of Benefit Accrual Service | More Than 15 But Less Than 25 Years of Benefit Accrual Service | 25 or More Years of Benefit Accrual Service |
|---|---|---|---|
| Less Than $10,000 | 4% | 8% | 12% |
| $10,000-$24,999 | 2% | 4% | 6% |
| $25,000 or Greater | 2% | 2% | 3% |

    (ii)    Participants who retired after December 31, 1989 and prior to

January 1, 1992 shall receive the following cost of living adjustment:

| Annual Annuity Payment | Less Than 15 Years of Benefit Accrual Service | More Than 15 But Less Than 25 Years of Benefit Accrual Service | 25 or More Years of Benefit Accrual Service |
|---|---|---|---|
| Less Than $10,000 | 2% | 4% | 6% |
| $10,000-$24,999 | 2% | 2% | 3% |
| $25,000 or Greater | 2% | 2% | 2% |

(b)      2001 Cost of Living Adjustment

    (i)      A cost of living adjustment shall be provided based on the following

schedule:

| Year of Benefit Commencement | Cost of Living Adjustment Percentage |
|---|---|
| 1993 and Earlier | 11.33% |
| 1994 | 9.33% |
| 1995 | 7.33% |
| 1996 | 5.33% |
| 1997 | 3.33% |
| 1998 | 2.67% |

3.3    Grandfathered Benefit

Any Participant who as of December 31, 1988 was:

- 34 -

(a)     at least 50 years of age with ten or more Years of Vesting Service; or,

(b)     whose age plus Years of Vesting Service was equal to 65 or more; or,

(c)     who was eligible for an Early Retirement Benefit under the terms of the Plan in effect on December 31, 1988

shall have a Defined Benefit equal to the greater of:

(i)     The Accrued Benefit calculated in accordance with the formula in effect on December 31, 1988, less an annuity, commencing at Normal Retirement Date, whose Actuarial Equivalent as of the date of determination is equal to the cumulative amount of the Defined Contributions equal to 2% of Compensation of such Participant through May 28, 1999; as if the contribution had been invested in a GIC fund; or

(ii)     The Accrued Benefit otherwise available under Section 3.1, without regard to the value of the Participant's Employer Contribution Account.

This Section 3.3 shall be not applicable for Highly Compensated Employees. For this purpose, once a Participant is determined to be a Highly Compensated Employee, the benefit provided in this Section 3.3 shall not be applicable even if the Participant shall become a Non-Highly Compensated Employee.

3.4     Early Retirement

3.4.1     Early Retirement Adjustment Factor

A Participant who elects payment of a benefit on an Early Retirement Date shall be entitled to receive a Defined Benefit which is reduced based on the early retirement adjustment factors as set forth below:

- 35 -

| Attained Age on Benefit Commencement Date | Early Retirement Percentage if Participant has Completed at least 30 Years of Benefit Accrual Service | Early Retirement Percentage if Participant has not Completed at least 30 Years of Benefit Accrual Service |
|---|---|---|
| 55 | 80% | 50% |
| 56 | 84% | 56% |
| 57 | 88% | 62% |
| 58 | 92% | 68% |
| 59 | 96% | 74% |
| 60 | 100% | 80% |
| 61 | 100% | 84% |
| 62 | 100% | 88% |
| 63 | 100% | 92% |
| 64 | 100% | 96% |
| 65 | 100% | 100% |

Adjustment factors for fractional ages will be determined by linear interpolation. If a Participant has completed less than 30 Years of Benefit Accrual Service, the factor is the greater of (a) the Early Retirement Percentage from the table above for less than 30 Years of Benefit Accrual Service or (b) the Early Retirement Percentage from the table above for 30 or more Years of Benefit Accrual service multiplied by the Employee's actual Years of Benefit Accrual Service divided by 30.

The Defined Benefit of a Participant whose Defined Benefit is determined under Section 3.3 and whose Benefit Commencement Date is not his or her Normal Retirement Date shall be determined as follows:

(a)      the benefit determined under Section 3.3 prior to reduction for the 2% Defined Contribution Balance multiplied by

(b)      the Early Retirement Percentage from the table above minus

(c)      the value of a Straight Life Annuity commencing at the Retirement Date

whose Actuarial Equivalent as of the later of (i) the Participant's Termination from Service or (ii) the Participant's Benefit Commencement Date is equal to the cumulative amount of the Participant's Defined Contributions as of the same date equal to 2% of the Compensation of such Participant through May 28, 1999, as if the Defined Contributions had been invested in a GIC fund.

3.4.2   Supplement

An Eligible Employee who Terminates from Service on or after his or her Early Retirement Date and who retires prior to his or her Normal Retirement Date shall also receive a supplementary benefit until the month preceding his or her Normal Retirement Date. The supplementary benefit equals the product of (1) (a) 0.75% for Participants born before January 1, 1938 (b) 0.70% for Participants born after December 31, 1937 and before January 1, 1955 or (c) 0.65% for Participants born after December 31, 1954, (2) the Participant's Years of Benefit Accrual Service up to 35 years, and (3) the Participant's Final Average Salary, not to exceed Covered Compensation. A Participant who has a Grandfathered Benefit under Section 3.3 will have his or her supplement determined under the Plan supplement formula in effect on December 31, 1988.

To the extent that a Participant's supplement is in excess of a QSUPP, as defined in IRS Regulation § 1.401(a)(4)-12, the remainder of the Participant's supplement shall be considered an early retirement benefit within the meaning of Code Section 411(d)(6).

Notwithstanding the foregoing, a former Employee who Terminated from Service with the Employer as a result of the sale of the Pension Operation to Aegon USA

- 37 -

(Diversified Investment Advisors) on December 31, 1993, shall be eligible to receive the supplement described in this Section 3.4.2 on or after age 55, provided that this supplement begins on or after his or her termination from service from Aegon USA.

### 3.4.3  Deferral

Subject to Section 9.8, a Participant who Terminates from Service prior to his or her Normal Retirement Date shall be deemed to have elected to defer commencement of the payment of his or her Accrued Benefit, unless he or she elects to commence his or her benefit as of his or her Early Retirement Date.

## 3.5   Fresh Start Rules

### 3.5.1   Definitions

(a)     Fresh Start Group.  Fresh Start Group means Participants who are "Section 401(a)(17) employees" as defined in IRS Regulation § 1.401(a)(17)-1(e)(2)(i).

(b)     Legislation.

(1)     TRA '86.  Tax Reform Act of 1986.

(2)     OBRA '93.  Omnibus Budget Reconciliation Act of 1993.

(c)     Frozen Accrued Benefit.  Frozen Accrued Benefit means the Participant's Accrued Benefit determined in accordance with the provisions of the Plan applicable in the Plan Year containing the TRA' 86 Fresh Start Date, (or the date the Participant terminated Employment with the Employer, if earlier), without regard to any amendment made to the Plan after that date (other than amendments recognized as effective as of or before that date according to Code Section 401(b) and IRS Regulation § 1.401(a)(4)-

11(g)).

### 3.5.2   Benefit

The Accrued Benefit of each Participant in the Fresh Start Group will be determined as follows:

(a)     Step One.  Determine the greater of (1) or (2) as follows:

(1)     the Participant's Frozen Accrued Benefit plus the additional benefit accrued under the Plan from the TRA '86 Fresh Start Date to the OBRA '93 Fresh Start Date calculated by applying the $200,000 Code Section 401(a)(17) limit (as adjusted) to such period.

(2)     the Participant's Accrued Benefit determined as of the OBRA '93 Fresh Start Date applying the $200,000 Code Section 401(a)(17) limit (as adjusted) to all prior Compensation.

(b)     Step Two.  The Defined Benefit of each Participant in the Fresh Start Group is the greater of (1) and (2) as follows:

(1)     the amount determined in Step One plus the additional benefit accrued under the Plan from the OBRA '93 Fresh Start Date to Termination from Service calculated by applying the post-1993 Code Section 401(a)(17) limit (as adjusted) to such period.

(2)     the Participant's Accrued Benefit determined as of Termination from Service by applying the post-1993 Code Section 401(a)(17) limit to all Compensation.

- 39 -

3.6     Disability Before Retirement

A Participant who is Disabled and receiving long term disability payments under the Security Plan for Employees of MONY Life Insurance Company and/or disability benefits under this Plan shall continue to accrue Benefit Accrual Service under the Plan until the earlier of the date that long-term disability benefits are no longer payable or he or she reaches Normal Retirement Age.  Such Participant's annual rate of Compensation at the onset of his or her Disability, as determined by the Administrator, shall be deemed to be his or her annual Compensation for purposes of the Plan during such period. Neither the Participant's Accrued Benefit nor any benefits based thereon shall be payable to or on account of such Participant while he or she is receiving such long-term disability benefit payments, nor shall such Accrued Benefit be reduced on account of such payments.

3.7     Reduction for Prior Service

The Accrued Benefit of any Participant shall be reduced, subject to any required IRS approval, by the Actuarial Equivalent of any benefit provided for the Participant under any defined benefit plans maintained by the Employer which are qualified under Code Section 401(a) with respect to any period of his or her prior Service for which benefits are provided under the Plan.

3.8     Employer Contribution Account

Employer Contribution Accounts that were designed to be part of a defined contribution plan within the meaning of Code Section 414(i) and separate accounts within

the meaning of Code Section 414(k) were previously established within the Plan. An Employer Contribution Account was established for each Participant who became a Participant on or prior to May 28, 1999, showing the Participant's interest under the Plan and in the Trust (including separate accounts showing the respective interests, if any, in each of the Investment Funds) with respect to (i) Company Contributions and (ii) Defined Contributions credited as described below, and all other relevant data pertaining thereto.

The establishment and maintenance of, or allocations and credits to, the Employer Contribution Account of any Participant did not vest and shall not vest in any Participant any right, title or interest in and to any Plan assets or benefits except at the time or times and upon the terms and conditions and to the extent expressly set forth in the Plan. The Employer Contribution Accounts shall be maintained for bookkeeping purposes only, and shall not result in any segregation of Trust assets between the Defined Benefit and Employer Contribution Accounts. All assets held by the Plan shall be available to pay all benefits under the Plan, whether under the Defined Benefit or the Employer Contribution Account.

After May 28, 1999, the Employer shall no longer make Defined Contributions and Company Contributions to Participants' Employer Contribution Accounts.

3.9     Investment of Employer Contribution Accounts

3.9.1   Direction of Investments

Participants shall be permitted to direct the investment of their Employer Contribution Accounts and future allocation of contributions (effective June 10, 1999, in

increments of 1%) among the Investment Funds up to twelve times each year (unlimited times each year, effective June 10, 1999), effective with the next pay period after receipt of the direction by the Administrator or as soon as administratively practicable. Such instructions shall be made in a form required for such purpose by the Administrator and shall be subject to such rules and procedures as the Administrator may establish. A Participant's investment directions shall remain in effect until changed by the Participant or, where applicable, the Beneficiary.

### 3.9.2   Default Investment Option

In the event that a Participant for any reason fails to provide proper initial investment instructions with respect to any amounts over which he or she has investment authority, such amounts shall be 100% invested in the Investment Fund that invests in money market or other similar short-term cash equivalent securities, unless otherwise determined by the Administrator.

### 3.9.3   Costs and Charges

Unless otherwise determined by the Benefits Committee or the Administrator, any transactional costs or charges or other expenses incurred in connection with the investment management or administration of an Investment Fund shall be charged to the Investment Fund and Employer Contribution Accounts of Participants who invest in such Investment Fund. Transactional costs and charges shall include, but shall not be limited to, charges for the acquisition, sale or exchange of assets, brokerage commissions, service charges and professional fees.

Investment earnings or losses and income and expenses for any valuation period shall be allocated to Employer Contribution Accounts in accordance with procedures as established by the Administrator.  Amounts withdrawn from an Employer Contribution Account shall include benefit payments, withdrawals and loan proceeds.

Earnings or income received or expenses or losses incurred on, any investment of one of the Investment Funds may be allocated to one or more Investment Funds and credited to Participants' Employer Contribution Accounts invested therein, or may be allocated (on a pro rata by account balance or per capita basis) among Participants, or as the Administrator may otherwise determine in its sole discretion.

3.9.4   Transfers Between Funds

Participants (and Beneficiaries) shall be permitted to transfer amounts between Investment Funds (effective June 10, 1999, in one-percent increments), up to 12 times each year (unlimited times each year, effective June 10, 1999), provided that the Administrator may adopt rules and procedures that restrict transfers among Investment Funds to accommodate restrictions imposed by Investment Managers or the underlying investments of an Investment Fund, to allow the review and reconciliation of the Plan's records relating to Employer Contribution Accounts and Investment Funds, for purposes of any qualified domestic relations order, in accordance with Section 10.8, or for other reasons as determined by the Administrator from time to time in its sole discretion, effective as soon as administratively practicable after receipt of the direction by the Administrator.  Such instructions shall be made in a form required for such purpose by

- 43 -

the Administrator and shall be subject to such rules and procedures as the Administrator may establish.

### 3.9.5   Valuation of Employer Contribution Accounts

The Administrator shall cause each Participant's Employer Contribution Account to be valued on each Valuation Date.  The Administrator and the Trustee may conclusively rely on valuations made in accordance with the terms of the Plan and the Trust Agreement.

### 3.10   Employer Contribution Account Report

The Administrator shall deliver to each Participant, at least annually, a statement of the Employer Contribution Account of each Participant which shows the activity since the prior statement date and the value of the Employer Contribution Account as of the current statement date and any other information deemed appropriate by the Administrator or as required by law.

For purposes of this Section 3.10, an "error" means any change in records or an error in processing contributions or other transactions for a Participant's Employer Contribution Account that results in an incorrect amount held in a Participant's Employer Contribution Account, instead of the amount that would have been held in the Employer Contribution Account had the records been correct or had the error not been made.  Upon discovery of any error, the Administrator shall correct the error by adjusting, as far as practicable, the amount held in the Participant's Employer Contribution Account in such manner that the amount to which the Participant is correctly entitled shall be reflected.

Further, if any change in records or error results in any Participant, Beneficiary or alternate payee receiving from the Plan an amount other than what he or she would have been entitled to receive had the records been correct or had the error not been made, the Administrator, upon discovery of such error, shall correct the error by adjusting, as far as practicable, the payments in such manner that the amount to which such person was correctly entitled shall be paid. The phrase "as far as practicable" means correction back to the date the error occurred to the extent practicable, provided that the Administrator shall not be required to correct any error hereunder if a written confirmation or statement putting the Participant, Beneficiary or alternate payee on notice of the error was delivered to the Participant, Beneficiary or alternate payee in accordance with the Administrator's standard procedures, unless the Participant, Beneficiary or alternate payee notified the Administrator within 12 months from the date of such confirmation or statement. Notwithstanding the foregoing, the manner and extent of correction of any such error shall be in conformance with applicable guidance published by the IRS. The Administrator's records will be presumed to be correct.

3.11   Cash Balance Accounts

3.11.1 Applicability

Cash balance benefits provided under this Section 3.11 were available beginning January 1, 1995 and only to those CIS Employees Terminated from Service with the Company and commenced with CSC, Inc. as of January 1, 1995.

3.11.2 Establishment of Account

- 45 -

A Cash Balance Account was established for each CIS Employee. Each CIS Employee shall, at all times, be 100% vested in such account. Each CIS Employee's Cash Balance Account was eligible for annual pay credits equal to 4.2% of the CIS Employee's Compensation as of December 31, 1994. Such pay credits were made at the end of each Plan Year ending after January 1, 1995, until the earlier of December 31, 1997, or termination of the CIS Employee's service with CSC, Inc.

### 3.11.3 Crediting of Accounts

On each of the Company's regularly scheduled paydays, Cash Balance Accounts shall be credited with interest from the previously scheduled payday at a rate based on the three month Treasury bill rate on the first business day of December of the preceding year plus 75 basis points. Projected benefits will be calculated using the rate in effect at the time of calculation.

### 3.11.4 Value of Cash Balance Accounts

The value of the Cash Balance Account as of any date of determination will be the Cash Balance Account balance as of such date, increased by the interest rate described in Section 3.11.3 as if accumulated to the Participant's Normal Retirement Age and converted to an Actuarial Equivalent annuity. Notwithstanding any other provisions of the Plan, the Actuarially Equivalent lump sum value of the Participant's benefit will never be less than the Cash Balance Account's balance as of the date of determination.

### 3.12 Contribution Percentage Test

Company Contributions made on behalf of Highly Compensated Employees for

each Plan Year must satisfy one of the following tests:

(a)    The Average Contribution Percentage for a Plan Year for Participants who are Highly Compensated Employees for the Plan Year shall not exceed the prior year's Average Contribution Percentage for Participants who were Non-Highly Compensated Employees for the prior Plan Year multiplied by 1.25; or

(b)    The Average Contribution Percentage for a Plan Year for Participants who are Highly Compensated Employees for the Plan Year shall not exceed the prior year's Average Contribution Percentage for Participants who were Non-Highly Compensated Employees for the prior Plan Year multiplied by two, provided that the Average Contribution Percentage for Participants who are Highly Compensated Employees does not exceed the Average Contribution Percentage for Participants who were Non-Highly Compensated Employees in the prior Plan Year by more than two percentage points.

3.12.1 Aggregation of Contributions

(a)    For purposes of this Section 3.12, the Contribution Percentage for any Participant who is a Highly Compensated Employee for the Plan Year and who is eligible to receive matching contributions or to make employee after-tax contributions under one or more other plans described in Code Section 401(a) that are maintained by the Company or an Affiliate shall be determined as if all such contributions were made under a single plan aggregated with this Plan.

3.13   Distribution of Excess Aggregate Contributions

Notwithstanding any other provisions of the Plan, Excess Aggregate Contributions, adjusted for Allocable Income/Loss, shall be distributed or forfeited to the extent not vested, no later than the last day of the Plan Year following the Plan Year for which they were made to the Participants to whom such amounts are allocable.  The Excess Aggregate Contributions allocable to a Participant for any Plan Year shall be determined in accordance with applicable regulations and, effective January 1, 1997, any subsequent IRS guidance issued under the applicable Code provisions after the amount of Excess Aggregation Contributions (including excess aggregate contributions under the MIP) for such Plan Year have been determined.

## SECTION 4.  CODE SECTION 415 LIMITATION ON BENEFITS AND ALLOCATIONS

4.1     General Rule

The provisions of this Section 4 shall govern the benefits or allocations to which it is applicable notwithstanding any other provision of the Plan.

4.2     Incorporation of Code Section 415 Limits

A Participant's Annual Additions (as defined in Code Section 415(c)) or Annual Benefit (as defined in Code Section 415(b)) may not exceed the limitations set forth in Code Section 415, which are incorporated herein by reference.  For these purposes the Limitation Year (as defined in IRS Regulations § 1.415-2) is the Plan Year, unless otherwise designated by the Company.

4.3     Adjustment to Benefits Due to Increase in Code Section 415 Limits

In the event that a Participant's benefits under the Plan are limited by the application of Code Section 415, the benefit payable from the Plan in each subsequent Plan Year shall be increased up to the lesser of (a) the Participant's unreduced benefit and (b) the maximum amount payable under Code Section 415 for such Plan Year.

4.4     Participation in Multiple Qualified Plans

(a)     If a Participant participates in another defined benefit plan (as defined in Code Sections 414(j) and 415(k)) maintained by the Company or any of its Affiliates, in the event that in any Plan Year such Participant's aggregated accrued benefit under such plans exceeds the applicable limits under Code Section 415, the benefit payable under this

- 49 -

Plan shall be reduced to the extent necessary to comply with such limits under Code Section 415.

(b)     If a Participant is credited with an Annual Addition under any other Defined Contribution Plan maintained by the Company or an Affiliate, before any Annual Addition is reduced under this Defined Contribution Plan, Annual Additions to the other plan shall be reduced to bring all such plans in to conformity with Code Section 415(c).

If there is an Excess Amount (as defined in IRS Regulation § 1.415-6) with respect to the Participant for a Limitation Year, the Excess Amount in the Participant's Company Contribution Subaccount will be reduced until there is no longer an Excess Amount.

For purposes of applying the limitations contained in this Section 4, all Defined Contribution plans (whether or not terminated) of the Employer or an Affiliate shall be treated as one Defined Contribution Plan, and the aggregate of Annual Additions to all such plans shall not exceed the maximum permissible amount.

## SECTION 5.  RETIREMENT

5.1     Normal Retirement

Subject to Section 6, any Participant may commence payment of his or her Plan benefit on his or her Normal Retirement Date.

5.2     Early Retirement

Subject to Section 6, a Participant may retire on his or her Early Retirement Date.

5.3     Late Retirement

A Participant who is still in Service upon attaining Normal Retirement Age will have payment of his or her benefit deferred until he or she Terminates from Service and his or her benefit shall be governed by the suspension of benefits rules contained in Section 9.9 of the Plan.

5.4     Vested Termination

A Participant who Terminates from Service and is vested in some or all of his or her benefits pursuant to Section 7 may commence payment of his or her benefits on or after the earlier of his or her Early Retirement Date or Normal Retirement Date (or, with respect to his or her Cash Balance Account or Employer Contribution Account, such other date as provided by Section 6.3).  His or her Benefit Commencement Date may be deferred until his or her Normal Retirement Date or any preceding date.

## SECTION 6.  ELIGIBILITY FOR DISTRIBUTIONS

6.1    Distribution Upon Retirement

(a)    A Participant who has attained his or her Early or Normal Retirement Age, and has completed at least five Years of Vesting Service is eligible to receive a distribution of his or her entire Accrued Benefit.

(b)    A retiring Participant shall submit an application for benefits in accordance with procedures prescribed by the Administrator.

(c)    Calculation of Accrued Benefit.

(i)    A Participant who retires pursuant to Sections 5.1, 5.2, or 5.3, shall have his or her Accrued Benefit determined as of the first day of the month following the later of his or her Termination from Service or Paid Through Date.

(ii)    A Participant who retires pursuant to Section 5.4 shall have his or her Accrued Benefit determined as of his or her Retirement Date.

(d)    A distribution pursuant to this Section shall be made in accordance with the distribution rules of Section 9.

(e)    Distribution of a Participant's Employer Contribution Account and/or Cash Balance Account may also be made pursuant to the provisions of Section 6.3.

6.2    Distribution Upon Death

6.2.1    Death After Commencement of Benefits

A death benefit will be paid to the Spouse or other Beneficiary of a Participant who dies after commencement of benefits only if the Participant selected a form of

benefit under which a death benefit would be payable to such person.

6.2.2   Death Prior to Commencement of Benefits

(a)   If a Participant dies before his or her Benefit Commencement Date with a Surviving Spouse the Qualified Preretirement Survivor Annuity payable to the Surviving Spouse shall be determined as follows:

(i)   The portion of the Qualified Preretirement Survivor Annuity attributable to the Participant's Defined Benefit (excluding the portion of a Participant's Defined Benefit attributable to his or her Cash Balance Account) shall be determined as follows:

(1)   50% of the amount which would have been payable as an annuity for the life of the Participant under the Qualified Joint and Survivor Annuity form of benefit based solely on a Participant's Defined Benefit (calculated excluding the portion of a Participant's Defined Benefit attributable to his or her Cash Balance Account) determined as follows:

(I)   In the case of a Participant who dies on or before the first date which could have been the earlier of his or her Early or Normal Retirement Date, determined as if the Participant had:

(a)   Separated from service on the date of death (or the date of separation from service, if earlier),

(b)   Survived to the earlier of his or her Early or Normal Retirement Age,

- 53 -

(c)     Retired with an immediate Qualified Joint and
Survivor Annuity at the retirement age described in (b), and

(d)     Died on the day after the date described in (b);

(II)     In the case of a Participant who dies after the first date
which could have been the earlier of his or her Early or Normal
Retirement Date, determined as if the Participant had retired with an
immediate Qualified Joint and Survivor Annuity on the day before
the Participant's death;

plus

(ii)     An annuity described in Section 3.11.4; plus

(iii)     An annuity for the life of the Surviving Spouse, which shall be the
Actuarial Equivalent of the Participant's Employer Contribution Account Balance, if any.

(b)     If a Participant dies before his or her Benefit Commencement Date without
a Surviving Spouse a preretirement death benefit shall be payable as soon as
administratively practicable to his or her Beneficiary.  Such benefit shall be determined as
follows:

(i)     For a Participant who dies while an Employee:

(1)     A lump sum payment that is Actuarial Equivalent of the
benefit that would be payable based on the Participant's Defined Benefit
(calculated excluding the portion of a Participant's Defined Benefit
attributable to his or her Cash Balance Account) had the Participant died

- 54 -

with a Surviving Spouse of the same age as the Participant at the time of the

Participant's death; plus

    (2)    A lump sum payment of the Participant's Employer

Contribution Account; plus

    (3)    A lump sum payment described in Section 3.11.4 of the Plan.

(ii)    For a Participant who dies when he or she is not an Employee:

    (1)    A lump sum payment of the Participant's Employer

Contribution Account; plus

    (2)    A lump sum payment described in Section 3.11.4 of the Plan.

6.3    Distribution Prior to Normal and Early Retirement Age

Notwithstanding the provisions of Section 6.1 to the contrary, a Participant who

has Terminated from Service may elect to receive the distribution of the following

portions of his or her Accrued Benefit prior to his or her Early and Normal Retirement

Age:

(a)    His or her Account Balance in a lump sum or the normal form described in

Section 9.1; and

(b)    His or her Cash Balance Account in a lump sum or the normal form

described in Section 9.1.

Benefits payable pursuant to this Section shall be paid as of the Valuation Date

coincident with or next following the Participant's Paid Through Date.  A Participant

requesting benefits under this Section shall submit an application for benefits in

accordance with procedures prescribed by the Administrator.

6.4     Benefit Upon Disability

Upon becoming Disabled, a Participant will receive an ancillary disability benefit in an amount based on the Defined Benefit (excluding the portion of a Participant's Defined Benefit attributable to his or her Cash Balance Account) payable in a Straight Life Annuity under the Plan as if he or she had retired from active Service at age 65. As an ancillary benefit, such benefit will not reduce a Participant's Defined Benefit, and will cease upon a Participant's recovery from the Disability (pursuant to the terms of the Security Plan) or upon attainment of Normal Retirement Age, at which time such Participant shall be eligible for normal retirement under Section 6.1.

6.5     Cash Outs and Notice of Right to Elect Optional Benefit Forms

6.5.1   Benefit Less Than or Equal to $3,500

Notwithstanding anything in this Plan to the contrary, if the vested portion of a Participant's Accrued Benefit does not exceed $3,500 at the time of Termination from Service, and, prior to January 1, 2001, has never exceeded such amount at the time of a prior distribution, it shall be distributed to the Participant (or a Beneficiary upon the Participant's death) in a lump sum as soon as administratively practicable following the Participant's Termination from Service.

If a Participant Terminates from Service when the lump sum present value of the Participant's nonforfeitable Accrued Benefit is zero, the Participant shall be deemed to have received a distribution of such Accrued Benefit upon Termination from Service.

### 6.5.2   Benefit Greater Than $3,500

(a)      If the value of a Participant's vested Accrued Benefit exceeds $3,500 at the time of Termination from Service, or, prior to January 1, 2001, ever exceeded such amount at the time of a prior distribution, and the Accrued Benefit is immediately distributable, the Participant (and his or her Spouse, if applicable) must consent to any distribution of such Accrued Benefit.

(b)      Any election to waive the Qualified Joint and Survivor Annuity must be received within 90 days preceding the Benefit Commencement Date.

(c)      The Administrator will provide each Participant, within 90 days and no less than 30 days before his or her Benefit Commencement Date, a written explanation of:

(i)      the terms and conditions of the Qualified Joint and Survivor Annuity;

(ii)     the Participant's right to make, and the effect of, an election to waive the Qualified Joint and Survivor Annuity;

(iii)    the rights of the Participant's Spouse;

(iv)     the right to make, and the effect of, a revocation of a previous election to waive the Qualified Joint and Survivor Annuity; and

(v)      the relative values of the various optional forms of payment under the plan.

The Benefit Commencement Date for a distribution in a form other than a Qualified Joint and Survivor Annuity may be less than 30 days after receipt of the written

explanation described in this Section 6.2.2(c) provided:

(1)     the Participant has been provided with information that clearly indicates that the Participant has at least 30 days to consider whether to waive the Qualified Joint and Survivor Annuity and elect (with Spousal Consent) a form of distribution other than the Qualified Joint and Survivor Annuity;

(2)     the Participant is permitted to revoke any affirmative distribution election at least until the Benefit Commencement Date or, if later, at any time prior to the expiration of the 7-day period that begins the day after the explanation of the Qualified Joint and Survivor Annuity is provided to the Participant; and

(3)     the distribution commences after the date that the written explanation was provided to the Participant.

Notwithstanding the foregoing, effective January 1, 1997, the written explanation described in this Section 6.5.2(c) may be given after the Participant's Benefit Commencement Date provided the distribution commences at least 30 days after such notice is given, unless the 30-day period is waived in accordance with the preceding paragraph.

6.6     Loan Provisions

An Employee or a retired Participant receiving benefits under an annuity option, or, beginning January 1, 1994, a former Employee, was permitted, prior to June 10, 1999, to borrow from the vested balance of his or her Employer Contribution Account in accordance with the provisions of Subsection (a) through (g) below and such additional

uniform and nondiscriminatory written procedures prescribed by the Administrator, and with appropriate Spousal Consent, which procedures are hereby incorporated and made a part of this Plan:

(a)     All loanable funds from the MIP were required to be exhausted.

(b)     Up to six loans were permitted to be made over two calendar years, with a limit of four in any one calendar year.

(c)     Each loan was required to bear interest on the unpaid balance at a reasonable rate determined by the Administrator.

(d)     Each loan, when added to the outstanding balance of all other loans of the Participant from the Plan or any other qualified plan maintained by the Company including plans for the Company's Field Underwriters, or any Affiliate ("Qualified Plan Loans"), was not permitted to exceed the lesser of:

(i)     50% of the Participant's vested Account Balance, under any Employer sponsored Defined Contribution Plan or

(ii)    $50,000 reduced by the excess, if any, of (i) the highest outstanding balance of all Qualified Plan Loans during the one-year period ending on the day before the date on which the loan was made, over (ii) the outstanding balance of all Qualified Plan Loans on the date on which such loan was made.

(e)     Each loan, by its terms, required substantially level amortization of principal and interest (with payment to be made not less frequently than quarterly) over the term of the loan.  Payment for current Employees was required to be by semi-monthly

payroll deduction.  Payment for non-Employees was required to be monthly according to the payment schedule, and by certified check, bank check or money order.  Pre-payment of the full amount of the loan was permitted.

(f)     Each loan, by its terms, required repayment within 5 years.  The Administrator was permitted to authorize a program where the term of the loan may be for a period in excess of 5 years if the proceeds of the loan were to be used to acquire a dwelling unit which, within a reasonable time (determined at the time the loan was made), were to be used as the principal residence of the Participant.  Repayment was permitted to be accelerated upon events of default specified by the Administrator.

(g)     Each loan was required to be secured by a portion of the borrower's vested Account Balance under any Employer sponsored Defined Contribution plan.

Each loan was required to be evidenced by a promissory note from the borrower which was an investment solely of the appropriate account(s) of the borrower.  Any loss caused by nonpayment or other default on a borrower's loan obligation was to be borne solely by the appropriate account(s) of the borrower.  Administrative fees associated with a loan could be charged to the borrower, or to the borrower's account(s), subject to such administrative requirements as the Administrator could establish.  Outstanding loan balances did not share in the earnings and/or losses of the Investment Funds.

Loans were required to be made available to all borrowers on a reasonably equivalent basis, except that the Administrator was permitted to make reasonable distinctions based upon credit worthiness, other obligations of the borrower, legal

restrictions affecting payroll deductions and other factors that could adversely affect the ability to assure repayment through payroll deduction, where applicable. The Administrator could, in its discretion, refuse a requested loan where it determines that timely repayment of the loan through payroll deduction, where applicable, was not assured.

No distribution was to be made to a Participant or to a Beneficiary of a deceased Participant unless any outstanding loan balance has been fully repaid, reduced from the Participant's Account Balance, or rolled over to an eligible retirement plan.

Payment was required in full within 90 days of its scheduled due date, for current Employees, and within 30 days for external repayment payers. Written notice was to be sent by regular mail to the borrower within ten days of the scheduled due date at his or her last known address requesting payment within 90 days of the scheduled due date. The due date for current Employees was their next regularly scheduled pay date. If the full amount in default was not paid by money order, bank check or certified check within the 90/30 day period, the note was to become in default as of the expiration of the 90/30 day period and the entire remaining balance of the borrower's loan was to become fully payable. The Administrator was empowered to take any and all action to collect the loan due under the note including instituting suit to collect the loan together with the costs and expenses (including reasonable attorneys' fees) involved in the collection suit.

Loan amounts were to be withdrawn in the following order:

(i)      Company Contributions and earnings thereon;

- 61 -

(ii)     Defined Contributions and earnings thereon.

## SECTION 7.  VESTING PROVISIONS

7.1     Determination of Vesting

    7.1.1    General Rule

The vested percentage of a Participant in his or her Accrued Benefit not derived from his or her Employer Contribution Account or Cash Balance Account shall be determined in accordance with the following schedule:

| Completed Years of Vesting Service | Vested Percentage |
|---|---|
| Less than 5 | 0% |
| 5 or more | 100% |

    7.1.2    Early Retirement Age and Normal Retirement Age

A Participant who attains Normal Retirement Age while an Employee or who Terminates from Service on or after attaining Early Retirement Age, shall have a vested percentage of 100% in his or her Accrued Benefit.

    7.1.3    Disability

A Disabled Participant shall have the period of Disability credited for determining Years of Vesting Service.

    7.1.4    Plan Termination

Upon any termination or partial termination of the Plan or the complete discontinuance of contributions thereto (within the meaning of Code Section 411(d)(3)), the interest of each affected Employee in his or her Accrued Benefit at the date of such termination, partial termination, or discontinuance shall be nonforfeitable.

### 7.1.5   Death While an Employee

A Participant who dies while an Employee of an Employer shall be 100% vested in his or her Accrued Benefit.

### 7.2   Employer Contribution Account

If a Participant Terminates from Service for any reason other than death or retirement the Participant's vested interest in his or her Company Contribution Subaccount shall be determined in accordance with the following schedule:

| Completed Years of Vesting Service | Vested Percentage |
|---|---|
| Less than 2 | 0% |
| 2 but less than 3 | 25% |
| 3 but less than 4 | 50% |
| 4 but less than 5 | 75% |
| 5 or more | 100% |

Notwithstanding the above schedule, all Participants, immediately upon participation in the Plan, shall have a vested interest of 100% in their Employer Contribution Account for the years 1994 and 1995.

All Participants are 100% vested at all times in their Defined Contributions.

### 7.3   Code Section 420 Qualified Transfer

In the event the Employer elects to make a Qualified Transfer pursuant to Code Section 420 of Excess Pension Assets to a Code Section 401(h) Health Benefits Account the special vesting rules of Section 14.8 shall apply.

### 7.4   Aegon Transaction

All Employees who had a Termination from Service with the Employer as a result

of the sale of the Pension Operation to Aegon USA on December 31, 1993 shall be 100% vested in their Accrued Benefit as of that date.

7.5     CSC Transaction

All CIS Employees who had a Termination from Service because of the outsourcing of Corporate Information Systems Employees on December 31, 1994 shall be 100% vested in their Accrued Benefit as of that date.

7.6     Rules for Crediting Vesting Service

7.6.1   General Rule

Subject to Section 7.6.2, all Years of Vesting Service shall be credited for purposes of determining a Participant's Vesting Service.

7.6.2   Special Rules

(a)     If a Participant Terminates from Service and receives a distribution from the Plan of his or her entire nonforfeitable Accrued Benefit (or receives a deemed distribution from the Plan of his or her entire nonforfeitable Accrued Benefit if he or she was wholly nonvested in his or her Accrued Benefit), the nonvested portion of his or her Accrued Benefit and related Years of Benefit Accrual Service shall be forfeited.  If the Participant is later reemployed, such forfeited Accrued Benefit and Years of Benefit Accrual Service shall be restored if:

(i)     he or she resumes Service with an Employer as an Employee before a Break in Service occurs, or

(ii)    he or she:

(1)     resumes Service with an Employer as an Employee, and

(2)     repays to this Plan (by remitting directly to the Trustees) the full distribution of any Plan benefits received in the form of a lump sum cash payment plus interest determined at the rate set forth in Code Section 411(c)(2)(C), provided that such repayment (or deemed repayment if the Participant was wholly nonvested in his or her Accrued Benefit) must be made by the former Participant before the earlier of 5 years after the first date on which the former Participant is subsequently reemployed by the Employer, or the close of the first period of 5 consecutive one-year Breaks in Service commencing after the withdrawal.

(b)     A Participant who has Terminated from Service and is later reemployed may, even if no Years of Benefit Accrual Service were forfeited, repay his or her lump sum distribution in accordance with the provisions of subpart (a) of this Section and shall have his or her Accrued Benefit determined without regard to the prior distribution.

(c)     Any Participant who is or again becomes an Eligible Employee on or after January 1, 1995, shall have his or her Accrued Benefit calculated without regard to any of the Plan's rules governing the forfeiture of a Participant's Accrued Benefit. Notwithstanding the foregoing, the preceding sentence shall not apply to a Participant who has received a distribution of his or her vested Accrued Benefit as a lump sum distribution unless such lump sum is repaid pursuant to the provisions of subsection (a) or (b).

7.7    Change in Vesting Schedule

In the event the vesting schedule provided in Section 7 is amended, or changed on account of the Plan becoming or ceasing to be a Top Heavy Plan, as described in Section 8, any Participant who has completed at least three Years of Vesting Service may elect to have the amount of his or her nonforfeitable right to his or her Accrued Benefit computed under the Plan without regard to such amendment or change by notifying the Administrator in writing within the election period hereinafter described. The election period shall begin on the date such amendment is adopted or the date such change is effective, as the case may be, and shall end no earlier than the latest of the following dates:

(i)    The date which is 60 days after the day such amendment is adopted; or

(ii)    The date which is 60 days after the day such amendment or change becomes effective; or

(iii)    The date which is 60 days after the day the Participant is given written notice of such amendment or change by the Administrator.

Any election made pursuant to this Section 7.7 shall be irrevocable.

## SECTION 8.  TOP HEAVY PROVISIONS

8.1     General Rule

The Plan will be considered a Top Heavy Plan for any Plan Year if it is determined

to be a Top Heavy Plan as of the last day of the preceding Plan Year.  For purposes of

determining whether the Plan is a Top Heavy Plan, uniform actuarial assumptions which

reflect reasonable mortality experience and a reasonable interest rate shall be used.  The

present value of a Participant's Accrued Benefit shall be determined as of the last

Valuation Date used for computing Plan costs for minimum funding purposes which

occurs within the Plan Year in which the determination is being made, and shall include

amounts distributed to or on behalf of the Participant within the four preceding Plan

Years.  Notwithstanding any other provisions in the Plan, the provisions of this Section 8

shall apply and supersede all other provisions in the Plan during each Plan Year with

respect to which the Plan is determined to be a Top Heavy Plan.

8.2     Definitions

For purposes of this Section 8 and as otherwise used in the Plan, the following

terms shall have the meanings set forth below:

(a)      "Determination Date" means the last day of the immediately preceding Plan

Year or the last day of the first Plan Year.

(b)      "Key Employee" means any Employee or former Employee (and the

Beneficiaries of such Employee) who at any time during the five Plan Years ending on

the Determination Date was:

(i)     an officer of the Company or an Affiliate having an annual Limitation Compensation greater than 50% of the Code Section 415(b)(1)(A) dollar limitation.

(ii)     an owner (or considered an owner under Code Section 318) of one of the ten largest interests in the Company or an Affiliate if such individual's Limitation Compensation exceeds 100% of the Code Section 415(c)(1)(A) dollar limitation,

(iii)     a "5% owner" (as defined in Code Section 416(i)) of the Company or an Affiliate, or

(iv)     a "1% owner" (as defined in Code Section 416(i)) of the Company or an Affiliate who has an annual Limitation Compensation in excess of $150,000.

(c)     "Non-Key Employee" means any Employee who is not a Key Employee.

(d)     "Permissive Aggregation Group" means all qualified employee pension benefit plans in the Required Aggregation Group and any qualified employee pension benefit plans sponsored by the Company or an Affiliate which are not part of the Required Aggregation Group, but which satisfy the requirements of Code Sections 401(a)(4) and 410 when considered together with the Required Aggregation Group and which the Company elects to have included in the Permissive Aggregation Group.

(e)     "Required Aggregation Group" means the Plan and any other qualified employee pension benefit plan sponsored by the Company or an Affiliate (i) in which a Key Employee participates or participated at any time during the determination period

(regardless of whether the Plan has terminated) or (ii) which enables the Plan to meet the requirements of Code Sections 401(a)(4) or 410.

(f)     "Top Heavy Group" means all qualified employee pension benefit plans of the Company and its Affiliates in the Required Aggregation Group and any other qualified employee benefit plan of the Company and its Affiliates which the Company elects to aggregate as part of a Permissive Aggregation Group if, on any Determination Date, the Value of the cumulative annual accrued benefits for Key Employees under all Defined Benefit Plans and the aggregate Value of all Key Employees' accounts under all defined contribution plans exceed 60% of a similar sum determined for all Employees. For purposes of this computation, the accounts and cumulative annual accrued benefits of all Non-Key Employees who were, but no longer are, Key Employees will be disregarded. If the aggregated plans do not have the same Determination Date, this test will be made using the Value calculated as of each plan's Determination Date occurring during the same Plan Year.

(g)     "Top Heavy Plan Year" means any Plan Year during which the Plan is Top Heavy or part of a Top Heavy Group.

(h)     "Value" means:

(i)     for all Defined Benefit Plans, the present value calculated as provided in those plans. Solely for the purpose of determining if the Plan, or any other plan included in a Required Aggregation Group of which the Plan is a part, is Top Heavy, the accrued benefit of a Participant, other than a Key Employee, shall

be determined under (a) the method, if any, that uniformly applies for accrual purposes under all plans maintained by the Company or an Affiliate, or (b) if there is no such method, as if such benefit accrued not more rapidly than the slowest accrual rate permitted under the fractional rate of Code Section 411(b)(1)(C); and

(ii)     for all defined contribution plans, the fair market value of each Participant's account (including amounts attributable to voluntary employee contributions from a qualified employee pension benefit plan sponsored by the Company or an Affiliate) determined as of the most recent Determination Date increased by:

(1)     distributions made during the five Plan Years ending on the Determination Date (except distributions already included in determining the Value of the accounts) and distributions made during the five Plan Years preceding the Determination Date under a terminated plan which, if it had not been terminated, would have been required to be included in the Required Aggregation Group; and

(2)     all rollover contributions distributed from the plans to a qualified employee benefit plan not sponsored by the Company or an Affiliate, and decreased by;

(3)     any deductible employee contributions; and

(4)     rollover contributions received by the plans from a qualified employee benefit plan not sponsored by the Company or an Affiliate; and

- 71 -

(5)     rollover contributions distributed from the Plan to a qualified employee pension benefit plan sponsored by the Company or an Affiliate.

8.3   Top Heavy Vesting

If a Plan is a Top Heavy Plan with respect to any Plan Year, the nonforfeitable percentage of the Accrued Benefit derived from Employer contributions of each Participant who is credited with at least one Hour of Service on or after the date the Plan becomes Top Heavy shall not be less than the amount determined in accordance with the following vesting schedule:

| Completed Years of Vesting Service | Vested Percentage |
|---|---|
| Less than 3 | 0% |
| 3 or more | 100% |

8.4   Top Heavy Accrual

(a)     Subject to the provisions of Section 8.5, if the Plan is a Top Heavy Plan at any point in time, the Accrued Benefit derived from the Employer's contributions for each Participant who has completed a Year of Vesting Service and who is not a Key Employee shall not, at such point, be less than such Participant's Average Compensation, multiplied by the lesser of (i) two percent multiplied by the number of Years of Vesting Service or (ii) 20%.  For purposes of the preceding sentence, Years of Vesting Service shall not include any Year of Vesting Service credited with respect to Plan Years which began prior to January 1, 1984, or any other Year of Vesting Service credited with respect to a Plan Year during which the Plan was not a Top Heavy Plan.

(b)     For purposes of this Section 8.4, "Average Compensation" shall mean the

- 72 -

average of a Participant's Compensation for the period of five consecutive years (or, if the Participant does not have five consecutive years, his or her actual number of consecutive years) during which the Participant had the greatest Compensation.

8.5    <u>RESERVED</u>

8.6    <u>Other Plans</u>

The Administrator shall, to the maximum extent permitted by the Code and in accordance with IRS Regulations, abate the minimum benefit provisions of Sections 8.4 and 8.5 by first taking into account the contributions made under any other plans maintained by the Employer which are qualified under Code Section 401(a) to prevent duplication of minimum benefits.

## SECTION 9.  METHOD OF PAYMENT OF BENEFITS

9.1   <u>Normal Form</u>

(a)     Unmarried Participants.  The benefit to which an unmarried Participant is entitled under the Plan shall, except as otherwise provided in this Section 9, be payable in the form of a Straight Life Annuity.

(b)     Married Participants.  The benefit to which a Participant who is married is entitled under the Plan shall be a Qualified Joint and Survivor Annuity, with a 50% survivor annuity rate.

9.2   <u>Optional Forms</u>

(a)     Traditional Defined Benefit.  Subject to the provisions of Sections 9.8 and 9.9, a Participant (if married, with Spousal Consent) or former Participant or Beneficiary (other than a Beneficiary for whom an optional payout arrangement binding on such Beneficiary has been elected by the Participant) may elect, in lieu of the normal form, to have his or her Defined Benefit (excluding the portion of a Participant's Defined Benefit attributable to his or her Cash Balance Account) distributed in the form of:

(1)     A Straight Life Annuity,

(2)     A joint and 100%, joint and 75%, joint and 66 2/3% or joint and 50% survivor annuity (no Spousal Consent necessary if the Spouse is the Beneficiary) provided that, for non-Spouse beneficiaries, the Participant's benefit is not less than 40% of the Participant's Straight Life Annuity;

(3)     A ten or twenty year period certain Straight Life Annuity where the

period certain does not exceed the Participant's, former Participant's or

Beneficiary's (as applicable) life expectancy provided that if such person dies prior

to the end of the period certain, the remaining benefit shall be paid in a lump sum;

    (4)    A fixed dollar refund annuity,

    (5)    An immediate or deferred lump sum payment;

    (6)    An immediate or deferred lump sum payment of any portion of the

Participant's Accrued Benefit with the remainder paid out under any other form

available;

    (7)    A Social Security integrated option for early retirees whereby

Straight Life Annuity payments before age 65 will be larger than those after age 65

so that payments will be approximately level;

    (8)    A variable annuity of from 0% to 60% of the normal form of benefit,

where the Straight Life Annuity or a joint and survivor form of distribution is

elected.  This form is not available to a Participant who terminates service with the

Employer prior to the earlier of the Participant's Early or Normal Retirement Age.

    (b)    Employer Contribution Account.  A Participant may elect (if married, with

Spousal Consent) payment of the portion of his or her Accrued Benefit attributable to his

or her Participant's Employer Contribution Account in a single lump sum.

    (c)    Cash Balance Account.  Prior to attaining age 55 a Participant may only

receive his or her Cash Balance Account in a lump sum or the normal form described in

Section 9.1.  Upon attaining age 55, a Participant may elect to receive his or her Cash

Balance Account in any optional distribution form described in subpart (a).

(d)   Compliance With Minimum Required Distribution Rules.  Any option chosen is subject to the provision that payments must commence not later than the Employee's Required Beginning Date.

(e)   Deferral.  Unless a Participant elects upon his or her retirement to commence the commencement of benefits, payment made under an optional payout arrangement will commence as of his or her Normal Retirement Date.

(f)   All optional forms of benefit shall be the Actuarial Equivalent of the Straight Life Annuity form of benefit.

9.3   Limitations on Optional Forms

9.3.1   Combination of Fixed and Variable Annuities

When an optional form includes a fixed annuity and a variable annuity, the annuities must be of the same type and manner and have the same starting date.

9.3.2   Combination of Lump Sums and Annuities

When an optional form includes a deferred cash payment and a deferred annuity (or annuities), the lump sum payment date must correspond with the starting date of the annuity (or annuities).

9.4   Basis of Annuity Income

Each annuity is computed on the basis of the 1951 Group Annuity Table projected to 1972 by Scale C, with a three year set back for both males and females, and a 7.5% interest rate.  Variable annuity income will be computed using rates determined by the

- 76 -

Administrator.

9.5     Qualified Preretirement Survivor Annuity

(a)     Eligibility.  Subject to Section 6.2.2(a), a Qualified Preretirement Survivor Annuity shall be paid to the Surviving Spouse of a Participant who, after earning a nonforfeitable right to his or her Accrued Benefit, dies before the commencement of payment of his or her Accrued Benefit.

(b)     Commencement.  Payment of a Qualified Preretirement Survivor Annuity may commence as soon as practicable on the first day of a month following a Participant's death once the Surviving Spouse has submitted an application for benefits in accordance with procedures prescribed by the Administrator.  Payments shall commence on the first day of the month following the Administrator's receipt and acceptance of the forms, retroactive to the first day of the month following the date of death of the Participant.

(c)     Consent.  To the extent required by the Code and IRS Regulations, if the value of a Qualified Preretirement Survivor Annuity is in excess of $3,500, it shall not commence to be paid prior to the date which was or would have been the Participant's Normal Retirement Date (had the Participant lived) without the written consent of the Participant's Surviving Spouse.  In the absence of such consent, payment of the Qualified Preretirement Survivor Annuity shall not be made until the earlier of (i) the first day of the month following receipt of the receipt and acceptance of the required consent by the Administrator, or (ii) the date which would have been the Participant's Normal Retirement Date, had the Participant lived.

- 77 -

9.6     Spouse/Survivors Income Benefit

(a)     The Surviving Spouse or Beneficiary (with Spousal Consent, if applicable) of a Participant who has:

(1)     Completed five or more Years of Vesting Service prior to January 1, 1995 (or ten or more Years of Vesting Service prior to January 1, 1989),

(2)     Has attained age 55 as of his or her Termination from Service or death, and

(3)     Is either

(i)     An Employee on the date of his or her death; or

(ii)     Terminated from Service and immediately commenced payment of his or her Accrued Benefit upon Termination from Service, shall be eligible to receive the ancillary SSIB benefit provided by this Section 9.6.

Notwithstanding the foregoing, except for CIS Employees who are reemployed by the Company on or after January 1, 1995, and who subsequently satisfy the requirements of the preceding sentence, a Participant described in the preceding sentence shall not be eligible for the SSIB if he or she terminates employment prior to age 55 and is subsequently reemployed by the Company.

(b)     The SSIB shall be a Straight Life Annuity equal to 25% of the Straight Life Annuity that would have been payable if the Participant had retired on the earlier of (i) the day before his or her death or (ii) December 31, 1994, and deferred payment to his or her Normal Retirement Date, or, if a Participant has already attained his or her Normal

Retirement Age, deferred payment until December 31, 1994. The Straight Life Annuity described in this Section 9.6(b) shall be determined using the retirement benefit formula described in Section A5.5. The SSIB shall not be reduced for early commencements.

(c)     If a Surviving Spouse is more than four years younger than the Participant, the SSIB described in Section 9.6(b) shall be reduced by 0.5% for each year in excess of a four year age difference. If a Participant does not have a Surviving Spouse (or the Surviving Spouse has given Spousal Consent to the designation of a Beneficiary), his or her SSIB shall be determined as if he or she had a Surviving Spouse with an age equal to his or her age.

(d)     The SSIB may also be paid in a lump sum that is the Actuarial Equivalent of the standard SSIB benefit. If a Participant does not have a Surviving Spouse (or the Surviving Spouse has given Spousal Consent to the designation of a Beneficiary), the SSIB shall be paid to the Participant's Beneficiary in the form of a lump sum distribution.

(e)     Unless paid in a lump sum pursuant to Section 9.5(d), the SSIB shall be paid to the Surviving Spouse as a Straight Life Annuity beginning on the first day of the month following the month of the Participant's death (including any retroactive payments). Upon the death of the Surviving Spouse, payment of the SSIB shall cease. In the event that a Surviving Spouse does not survive the Participant by at least 30 days, the SSIB will be paid in a lump sum to the Participant's estate.

9.7    Required Beginning Date

(a)     Notwithstanding any other provision of the Plan, unless otherwise provided

by law, any benefit payable to a Participant shall commence no later than the April 1st of the calendar year following the calendar year in which such Participant attains age 70 1/2; provided, however, that if a Participant attained age 70 1/2 prior to January 1, 1988, except as otherwise provided in Section 9.7(e), any benefit payable to such Participant shall commence no later than April 1st of the calendar year following the later of (i) the calendar year in which the Participant attains age 70 1/2 or (ii) the calendar year in which the Participant retires.  Such benefit shall be paid, in accordance with IRS Regulations, over a period not extending beyond the life expectancy of such Participant or the joint life expectancies of such Participant and his or her Beneficiary.  With reference to the Employer Contribution Account, life expectancy for purposes of this Section will be recalculated annually in accordance with IRS Regulations.

(b)     If distribution of a Participant's benefit has commenced prior to a Participant's death, and such Participant dies before his or her entire benefit is distributed, distribution of the remaining portion of the Participant's benefit to the Participant's Beneficiary shall be made at least as rapidly as under the method of distribution in effect as of the date of the Participant's death.

(c)     If a Participant dies before distribution of his or her benefit has commenced, distributions to any non-Spouse Beneficiary shall be made on or before the December 31st of the calendar year which contains the fifth anniversary of the date of such Participant's death; provided, however, at the non-Spouse Beneficiary's irrevocable election duly filed with the Administrator before the applicable commencement date set

forth in the following sentence, any distribution to a non-Spouse Beneficiary may be made over the life of the non-Spouse Beneficiary or a period not extending beyond the life expectancy of the non-Spouse Beneficiary. Such distribution shall commence not later than the December 31st of the calendar year immediately following the calendar year in which the Participant died or, in the event such Beneficiary is the Participant's Surviving Spouse, on or before the December 31st of the calendar year in which such Participant would have attained age 70 1/2, if later (or, in either case, on any later date prescribed by IRS Regulations). If such Participant's Surviving Spouse dies after the Participant's death but before distributions to the Surviving Spouse commence, this Section 9.7(c) shall be applied to require payment of any further benefits as if the Surviving Spouse were the Participant.

(d)    Pursuant to IRS Regulations, any benefit paid to a child shall be treated as if paid to a Participant's Surviving Spouse if such amount will become payable to such Surviving Spouse on the child's attaining majority, or other designated event permitted by IRS Regulations.

(e)    If a Participant who is a five-percent owner attained age 70 1/2 before January 1, 1988, any benefit payable to such Participant shall commence no later than the April 1st of the calendar year following the later of (i) the calendar year in which the Participant attains age 70 1/2 or (ii) the earlier of (A) the calendar year within which the Participant becomes a five-percent owner or (B) the calendar year in which the Participant retires. For purposes of this Section 9.7(e), a five-percent owner shall mean a five-

- 81 -

percent owner of such Participant's Employer as defined in Code Section 416(i) at any time during the Plan Year in which such owner attains age 66 1/2 or any subsequent Plan Year.

(f)     Notwithstanding the foregoing, effective January 1, 1998, a Participant's benefits shall commence no later than the April 1st of the calendar year following the later of (i) the calendar year in which the Participant attains age 70 1/2 or (ii) the calendar year in which the Participant ceases to be an Eligible Employee.  However, in the case of a five-percent owner (as defined in Code Section 416(i)) or an individual who is an Employee solely on account of being a Field Underwriter, a Participant's benefit shall commence no later than the April 1st of the calendar year following the calendar year in which the Participant attains age 70 1/2.  If so elected during 2000, any Participant who reached age 70 1/2 prior to January 1, 2000, was not a five-percent owner and was still employed by the Company could elect to cease Plan distributions until Termination from Service.

Notwithstanding anything in the Plan to the contrary, all distributions made under the Plan shall comply with Code Section 401(a)(9), including the minimum distribution incidental death benefit requirement under Code Section 401(a)(9)(G) and IRS Regulation § 1.401(a)(9)-2.

9.8     <u>Small Benefits and Cashouts</u>

Payment of any Accrued Benefit with an Actuarial Equivalent value of $3,500 or less at Termination from Service shall be made in a lump sum cash payment in full

settlement of the Plan's liability therefor.

9.9   Suspension of Benefits

Notwithstanding anything contained in the Plan to the contrary, if a Participant continues in employment or is reemployed by the Company or an Affiliate after his or her Normal Retirement Date:

(a)   He or she shall be entitled to receive a monthly installment of his or her retirement benefit in respect of each calendar month during which his or her employment does not constitute Section 203(a)(3)(B) Service.

(b)   Within one month after his or her Normal Retirement Date (or in the case of a rehired former Participant, within one month after his or her date of reemployment), he or she shall be furnished with a notice indicating, the circumstances under which his or her retirement benefit may be suspended as a result of his or her employment after his or her Normal Retirement Date.  Such notice shall contain a description of the specific reasons why retirement benefits are being suspended, a general description of the Plan provisions relating to such suspension, a copy of such Plan provisions and a statement to the effect that the applicable Labor Department Regulations may be found in section 2530.203-3 of the Code of Federal Regulations.

(c)   The Administrator may adopt such rules and regulations as it deems necessary or advisable to administer the provisions of this Section 9.9 in accordance with section 2530.203-3 of the Labor Department Regulations and the applicable rules and IRS Regulations promulgated by the IRS.

(d)     For purposes of this Section, Section 203(a)(3)(B) Service means with respect to any Participant, a calendar month during which the Participant is employed with the Company or an Affiliate for at least 40 Hours of Service in a calendar month.

(e)     Notwithstanding the foregoing, a Participant's benefit shall be computed in years following the Participant's attaining of age 70 1/2 pursuant to the provisions of IRS Notice 97-75.

9.10    Time of Distribution

Unless the Participant elects otherwise, the payment of benefits under the Plan shall commence not later than the 60th day after the latest of the close of the Plan year in which (i) the Participant attains age 65, (ii) occurs the 10th anniversary of the year the Participant commenced participation under the Plan, and (iii) the Participant terminates Employment with the Company and all Affiliates.

9.11    Direct Rollover

Notwithstanding anything in this Plan to the contrary, a Participant or the Participant's Beneficiary, if the Beneficiary is the Participant's Surviving Spouse, may elect to have all or a portion of any amount payable to him or her from the Plan transferred directly to an "eligible retirement plan" within the meaning of Code Section 401(a)(31), in lieu of having such amount paid to him or her.  This option (a) shall not apply to any portion of the amount payable to a Participant which (i) is not eligible for direct rollover to an eligible retirement plan under either Code Section 402(c) or Code Section 401(a)(31), or (ii) is required to be distributed under Code Section 401(a)(9); and

(b) shall be subject to such uniform rules and procedures as the Administrator may prescribe from time to time in accordance with Code Section 401(a)(31) (including, but not limited to, any minimum transfer amount).

9.12    Restrictions On Benefits for Highly Compensated Employees

The retirement benefit payable under the Plan to, or with respect to, any Highly Compensated Employee shall be limited as set forth below:

(a)    Each Plan Year, the benefit payments made under the Plan to, or with respect to, any Highly Compensated Employee, if not being paid in the form of a Straight Life Annuity, shall be limited to the payments that would be so made if the benefit was being paid as an Actuarially Equivalent Straight Life Annuity.  However, the preceding sentence shall not apply to a Highly Compensated Employee in any Plan Year with respect to which (i) after the benefit payments to, or with respect to, such Highly Compensated Employee, the value of the Plan's assets equals or exceeds 110 percent of the value of the Plan's current liabilities, as defined in Code Section 412(l)(7), or (ii) the Actuarial Equivalent value of the benefit payments to, or with respect to, such Highly Compensated Employee for the Plan Year either (1) is less than 1% of the value of the Plan's current liabilities, as defined in clause (i), or (2) does not exceed the amount described in Code Section 411(a)(11)(A).

(b)    The limitation in subparagraph (a) shall not apply to, or with respect to, a Highly Compensated Employee for any Plan Year during which such Highly Compensated Employee is not in the group consisting of the top 25 nonexcludable

employees, as defined in IRS Regulation § 1.401(a)(4)-12, and former Employees when ranked on the basis of Compensation for such Plan Year or for any prior Plan Year.

(c)     Upon the termination of the Plan, the benefit payable under the Plan to, or with respect to, any Highly Compensated Employee shall be limited to a benefit that is not discriminatory under Code Section 401(a)(4) and IRS Regulations thereunder.

## SECTION 10.  PLAN ADMINISTRATION

### 10.1   Benefits Committee

#### 10.1.1 General

The Benefits Committee is authorized to act on behalf of the Company under the terms of this Plan to:

(a)     designate the Trustee and to enter into or amend the Trust Agreement from time to time, provided that the members of the Benefits Committee, acting collectively, shall be the Trustee unless the Benefits Committee designates another Trustee;

(b)     determine the level of Employer and Employee contributions, if any, vesting, if any, for Participants, and any other factor affecting the cost or the level of benefits for Participants and others under this Plan;

(c)     amend the Plan in accordance with Section 13.1; and

(d)     consent to the adoption of this Plan by any Affiliate in accordance with Section 12.

#### 10.1.2 Named Fiduciary

The Benefits Committee, as a "named fiduciary" of the Plan, is responsible for and has authority to:

(a)     determine the long-term investment policy of the Plan and the overall manner in which the Plan should be funded in order to carry out that investment policy;

(b)     in accordance with Section 11, to:

(i)     designate Investment Funds,

  (ii) appoint Investment Managers to manage some or all of the Plan's assets,

  (iii) vote shares of Employer Stock held in the Plan unless voted by an Investment Manager, and

  (iv) exercise all such other authority or power as may be necessary or appropriate in connection with the management and administration of the Plan's assets;

  (c) direct the Trustee as may be necessary or appropriate to carry out any of its duties and responsibilities under the Plan.

The Benefits Committee may delegate to the BPAC any of its responsibilities and authority hereunder and, in that event, the BPAC shall be duly authorized to act on behalf of the Benefits Committee in carrying out or exercising any such delegated responsibility or authority, and for purposes of such delegation, shall be a "named fiduciary" of the Plan. The Benefits Committee may designate a person other than the BPAC (including the Benefits Committee) as Administrator. In carrying out its duties and responsibilities hereunder, the Benefits Committee shall have all such authority and powers as may be necessary or appropriate, including without limitation, the authority and powers set forth in Section 10.4.

  10.1.3 <u>Membership</u>

  The Board of Directors has the exclusive responsibility and authority to select, retain and remove Benefits Committee members. Any member of the Benefits

Committee may be removed by the Board of Directors at any time upon written notice to such member, the other members of the Benefits Committee, and the Trustee.  Any member of the Benefits Committee may resign at any time upon written notice to the Board of Directors and to the other members of the Benefits Committee and to the Trustee.  In the event of a vacancy in the membership of the Benefits Committee arising for any reason, the Board of Directors shall appoint a successor member who, upon acceptance of such appointment, shall have the same powers and duties as those conferred upon his or her predecessor.  Pending the appointment of a successor member and the acceptance of such appointment, the remaining members of the Benefits Committee shall have the full power to take any action hereunder.

10.2    Benefit Plans Administration Committee (BPAC)

10.2.1 General

The BPAC is authorized to act on behalf of the Company under the terms of this Plan to amend the Plan in accordance with Section 13.1.1.  In addition, the BPAC shall carry out all responsibilities, and exercise all authority, of the Administrator under the terms of the Plan, unless the Benefits Committee appoints another Administrator.  In carrying out its responsibilities as Administrator or any of its other duties and responsibilities under the terms of this Plan, including any responsibilities or authority delegated to it by the Benefits Committee, the BPAC shall have all such authority and powers as may be necessary or appropriate, including without limitation, the authority and powers set forth in Section 10.4.

### 10.2.2 Membership

The members of the BPAC shall be appointed by the Benefits Committee and may be removed by the Benefits Committee at its discretion.  Members of the BPAC may, but need not be, directors, officers, or Employees of the Employer.  Unless the Benefits Committee otherwise provides, any member of the BPAC who is an Employee of the Employer at the time of his or her appointment will be considered to have resigned from the BPAC when no longer an Employee.  In the event of a vacancy in the membership of the BPAC arising for any reason, the Benefits Committee shall appoint a successor member who, upon acceptance of such appointment, shall have the same powers and duties as those conferred upon his or her predecessor.  Pending the appointment of a successor member and the acceptance of such appointment, the remaining members of the BPAC shall have the full power to take any action hereunder.

### 10.3   Administrator

The Administrator is the "administrator" of the Plan as described by Section 3(16) of ERISA and as such is a "named fiduciary" of the Plan.  The Administrator is responsible for and has authority to manage the operation and administration of the Plan, including, without limitation, responsibility for and authority to:

(a)      establish and maintain records of each Participant's Accrued Benefit;

(b)      comply with or monitor the Plan's compliance with all governmental laws and regulations relating to recordkeeping and reporting of participants' benefits, other notifications to participants and beneficiaries, reporting to the IRS and the Labor

Department and compiling and maintaining any and all records the Administrator determines are necessary, appropriate or convenient in connection with the administration of the Plan;

(c)     obtain fidelity bonds and insurance coverage in accordance with applicable provisions of ERISA;

(d)     establish and maintain procedures for calculating, processing and making benefit payments and other distributions, including distributions in connection with domestic relations orders, and administer all such payments and distributions;

(e)     establish and maintain procedures for making initial and final determinations regarding claims under the Plan, including making initial and final determinations regarding eligibility for participation, vesting, hardship distributions, in service withdrawals, distributions on Termination from Service, retirement or death, or other benefits;

(f)     process loans;

(g)     process rollover contributions out of the Plan;

(h)     direct the Trustee as may be necessary or appropriate to carry out any of the Administrator's duties and responsibilities under the Plan; and

(i)     to the extent that the Administrator is not authorized to act, make recommendations to the Benefits Committee with respect to Plan amendments or other actions which may be necessary or appropriate to facilitate the administration, management, or interpretation of the Plan or to maintain the qualified status of the Plan

under the Code.

In carrying out its duties and responsibilities hereunder or any other provision of the Plan, the Administrator shall have all such authority and powers as may be necessary or appropriate, including without limitation, the authority and powers set forth in Section 10.4.

10.4   Powers of the Benefits Committee, BPAC, and Administrator

The Benefits Committee, BPAC and Administrator are each authorized to:

(a)      allocate fiduciary responsibilities to, or appoint one or more individuals (including, in the case of the Benefits Committee and BPAC, any individual member of such committee) or entities and delegate such of its powers and duties as it deems desirable to any such individual or entity, in which case every reference herein made to the Benefits Committee, BPAC or Administrator shall be deemed to mean or include any such individuals or entities as to matters within their jurisdiction;

(b)      adopt any rules, regulations or procedures for the Plan that may be appropriate or helpful in discharging their responsibility or exercising their authority with respect to the Plan;

(c)      select, employ and compensate from time to time such benefit consultants, actuaries, accountants, attorneys, and other agents and employees as they may deem necessary or advisable in the proper administration and management of the Plan and the assets of the Plan and to rely on the advice and information provided by them; and

(d)      exercise itself or through its delegates full discretionary authority to

determine all questions and matters that may arise in the administration, operation, management or investment of the Plan, including without limitation the resolution of questions of law or fact, interpretation or application. In all such cases, each decision of the Benefits Committee, the BPAC or the Administrator (as the case may be) shall be given full force and effect, and shall be final, binding, and conclusive upon all parties and shall be afforded the maximum deference permitted by law.

The list of powers and duties set forth above is not intended to be either complete or conclusive. Each of the Benefits Committee, BPAC and Administrator shall, in addition, have such powers or duties as it may reasonably determine to be necessary or appropriate to carry out the administration, operation management and investment of the Plan, provided that the exercise thereof conforms to the provisions hereof.

10.5    Authorization

The Benefits Committee and BPAC shall each act by a majority vote at a meeting, or in writing by mail, telephone, fax, electronic mail or such other electronic means as agreed upon by committee members, without a meeting pursuant to committee procedures. The Benefits Committee or the BPAC each may authorize any person to execute any document or documents on its behalf, and any interested person, upon receipt of notice of such authorization directed to it, may thereafter accept and rely upon any document executed by such authorized person until the Benefits Committee or the BPAC shall deliver to such interested person a written revocation of such authorization. A majority of the members of the Benefits Committee shall constitute a quorum for the

transaction of business at a meeting of that committee, and a majority of the members of the BPAC shall constitute a quorum for the transaction of business at a meeting of that committee. A Benefits Committee or BPAC member shall not vote on any question relating specifically to himself or herself.

10.6   Dual Capacity Fiduciaries

Any individual, group of individuals or entity may serve in more than one fiduciary capacity with respect to the Plan (including, but not limited to, service on the Benefits Committee and as a member of the BPAC). Nothing herein shall prohibit any fiduciary of this Plan (including without limitation, any member of the Benefits Committee or BPAC or any Investment Manager) from:

(a)     receiving any benefit to which he or she may be entitled as a Participant, former Participant or Beneficiary of this Plan, so long as his or her benefit is computed and paid on a basis which is consistent with the terms of this Plan as applied to all other Participants, former Participants and Beneficiaries;

(b)     serving as such in addition to being a director, officer, Employee, agent or other representative of the Employer; or

(c)     receiving any reasonable compensation for services rendered, or for the reimbursement of expenses properly and actually incurred, in the performance of his or her duties with respect to the Plan, except that no person serving as a fiduciary (or as a member of a fiduciary committee including the Benefits Committee or the BPAC) who already receives full-time pay from the Employer may receive any compensation for

services rendered from the Plan, except for reimbursement of expenses properly and actually incurred.

10.7    Allocation or Delegation of Fiduciary Responsibility

To the extent that the Plan allows the Benefits Committee, the BPAC, the Administrator, the Trustee or any other "named fiduciary" of the Plan to allocate any of its fiduciary responsibilities to any person, or designate another person to carry out any such responsibility, then the named fiduciary making such allocation or delegation shall not be liable for any act or omission of the person carrying out the allocated or delegated responsibility, except to the extent provided by ERISA.  Except as otherwise provided by ERISA, neither the Company, the Benefits Committee, the BPAC, the Administrator, the Trustee, nor any other fiduciary of the Plan shall be required to inquire into or be responsible for any act or failure to act by any another fiduciary (including without limitation, the Benefits Committee, the BPAC, the Administrator and the Trustee) or any Participant.

10.8    Domestic Relations Orders

Any other provision of the Plan to the contrary notwithstanding, the Administrator shall have all powers necessary with respect to the Plan for the proper operation of Code Section 414(p) with respect to qualified domestic relations orders, including, but not limited to, the power to establish all necessary or appropriate procedures, to authorize the establishment of new accounts with such assets and subject to such investment control by the Administrator as the Administrator may deem appropriate, and the Administrator may

decide upon and make direct appropriate distributions therefrom. Anything in the preceding paragraph to the contrary notwithstanding, in the case of a domestic relations order entered before January 1, 1985, the Administrator -

(a)    shall treat such order as a qualified domestic relations order if the Administrator is paying benefits pursuant to such order on such date, and

(b)    may treat any other such order entered before such date as a qualified domestic relations order even if such order does not meet the requirements of the amendments made by section 104 and 204 of the Retirement Equity Act of 1984.

The domestic relations order procedures as of the date of this restatement are as follows:

(i)    Upon receipt of a domestic relations order, the Administrator will determine whether the order is a qualified domestic relations order under the Code and ERISA.

(ii)    The Administrator, upon receipt of a domestic relations order, shall notify the Participant and any existing alternate payees of such receipt. The Administrator shall furnish to the Participant and prospective alternate payee(s) a copy of these procedures.

(iii)    During any time for which the determination of the qualified status of a domestic relations order is being made, the Administrator must defer the payment of any benefits in dispute. These benefits shall be separately accounted for. The Administrator may also limit Participant directed transactions such as withdrawals if required to preserve the amount which would be payable to the alternate payee. This transaction deferral or segregation of benefits shall continue if, after the domestic relations order has

been found not to be a qualified domestic relations order, the Administrator has notice that any deficiencies in the order are being rectified.

(iv)    If, within the 18 month period of the segregation of funds or accounts, the domestic relations order is not determined to be qualified, the amounts held for the alternate payee shall revert back to the persons who would have been entitled to them had there been no domestic relations order, and/or any accounts which were segregated shall no longer be segregated.

(v)    If, after the 18 month period beginning on the date payments under the domestic relations order would have to begin the order is not found to be qualified, the order is to be applied prospectively only.  Under these circumstances the Plan is not liable for payments to an alternate payee for the period before the order is determined to be qualified.

(vi)    Once it is determined whether or not the order is a qualified domestic relations order, the Administrator shall so notify the Participant and alternate payee(s).

(vii)    Notwithstanding any provision of the Plan to the contrary, payment of benefits pursuant to a qualified domestic relations order shall not commence prior to the earliest retirement age of the Participant, as defined in Code Section 414(p).

10.9    Payment of Expenses

The Administrator may cause any fees, costs, expenses or compensation of the Plan to be paid from the assets of the Plan to the fullest extent that it is legally permissible for such expenses to be so paid.

Any Employer may, but shall not be required to, pay expenses of the Plan from time to time, and the Plan shall reimburse the Employer for such expenses to the extent so requested by the Employer so long as it is legally permissible for such expenses to be paid out of the Plan's assets.  Any election by the Employer to pay all or part of any expense of the Plan shall not in any way limit the Employer's right to determine that it will not elect to pay similar or other expenses on the Plan's behalf at any other time.

10.10   Claims Procedure

Effective January 1, 2002, the claims procedure of this Plan shall be administered by the Administrator and shall include:

10.10.1     Claims Denial Procedure

In the event a claim has been denied in whole or in part, a claimant will receive written notification from the Administrator.  The Administrator's adverse benefit determination shall be provided within a reasonable period of time, but not later than 90 days after receipt of the completed claim form or written claim by the Administrator, unless the Administrator determines that special circumstances require an extension of time for processing the claim.

If the Administrator determines that an extension of time for processing is required, written notice of the extension shall be furnished to the claimant prior to the termination of the initial 90-day period.  In no event shall such extension exceed a period of 90 days from the end of such initial period.  The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the

Administrator expects to render the benefit determination. The written response shall include the specific reason or reasons for the denial, the specific Plan provisions on which the denial is based, a description of any additional material or information necessary for the claimant to prove the claim, an explanation of why such material or information is necessary and an explanation of the Plan's claim review procedures, including the claimant's right to bring a civil action under ERISA Section 502(a) following an adverse benefit determination on review. In addition, upon request and free of charge, the claimant will be provided with reasonable access to, and copies of, all documents, records, and other information relevant to the claim process. A claim is considered approved only if its approval is communicated in writing to a claimant.

　　10.10.2　　Claims Appeal Procedure

　　If a claim is denied in whole or in part, the claimant may appeal for a review. In order to appeal, the claimant must file a written appeal with the Administrator no later than 60 days from receipt of the denial letter. The Administrator's review will take into account all comments, documents, records and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial determination.

　　The claimant will be notified of the Administrator's determination on review within a reasonable period of time, but not later than 60 days after receipt of the claimant's request for review, unless the Administrator determines that special circumstances (such as the need to hold a hearing) require an extension of time for

processing the claim.  If the Administrator determines that an extension of time for processing is required, written notice of the extension shall be furnished to the claimant prior to the termination of the initial 60-day period.  In no event shall such extension exceed a period of 60 days from the end of the initial period.  The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the Administrator expects to render the determination on review.

The written response on appeal will include the specific reason or reasons for the adverse determination and reference to the specific Plan provisions upon which the denial is based.  In addition, upon request and free of charge, the claimant will be provided with reasonable access to, and copies of, all documents, records, and other information relevant to the claim for benefits.  If a claim is denied in whole or in part in the appeal process, the claimant shall also be notified that he or she has the right to bring a legal action under Section 502(a) of ERISA.

In reviewing claims, the Administrator shall have sole and full discretionary authority to interpret the terms of the Plan, including any uncertain terms, to determine eligibility for, entitlement to, and the amount of any benefits, and to make factual findings and determine any other claims related to the Plan.  Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect and shall be final, binding and conclusive on all interested parties and shall be afforded the maximum deference permitted by law.

10.11  Beneficiaries

### 10.11.1   General Rule

Subject to Section 9, a Participant may designate one or more persons as his or her Beneficiary by filing a Beneficiary designation with the Administrator.  Such designation shall be made on the form prescribed for such purpose by the Administrator and in accordance with rules established by the Administrator.  In the event a Participant fails to make such a designation, or in the event that no designated Beneficiary survives the Participant, any amount due after the Participant's death shall be paid to the Participant's Surviving Spouse, or if there is no Surviving Spouse, to the Participant's estate.  No Beneficiary shall have any right to benefits under the Plan unless he or she shall survive the Participant.  If a Participant and his or her Beneficiary die under such circumstances that it is not possible to determine who died first, it shall be presumed that the Participant survived the Beneficiary.

### 10.11.2      Special Rule for Surviving Spouses

If a Participant has a Surviving Spouse, the Surviving Spouse shall be the Participant's Beneficiary unless the Participant has obtained Spousal Consent to the Participant's designation of another person as Beneficiary.

### 10.12   Correction of Mistaken Payments

In the event the Administrator discovers that a mistake has been made in the calculation of the benefit amount payable to any Participant or Beneficiary, it will correct the mistake as soon as practicable.  If any overpayment in monthly payments has been made, the Administrator will reduce future monthly payments to the extent necessary to

recover the overpayment within a reasonable period of time, using life expectancy as of the calculation date.  If an overpayment has been made in a lump sum, the Administrator will seek cash reimbursement, provided that, if the Administrator determines that the burden or expense of seeking recovery of any overpayment would be greater than the potential recovery warrants, it may, in its discretion, forego recovery efforts.  If an underpayment in monthly payments has been made, the Administrator either will pay the amount of the underpayment in a single sum or will increase future monthly benefit payments to the extent necessary to pay the underpayment within a reasonable period of time, with interest based on the interest rate for determining the Actuarial Equivalent of lump sum distributions.  If an underpayment has been made in a lump sum, the Administrator will pay the amount of the underpayment in a single sum with interest based on the interest rate for determining the Actuarial Equivalent of lump sum distributions.  If the Plan makes a payment without required Participant or Spousal Consent, the Administrator will seek to obtain the consent retroactively, and if it is unable to do so, will provide the Qualified Joint and Survivor Annuity with any offset permitted by applicable law.

## SECTION 11.  PLAN INVESTMENTS AND TRUST FUND

11.1   Establishment of Trust

The Company has created the Trust in order to hold the assets of the Plan to the extent required by ERISA and in accordance with the Trust Agreement.  The assets of the Trust shall be used solely to provide benefits under the Plan and to pay the reasonable expenses of the Plan.  The Trust may be commingled for investment purposes with like separate trust funds of any other plans or trusts of the Company or an Affiliate meeting the requirements of Section 401(a) and 501(a) of the Code and may be invested in any appropriate investment vehicle in accordance with Section 11.3.

11.2   Trustee

11.2.1 Authority

The Trustee shall have exclusive responsibility for the custody of assets transferred to it from and after the receipt of any such assets and until the distribution or transfer of such assets from the Trust, and shall have the authority and discretion to manage, acquire, and dispose of the assets of the Trust in accordance with the terms of the Plan and the Trust Agreement; provided that the Trustee shall be subject to the direction of the Benefits Committee and the Administrator in accordance with the terms of this Plan and to the direction of one or more Investment Managers to the extent that responsibility for the management of any assets is granted to any Investment Managers.

11.2.2 Administration of Authority

In carrying out its responsibilities and authority, the Trustee is authorized to:

- 103 -

(a)     allocate or delegate any of its responsibilities (other than trustee responsibilities) to one or more individuals (including, where the members of the Benefits Committee are Trustee, to any individual member) or entities, in which case every reference herein made to the Trustee shall be deemed to mean or include any such individuals or entities as to matters within their jurisdiction;

(b)     adopt any rules, regulations or procedures for the Plan that may be appropriate or helpful in discharging its responsibility or exercising its authority with respect to the Plan; and

(c)     select, employ and compensate from time to time sub-trustees, custodians, consultants, accountants, attorneys, and other agents and employees as the Trustee may deem necessary or advisable in carrying out its responsibilities with respect to the Plan and to rely on the advice and information provided by them.

11.3    Plan Investments

11.3.1 General

Subject to Sections 11.3.2 and 11.3.3, the assets of the Plan may be invested in any investments as determined by the Benefits Committee, including without limitation in (a) interests in group, common, or collective trusts maintained by a bank or separate accounts maintained by an insurance company for the collective investment of employee benefit plans qualified under Code Section 401(a), including any such trusts or separate accounts that may be established or maintained by the Company or an Affiliate; (b) policies issued by insurance companies, including the Company or an Affiliate; and (c) mutual funds,

including mutual funds sponsored by or receiving services from the Company or any Affiliate. To the extent allowed by law, the Trustee, the Benefits Committee, the BPAC and the Administrator shall not be liable for any act or omission of any insurance company, bank or trust company or mutual fund investment manager with respect to any duties delegated to such insurance company, bank or trust company or mutual fund investment manager as a result of an investment of Plan assets. Subject to ERISA, amounts invested in insurance contracts or policies issued by an insurance company qualified to do business in a state or otherwise held by an insurance company (including the Company or an Affiliate) need not be held in the Trust.

11.3.2 <u>Investment Funds</u>

The Benefits Committee shall from time to time designate at least three Investment Funds to be made available to Participants for the investment of their Employer Contribution Accounts. Each Investment Fund shall consist of such assets as may be prescribed by the Benefits Committee or consistent with investment guidelines or objectives prescribed by the Benefits Committee. Investment Funds may be established, modified, cancelled or replaced at any time at the direction of the Benefits Committee. The Benefits Committee may designate Investment Funds that impose "market value adjustments" or penalties for withdrawals from the Investment Fund before the date of maturity of the underlying Investment Fund instruments or to the extent that such adjustments or penalties may otherwise be imposed in connection with such underlying investments. The assets and investment experience of each Investment Fund will be

accounted for separately.

### 11.3.3 Direction of Account Balances

Amounts in each Participant's Employer Contribution Account shall be allocated or reallocated among the Investment Funds in accordance with each Participant's investment directions as described by Section 3.9.1, provided that the Administrator may decline to implement investment instructions where it deems appropriate, including without limitation, those that may result in a prohibited transaction under ERISA, generate taxable income to the Plan, or violate applicable securities or other laws.  Each Participant assumes all risks connected with any decrease in market value of any securities in the Investment Funds, and such investments shall be the sole source of payments to be made under the Defined Contribution Plan.

### 11.4   Voting and Tender Offers

All Company stock held in the Trust shall generally be voted by the Trustee as directed by the Benefits Committee unless under management by an Investment Manager. The Benefits Committee shall establish procedures to provide the Trustee with voting directions for shares of Employer Stock and may elect to engage an independent third-party fiduciary to analyze and make a recommendation if it believes that a voting issue conflict of interest may prevent the Benefits Committee from voting in the best interest of the Participants.

### 11.5   Investment Managers

The Benefits Committee may, by an instrument in writing, appoint one or more

persons as an Investment Manager.  Each person so appointed shall be (a) an Investment Adviser registered under the Investment Advisers Act of 1940, (b) a bank, as defined in that Act, or (c) an insurance company qualified to manage, acquire or dispose of any asset of the Plan under the laws of more than one state, including the Company or an Affiliate. Notwithstanding the foregoing, the Benefits Committee also may appoint itself, the BPAC or the Administrator to act as Investment Manager for any other Investment Fund, with authority to direct the Trustee with respect to such Investment Fund.

Each Investment Manager shall acknowledge in writing that it is a fiduciary (as defined in ERISA Section 3(21)) with respect to the Plan.  The Benefits Committee shall enter into an agreement with each Investment Manager (other than the Benefits Committee, the BPAC, or the Administrator) specifying the duties and compensation of such Investment Manager and the other terms and conditions under which such Investment Manager shall be retained.  Except as otherwise provided in the applicable investment management agreement, each Investment Manager may direct the Trustee with respect to those assets for which the Investment Manager is responsible.  To the extent allowed by law, the Trustee, the Benefits Committee, the BPAC and the Administrator shall not be liable for any act or omission of any Investment Manager with respect to any duties delegated to such Investment Manager.

The Benefits Committee shall have the power to determine the portion of the Plan's assets to be invested pursuant to the direction of a designated Investment Manager and to set investment objectives and guidelines for the Investment Manager.

## SECTION 12.  PARTICIPATION IN THE PLAN BY AN AFFILIATE

12.1    Evidence of Participation

Notwithstanding anything herein to the contrary, with the consent of the Benefits

Committee, an Affiliate may adopt this Plan and all of the provisions hereof, and

participate herein and be known as a Participating Affiliate, by a properly executed

document evidencing said intent and will of such Participating Affiliate.

12.2    Requirements of Participating Affiliates

(a)    Each such Participating Affiliate shall be required to use the same Trustee

as provided in this Plan.

(b)    The Trustee may, but shall not be required to, commingle, hold and invest

as one trust all contributions made by Participating Affiliates, as well as all increments

thereof.  However, all assets of the Plan shall, on an ongoing basis, be available to pay

benefits to all Participants and Beneficiaries under the Plan without regard to the

Employer who contributed such assets.

(c)    The transfer of any Participant from or to an Affiliate participating in this

Plan, whether he or she be an Employee of the Company or a Participating Affiliate, shall

not affect such Participant's Years of Vesting Service under the Plan, and all amounts

credited to such Participant's Accrued Benefit as well as his or her accumulated service

time with the transferor or predecessor, and his or her length of participation in the Plan,

shall continue to his or her credit.

(d)    Any expenses of the Plan which are to be paid by the Company or borne by

the Trust may be paid by each Participating Affiliate in the same proportion that the total amount standing to the credit of all Participants employed by such Participating Affiliate bears to the total standing to the credit of all Participants.

(e) Each Participating Affiliate shall contribute to the Plan as provided herein.

12.3   Agency Appointment

Any Participating Affiliate which adopts the Plan shall be deemed thereby to appoint the Company, the Administrator, the Benefits Committee, and the Trustee its exclusive agents to exercise on its behalf all of the powers and authority conferred hereby, or by the Trust Agreement, upon the Affiliate.  The authority of the Company, the Administrator, the Benefits Committee and the Trustee to act as such agent shall continue until the Plan has terminated as to such Affiliate and the relevant Trust fund assets have been distributed by the Trustee.

12.4   Transfer Between Affiliates and Participating Affiliates

If an Employee is transferred between Participating Affiliates including the Company and in the event of any such transfer, the Employee involved shall be credited with his or her accumulated Service.  No such transfer shall effect a termination of employment hereunder, and the Participating Affiliate to which the Employee is transferred shall thereunder become obligated hereunder with respect to such Employee in the same manner as was the Participating Affiliate from whom the Employee was transferred.

12.5   Discontinuance of Participation

Any Participating Affiliate shall be permitted to discontinue or revoke its participation in the Plan upon 60 days notice.  At the time of any such discontinuance or revocation, satisfactory evidence thereof and of any conditions imposed shall be delivered to the Administrator.  The Administrator shall thereafter transfer, deliver and assign Trust assets allocable to the Participants of such Participating Affiliate to such new trustee or insurer as shall have been designated by such Participating Affiliate in the event that it has established a separate pension benefit plan for its Employees.  If no successor is designated, the Trust shall retain such assets for the Employees of said Participating Affiliate pursuant to the provisions of the Plan.

Absent the express consent of the Benefits Committee, the participation of an Affiliate shall terminate automatically on the date it ceases to meet the definition of Affiliate under Section 1.6.

12.6   Authority for Administrator Actions

The Administrator shall have authority to make any and all necessary rules or regulations, binding upon all Participating Affiliates and all Participants, to effectuate the purpose of this Section.

## SECTION 13.  PLAN AMENDMENT OR TERMINATION

13.1   Plan Amendment Procedure

13.1.1   General

The Benefits Committee (or its delegate appointed in writing) shall have the right to amend and/or terminate the Plan, at any time by an instrument in writing, effective retroactively or otherwise, provided, however, that no amendment shall:

(a)   authorize any part of the Trust to be used for, or diverted to, purposes other than providing benefits to Participants or their Beneficiaries or defraying the reasonable expenses of administering the Plan and Trust;

(b)   reduce the vested Accrued Benefit of any Participant; or

(c)   eliminate an optional form of benefit, except as permitted by Code Section 411(d)(6) and the IRS regulations thereunder, or other applicable law.

In any case where a Plan amendment changes the vesting schedule of Section 7, each Participant shall be permitted to elect, within a reasonable time after the later of the date the Plan amendment is adopted or becomes effective, to have the pre-amendment vesting schedule apply to his or her Accrued Benefit.

The BPAC (or its delegate appointed in writing) shall have the right to amend the Plan at any time by an instrument in writing, effective retroactively or otherwise, but only with respect to (1) minor changes necessary or advisable for purposes of complying with ERISA or the Code, or other applicable laws or regulations, (2) ministerial changes necessary or appropriate to reduce complexity or minimize administrative expense;

- 112 -

provided that no such amendment may entail a material increase in the cost of the Plan to any Employer.

### 13.1.2 Procedure

Any amendment shall be by formal resolution of the Benefits Committee , BPAC, or either of their delegates, as the case may be.  The Plan may not be amended by any oral or written statement except as adopted under these amendment procedures.

### 13.2   Complete or Partial Plan Termination

#### 13.2.1 Right to Terminate the Plan

The Company intends and expects that from year to year it will be able to and will deem it advisable to continue this Plan in effect and to make contributions as herein provided.  The Company reserves the right, however, to terminate the Plan at any time.

#### 13.2.2 Vesting on Termination

As of the date of a complete or partial termination of the Plan or a complete discontinuance of contributions, each affected Employee shall become 100% vested in his or her Accrued Benefit; provided, however, that no Participant shall have the right to seek payment of any benefits directly from the Company or an Affiliate.

#### 13.2.3 Procedure on Termination

(a)   General Procedure.  Any termination of the Plan must be approved by the Board of Directors and shall be adopted by the Benefits Committee on behalf of the Company by preparing a written instrument setting forth the provisions effectuating the termination of the Plan and specifying the effective date of the termination.  Upon

termination of the Plan and after providing for the expenses of the Plan , the assets of the Plan shall be allocated by the Administrator in compliance with the provisions of subpart (b) and distributed as soon as administratively feasible.

(b)     Allocation.  Benefits upon termination of the Plan shall be allocated as set forth in Section 4044 of ERISA.  Any assets of the Plan remaining after all liabilities of the Plan have been satisfied shall be distributed to the Employer, except to the extent that such distribution would contravene any applicable rule or regulation.

(c)     Pro Rata Allocation Rule.  In the event that there are not sufficient assets to provide all benefits payable under any of the categories described in Section 4044 of ERISA, each person in the first category for which there are insufficient assets shall receive a pro rata portion of the benefit to be provided by such assets, and no persons in any succeeding category shall receive any benefits under the Plan.

(d)     Allocation Restrictions.  No allocation shall be made under the foregoing subsection (b) and (c) with respect to any benefits accrued under the Plan after the Secretary of Treasury has issued notice that the Plan does not meet the requirements of Code Section 401(a).

13.2.4 Distribution of Benefits on Plan Termination

Upon complete termination of the Plan, each Participant's vested Accrued Benefit shall be distributed to him or her (or, in the event of a Participant's death, to his or her Beneficiary) in a distribution option as provided in Section 9.

# SECTION 14.  HEALTH BENEFITS ACCOUNT AND QUALIFIED TRANSFER

14.1    Establishment of Health Benefits Account

The Administrator shall establish and maintain for each Participant a Health

Benefits Account solely to receive Qualified Transfers of Excess Pension Assets pursuant

to Code Section 420 and through which to provide benefits for sickness, accident,

hospitalization, and medical expenses of retired employees, their Spouses and their

dependents pursuant to this Section 14.  Provision of such benefits and any other

incidental benefits shall at all times be subordinate to the retirement benefits provided

under the Plan.

14.2    Definitions

14.2.1 Qualified Current Retiree Health Liabilities

Qualified Current Retiree Health Liabilities means qualified current retiree health

liabilities as defined in Code Section 420(e)(1).

14.2.2 Applicable Health Benefits

Applicable Health Benefits means applicable health benefits as defined in Code

Section 420(e)(1)(C).

14.2.3 Qualified Transfer

Qualified Transfer means a qualified transfer as described in Code Section

420(b)(1).

14.2.4 Excess Pension Assets

Excess Pension Assets means excess pension assets as described in Code Section

420(e)(2).

14.2.5 Health Benefits Account

Health Benefits Account means the account established and maintained for certain retired Employees, their Spouses and their dependents through which are provided sickness, accident, hospitalization, and medical benefits pursuant to Code Section 401(h) and this Section 14. The Health Benefits Account shall not be established for key employees, as such term is defined in Section 8.2(b).

14.2.6 Maintenance Period

(a)     For Qualified Transfers made on or before December 8, 1994, or on or after December 18, 1999, Maintenance Period means a cost maintenance period described in Code Section 420(c)(3)(D) as then in effect.

(b)     For Qualified Transfers made after December 8, 1994, and before December 18, 1999, Maintenance Period means a benefit maintenance period described in Code Section 420(c)(3)(C) as then in effect.

14.3   Benefits Payable From the Health Benefits Account

Benefits payable from the Health Benefits Account are limited to medical benefits available to a particular Participant under the applicable provisions of the Security Plan for Employees of MONY Life Insurance Company. No benefits shall be payable for key employees, as such term is defined in Section 8.2(b).

14.4   Contributions

Employer contributions to the Health Benefits Account will be limited to such

- 117 -

reasonable and ascertainable amounts which may be transferred to the Health Benefits

Account pursuant to a Qualified Transfer.

14.5    Diversion of Health Benefits Account Contributions

At no time prior to the payment of all medical benefits shall Health Benefits

Account Contributions and income allocable thereto be used for or diverted to any

purpose other than providing such benefits.  Any forfeitures of Health Benefits Account

amounts shall be used to reduce employer contributions to the Health Benefits Account.

Any amounts transferred to the Health Benefits Account pursuant to a Qualified Transfer

that are not used to pay Qualified Current Retiree Health Liabilities shall be transferred

back to the defined benefit portion of the Plan and shall be treated as a reversion to the

Company subject to Code Section 4980.

14.6    Priority of Payment

Any amounts paid from the Health Benefits Account shall be treated as paid first

out of assets transferred pursuant to a Qualified Transfer and income allocable thereto.

14.7    Limitation on Transfers

Only one Qualified Transfer shall take place each year.  Any assets transferred

shall be used to pay Qualified Current Retiree Health Liabilities only.  No transfer shall

be made in any taxable year after December 31, 2005, unless otherwise permitted by law.

The amount of Excess Pension Assets which may be transferred in a Qualified Transfer

shall not exceed the amount which is reasonably expected to be the amount which the

Employer will pay out of the Health Benefits Account (whether directly or through

reimbursement) during the taxable year of the transfer for Qualified Current Retiree Health Liabilities.

14.8    Special Vesting

For the taxable year in which a Qualified Transfer occurs, any Participant's Accrued Benefit under the Plan shall be 100% vested as if the Plan terminated immediately prior to the Qualified Transfer, or, in the case of a Participant who has a separation from service within one-year prior to the Qualified Transfer, immediately before such separation from service.

14.9    Minimum Cost and Benefit Requirements

(a)    Minimum Cost Requirements.  For Qualified Transfers made on or before December 8, 1994, or on or after December 18, 1999, the following rules shall apply:

(i)    A Qualified Transfer shall not take place unless the applicable employer costs, as defined in Code Section 420(c)(3)(B), for each taxable year during the Maintenance Period are not less than the higher of the applicable employer costs for each of the 2 taxable years immediately preceding the taxable year of the qualified transfer.  The preceding sentence may be applied separately with respect to individuals eligible for Medicare benefits at any time during the taxable year.

(ii)    For Qualified Transfers made on and after December 18, 1999, such Qualified Transfers shall also comply with any IRS Regulations promulgated pursuant to Code Section 402(c)(3)(E).

(b)     Minimum Benefit Requirements.  For Qualified Transfers made after December 8, 1994, but before December 18, 1999, the following rules shall apply:

(i)     A Qualified Transfer shall not take place unless the Applicable Health Benefits provided for each taxable year during the Maintenance Period are substantially the same as the Applicable Health Benefits provided by the Employer during the taxable year immediately preceding the taxable year of the Qualified Transfer.  The preceding sentence may be applied separately with respect to individuals eligible for Medicare benefits at any time during the taxable year.

## SECTION 15.  MISCELLANEOUS PROVISIONS

15.1   Indemnification

To the extent permitted by applicable law, the Plan shall indemnify and save harmless the members of the Benefits Committee, the BPAC, the Administrator, the Trustee, and the employees, directors officers and covered agents of the Company ("Covered Persons") from and against any and all claims of liability arising in connection with the exercise of their duties and responsibilities to the Plan, including all expenses reasonably incurred in their defense, unless (a) it shall be established by final judgment of a court of competent jurisdiction that such act or omission involved a violation of the duties imposed by Part 4 of Title I of ERISA or gross negligence or willful misconduct on the part of such Covered Person, or (b) in the event of settlement or other disposition of such claim involving the Plan, it is determined by written opinion of independent counsel that such act or omission involved a violation of duties imposed by Part 4 of Title I of ERISA or gross negligence or willful misconduct on the part of such Covered Person.

To the extent permitted by applicable law, all expenses (including reasonable attorneys fees and disbursements), judgments, fines and amounts paid in settlement incurred by the Covered Person in connection with any of the proceedings described above shall be paid from the assets of the Plan, provided that (a) the Covered Person shall repay such advances to the Plan, with reasonable interest, if it is established by a final judgment of a court of competent jurisdiction, or by a written opinion of independent counsel, that the Covered Person violated Part 4 of Title 1 of ERISA, was grossly

negligent, or engaged in willful misconduct, and (b) the Covered Person shall provide a bond, letter of credit or make other appropriate arrangements for repayment of advances. Notwithstanding the foregoing, no such advances shall be made in connection with any claim against the Covered Person that is made by or on behalf of the Plan, provided that upon the final disposition of such claim, the expenses (including reasonable attorneys fees and disbursements) judgments, fines and amounts paid in settlement shall be reimbursed by the Plan to the extent provided above.

The indemnification provided above shall apply only to claims and expenses not actually covered by insurance.

To the extent not covered by insurance or reimbursed by the Plan, each Employer shall indemnify each Covered Person acting as a fiduciary to the Plan against any and all liabilities or expenses, including all legal fees relating thereto, arising in connection with the exercise of their duties and responsibilities to the Plan, provided however that no Employer shall indemnify any person for liabilities or expenses due to that person's own gross negligence or willful misconduct.

15.2   Exclusive Benefit of Participants

The assets of the Plan shall be maintained for the exclusive benefit of Participants or their Beneficiaries and shall be used to pay benefits provided hereunder or to pay expenses of administration of the Plan to the extent not paid by the Employer. Except as otherwise provided herein and as permitted by law, it shall be prohibited at any time for any of the assets of the Plan (other than such part as is required to pay expenses) to be

used for, or diverted to, purposes other than for the exclusive benefit of Participants or their Beneficiaries.

15.3    Plan Not a Contract of Employment

The Plan is not a contract of Employment, and the terms of Employment of any Employee shall not be affected in any way by the Plan or related instruments except as specifically provided herein.  This Plan shall not be construed as giving any Employee a right to be retained in service.  Participation in the Plan shall not vest in a Participant any employment rights or other rights aside from those expressly provided in the Plan.  Upon retirement or upon termination of employment, the only rights that shall accrue to any Employee are those specifically provided for the Employee under this Plan.

15.4    Source of Funding and Benefits

All benefits and other amounts payable hereunder shall be paid exclusively from the assets of the Plan, and neither the Company, any Affiliate, any Trustee, nor any director, officer, Employee or agent of the Company assumes any responsibility or liability therefore.  Each Participant, each Beneficiary or each other person who shall claim the right to any payment under the Plan shall look exclusively to the assets of the Plan therefore and shall not have any right or claim therefore against the Company, any Participating Affiliate, the Trustee, or any director, officer, Employee or agent of the Company.

15.5    Benefits Not Assignable

Benefits provided under the Plan may not be assigned or alienated, either

- 123 -

voluntarily or involuntarily, except as may be required pursuant to a qualified domestic

relations order within the meaning of Code Section 414(p) or as may otherwise be

required by law, including Code Section 401(a)(13).  Notwithstanding anything to the

contrary, a Participant's benefits may be offset to the extent permitted under Section

401(a)(13)(C) of the Code.

15.6    Benefits Payable to Minors, Incompetents and Others

If, in the sole discretion of the Administrator, the Administrator shall find that any

person to whom any amount is payable under the Plan is found by a court of competent

jurisdiction to be unable to care for his or her affairs because of illness or accident, or is a

minor, or has died, then any payment due him or her or the estate (unless a prior claim

therefor has been made by a duly appointed legal representative) may, in the sole

discretion of the Administrator, be paid to his or her spouse, the child, relative or parent

of such person, the guardian, committee, conservator or other legal representative,

wherever appointed, of such person, an institution maintaining or having custody of such

person, or to any other person having the care and control of such person deemed by the

Administrator to be a proper recipient, under the terms of the Plan and applicable law, on

behalf of such person otherwise entitled to payment.  Any such payment shall be a

complete discharge of the liability of the Plan therefor.

15.7    Transfers Between Field Underwriter and Eligible Employee Status

If an Employee who has been a Participant under this Plan as an Eligible Employee

discontinues his or her salaried employment with an Employer and then immediately

thereafter becomes a Field Underwriter, his or her participation in this Plan will not terminate but will continue according to the rules for Participants who are Field Underwriters. Similarly, if an Employee who has been a Participant under this Plan as a Field Underwriter discontinues his or her Career Contract with an Employer and then immediately thereafter becomes an Eligible Employee, his or her participation in this Plan will not terminate but will continue according to the rules for Participants who are Eligible Employees.

An individual who is both a salaried Employee of the Company or an Affiliate and a Field Underwriter is treated as an Eligible Employee for purposes of the Plan. The Administrator is authorized to issue such nondiscriminatory rules as may be necessary to effectuate the purposes of this subsection.

15.8   Merger or Transfer of Assets

15.8.1 General Rule

Subject to Section 15.8.2, the Board of Directors or the Benefits Committee may direct that the Plan be merged or consolidated with, or transfer all or a portion of its assets and liabilities to, another plan or receive assets and liabilities from another plan. Any optional forms of benefit or other special provisions applicable to a Participant for whom an accrued benefit has been transferred to this Plan from another plan shall be set forth in an appendix.

15.8.2 Protection of Benefits

The Plan may not merge or consolidate with, or transfer any assets or liabilities to,

any other plan, unless each Participant would (if the Plan then terminated) receive a benefit immediately after the merger, consolidation or transfer which is equal to or greater than the benefit he or she would have been entitled to receive immediately before the merger, consolidation or transfer (if the Plan had then terminated).

15.9   Action by Employer

Any action required to be taken by an Employer pursuant to the terms of the Plan shall be taken by the board of directors of the Employer or any person or persons duly empowered to exercise the powers of the Employer with respect to the Plan.

15.10   Provision of Information

Each Participant and Beneficiary shall execute such forms as may be reasonably required by the Administrator and the Employee shall make available to the Administrator any information they may reasonably request in this regard.

15.11   Controlling Law

The Plan is intended to qualify under Code Section 401(a) and to comply with ERISA and its terms shall be interpreted accordingly.  Otherwise, to the extent not preempted by ERISA, the laws of the State of New York shall control the interpretation and performance of the terms of the Plan.

15.12   Place of Payment

All sums payable hereunder are payable at the office of Company in the State of New York, following any reasonable periods of notice and processing as Company may establish.

15.13  Singular and Plural and Article and Section References

As used in the Plan, the singular includes the plural, and the plural includes the singular, unless qualified by the context.  Titles of Sections of the Plan are for convenience of reference only and are to be disregarded in applying the provisions of the Plan.  Any reference in this Plan to a Section is to the Section so specified of the Plan, and any reference to the male gender includes the female gender.

15.14  Notice

Any notice, election, application, instruction, designation or other form of communication required to be given or submitted by any Participant, other Employee or Beneficiary shall be in such form and delivery method as is prescribed from time to time by the Administrator, and shall be deemed to be duly given only upon actual receipt thereof by the Administrator.  Any notice, statement, report and other communication from the Company or Administrator to any Participant, Employee or Beneficiary required or permitted by the Plan shall be deemed to have been duly given when delivered by hand to such person, mailed to such person at the address last appearing on the records of the Administrator, or delivered electronically to such person.  Each person entitled to receive a payment under the Plan shall file with the Administrator his or her complete mailing address and each change therein.  A check or communication mailed to any person at the address on file with the Company or the Administrator shall be deemed to have been received by such person for all purposes of the Plan, and no Employee or agent of the Company, of a Participating Affiliate or member of the Benefits Committee or BPAC

shall be obliged to search for or ascertain the location of any such person except as required by ERISA. If the Administrator shall be in doubt as to whether payments are being received by the person entitled thereto, it may, by registered mail addressed to such person at the address last known to the Administrator notify such person that all future payments will be withheld until such person submits to the Administrator the proper mailing address and such other information as the Administrator may reasonably request.

15.15   Required Information

Each Participant shall file with the Administrator such pertinent information concerning him or her and each Beneficiary, and each Beneficiary shall file with the Administrator such information concerning him or her as the Administrator may specify, and in such manner and form as the Administrator may specify or provide, and no Participant or Beneficiary shall have any right or be entitled to any benefits or further benefits under the Plan unless such information is filed by him or her on his or her behalf.

15.16   Validity of Provisions

In case any provision of this Plan shall be held illegal or invalid for any reason, it shall not effect the remaining provisions of the Plan, but the Plan shall be construed and enforced as if such illegal or invalid provisions had not been included therein.

15.17   Mistake of Fact

(a)      In the case of a contribution that is made by an Employer by a mistake of fact, nothing shall prohibit the return to the Employer at the direction of the Employer or the Administrator, in accordance with ERISA and the Code, of such contribution within

one-year after the payment of the contribution.

(b)     All contributions by an Employer are expressly conditioned upon the deductibility of the contribution under Code Section 404(a).  To the extent the deduction is disallowed, nothing shall prohibit the return to the Employer at the direction of the Employer or the Administrator of such contribution (to the extent disallowed) within one-year after the disallowance of the deduction.

15.18   Lost Payees

If a Participant, Beneficiary, or alternate payee under a qualified domestic relations order to whom a distribution is due cannot be located despite reasonable efforts by the Administrator, the interest of such individual under the Plan shall be forfeited and used to pay reasonable Plan administrative expenses, for the Plan Year in which the forfeitures occurs; provided that such interest, without adjustment for gains or losses, shall be restored to such individual out of forfeitures or, if necessary, an additional Company contribution if a claim is made by such individual for his or her benefits.

15.19   Legal Service

The agents for the service of legal process of the Plan shall be the Administrator and the Trustee.

15.20   Military Service

Notwithstanding any provision of this Plan to the contrary, effective December 12, 1994, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with Code Section 414(u).

15.21  Electronic Administration

In its rules and procedures for the administration of the Plan (including, without limitation, procedures covering any directions, elections, or other action by Participants or Beneficiaries, and the delivery of statements and required or optional disclosure materials to such individuals), the Administrator may provide for the use of electronic communications and other media.  Any reference in this Plan to forms, including forms for making participant-directed investment elections, shall mean either written forms or electronic forms (including a telephone transaction), to the extent permitted by applicable law.

IN WITNESS WHEREOF, the Benefits Committee has caused this instrument to be

executed by its duly authorized delegate, effective as of January 1, 2001.


MONY LIFE INSURANCE COMPANY


By: _____

Robert Beecroft, Secretary,
Benefit Plans Administration Committee


Date: _____ June 26, 2002 _____

## APPENDIX 1.  VOLUNTARY ENHANCED RETIREMENT PROGRAM

A1.1   Definitions

The following capitalized terms, when used in this Appendix 1, shall have the following meanings, notwithstanding any different definitions of such terms elsewhere in the Plan.

(a)      MONY means The Mutual Life Insurance Company of New York.

(b)      Election Period means the period from May 1, 1989, through May 31, 1989, inclusive.

(c)      Eligible Participant means a Participant in the Plan who: (A) was actively employed by MONY on January 2, 1989, (B) either (i) is at least age 45 with ten Years of Vesting Service on June 30, 1989, or (ii) was age 55 and over and was eligible for an early retirement annuity benefit as of December 31, 1988, under the terms of the Plan in effect on December 31, 1988.  Specifically excluded from being Eligible Participants are: (1) those employees on a salary continuance which commenced before January 1, 1989 and (2) first and second line IFS sales support staff such as Managers, Associate Managers, Sales Managers, Agency Supervisors or otherwise.

In addition, Participants who satisfy the conditions of paragraph (c) but who as of January 2, 1989, or later were out on short term disability, long term disability, unpaid new child care leave, military leave, or jury duty are Eligible Participants.

Former Participants who terminated on January 2, 1989, or earlier are ineligible to participate in the Program.  Participants whose jobs were abolished during the period

from January 2, 1989 through June 29, 1989 (other than for cause) and would have been eligible for the Program had they still been employed by MONY will be considered Eligible Participants.

The Beneficiary of a Participant who elects a survivorship annuity or annuity with a period certain payable to his or her Beneficiary and retires during the period January 1, 1989 through June 30, 1989, and then dies will be eligible under the Program to receive an enhanced benefit. However, the Beneficiary of a Participant who elects a survivorship annuity payable to his or her Beneficiary and dies during this period but before retiring will not be eligible for an enhanced benefit. If a Participant elects a Straight Life Annuity and then dies, his or her benefit will not be eligible for an enhancement.

If a Participant is actively employed and dies, his or her estate or Beneficiary will not be eligible to receive a benefit under the Program.

(d)     Part-time Employee means an Employee scheduled to work less than 1,885 hours in a Plan Year.

(e)     VERP-Benefit Commencement Date means July 1, 1989.

(f)     Program means the Voluntary Enhanced Retirement Program provided for under this Appendix, which Program is available exclusively for the benefit of Special Retirees.

(g)     Qualified Retirement Date means July 1, 1989. (Except for Participants not actively at work with MONY on June 30, 1989, whereby "Qualified Retirement Date" means the date of Termination from Service with MONY.)

Appendix 1:2

(h)   Retire means to separate from employment with MONY.

(i)   Special Retiree means an Eligible Participant who has made an effective election under Section A1.3 of this Appendix 1 and who retires under the Program on a Qualified Retirement Date in accordance with the terms and conditions of the Program as set forth in this Appendix 1.

(j)   Corporate Benefits means the Department of MONY designated to accept documents.

All other capitalized terms when used in this Appendix 1 shall have the same meaning as set forth in Section 1 of the Plan.

A1.2   Temporary and Limited Application of this Section

(a)   This Appendix 1 is intended to constitute a permanent part of the Plan, but is temporary duration and limited applicability.  The sole purpose of this Appendix 1 is to provide a special basis for the computation of retirement benefits payable to Special Retirees, their beneficiaries and Spouses.  This Appendix 1 shall not affect, or be taken into account in determining, the retirement benefits or any other benefits under the Plan of any Employee other than a Special Retiree.

(b)   Immediately after June 30, 1989, this Appendix 1 shall be deemed to be deleted from the Plan automatically, without the necessity of any further amendment to the Plan or any other action by the Board of Directors or any other party, and this Appendix 1 shall thereafter have no further force or effect; provided that, with respect to any Special Retiree who retires pursuant to this Appendix 1 after June 30, 1989, this Appendix 1 continues to be effective through the Special Retiree's Qualified Retirement

Appendix 1:3

date, and shall automatically cease to be effective immediately thereafter. After it has ceased to be effective and has been deemed to be deleted from the Plan, this Appendix 1 shall continue to apply to determining the right to an Accrued Benefit of each Special Retiree and his or her beneficiaries and the computation of such retirement benefits.

(c)     The Program is voluntary and elective. No Employee shall be required to elect to retire under the Program.

A1.3   Elections

(a)     Any Eligible Participant shall be entitled to elect to retire under the Program on the Qualified Retirement Date. Any Eligible Participant who wishes to elect to Retire under the Program must submit to Corporate Benefits a completed and signed election form, in such manner as may be required by the Administrator, designating a Qualified Retirement Date as his or her Retirement Date.

(b)     An election to retire under the Program shall not be effective unless a completed and signed election form designating a VERP-Benefit Commencement Date is received by Corporate Benefits before the expiration of the Election Period or is postmarked before the expiration of the Election Period and is subsequently received by Corporate Benefits. An election to retire under the Program may be modified or revoked by giving written notice to Corporate Benefits in a form and in a manner acceptable to Corporate Benefits on or before the expiration of the election period. After a revocation, an election to retire under the Program may be made again at any time before the expiration of the Election Period.

(c)     Every Eligible Participant who does not elect to retire under the Program

shall decline to retire under the Program by submitting to Corporate Benefits a completed

and signed denial form in such manner as may be required by Corporate Benefits. A

denial form may be revoked by submitting to Corporate Benefits before the expiration of

the Election Period a completed and signed election to retire under the Program. A denial

becomes irrevocable, and an election to Retire under the Program may not be made, after

the expiration of the Election Period. If, notwithstanding the requirements set forth above

in this Section A1.3, an Eligible Participant, upon the expiration of the Election Period,

has submitted to Corporate Benefits neither a form election to retire under the Program

nor a denial form declining to retire under the Program, then the Eligible Participant shall

be deemed to have declined to retire under the Program.

      (d)     Corporate Benefits reserves the right to reject the application of any

Eligible Participant if, based on communications from the IRS, rejection of the

application is necessary to preserve the qualification of the Plan under Code Section

401(a). An election under this Section A1.3 by an Eligible Participant shall be effective

only if Corporate Benefits does not reject his or her application to retire under the

Program. Corporate Benefits may reject such an application before or after the Eligible

Participant's VERP-Benefit Commencement Date. If an Eligible Participant's application

is rejected after his or her Accrued Benefit has commenced in accordance with the terms

of the Program, his or her Accrued Benefit shall be recalculated in accordance with the

provisions of the Plan without regard to this Appendix 1, and his or her Accrued Benefit

after such rejection shall be adjusted so that his or her entire Accrued Benefit shall be

actuarial equivalent to the Accrued Benefit he or she would have received under the provisions of the Plan without regard to this Appendix 1, based on his or her actual Retirement Date and VERP-Benefit Commencement Date.

A1.4   Computation of Benefits Under the Program

(a)     Each Special Retiree shall be entitled to an enhanced retirement benefit, calculated in accordance with the provisions of the Plan as modified by this Appendix 1, instead of the Accrued Benefit that would be payable to him, without regard to this Appendix 1, under the other provisions of the Plan.  In no event shall the total pension benefit provided to a Special Retiree under such an enhanced retirement benefit be less than his or her Accrued Benefit as of his or her Retirement Date.

(b)     For the purpose of computing the retirement benefit in respect of each Special Retiree under the Program, the provisions of the Plan shall be applied to each Special Retiree as if, on his or her Qualified Retirement Date:

(i)     the Special Retiree's age were equal to his or her actual age on that date plus 5 additional years of age; and

(ii)     the Special Retiree's Years of Benefit Accrual Service were equal to his or her Years of Benefit Accrual Service (determined in accordance with the provisions of the Plan other than this Appendix 1) plus 5 additional Years of Benefit Accrual Service.

Note:  For any Employee with any part-time service, additional Years of Benefit Accrual Service, as described above in Section A1.4(b)(ii), will be determined by using the following formulas:

Appendix 1:6

For Employees with no full-time Service:

Average annual Hours of Service over the last 3 years of Service, multiplied by 5, and divided by 1,885 hours per year.

For Employees with part-time and full-time Service:

The greater of:

(a)     average annual Hours of Service over the last 3 years multiplied by 5 divided by 1,885 hours; and

(b)     (i)     Actual full-time Years of Benefit Accrual Service X 1,885 plus

(ii)    Part-time Years of Benefit Accrual Service X Hours of Service;

divided by

(iii)   Total Years of Service X 1,885.

(iv)   The result of the above calculations [(i) - (iii)] is then multiplied by 5.

Except to the extent otherwise provided in this Appendix 1, the provisions of the Plan shall be applied to each Special Retiree on the basis of his or her actual age and the Years of Benefit Accrual Service credited to him or her pursuant to the provisions of the Plan other than this Appendix 1.

(c)     The amounts payable to a Special Retiree and his or her Beneficiary under a Qualified Joint and Survivor Annuity Benefit shall be determined, in accordance with Section 3, by first computing the Special Retiree's accrued benefit under Section 3.1 and the other applicable provisions of the Plan, as modified by Section A1.4 of this Appendix

1; provided that, after the accrued benefit has been computed in the manner provided above, then, in computing the Qualified Joint and Survivor Annuity benefit in respect of the Special Retiree, reduction factors shall be used.

(d)     The amount of a lump sum distribution payable to a Special Retiree under Section 9.2 shall be the actuarial equivalent of the present value of the Special Retiree's retirement annuity benefit computed under Section 3.1 (such computation to be based on the enhanced age and service attributed to the Special Retiree in accordance with Section A1.4(c) of this Appendix 1) as a Straight Life Annuity.  In accordance with the provisions of the Plan as modified in accordance with this Section A1.4, the actuarial equivalence shall be determined on the basis of a reduction factor for ages 55 and under.

(e)     An Eligible Participant who is credited with accrued and unused vacation with MONY as of June 30, 1989, shall receive a single sum payment for such accrued and unused vacation.  Neither the monetary amount nor period of time of such accrued and unused vacation shall be taken into account for the purposes of determining the Final Average Salary in computing the retirement benefit in respect of each Special Retiree under the Program.

(f)     Except as provided in Section A1.3(b) of this Appendix 1, this Appendix 1 shall not affect the provisions of the Plan that govern eligibility to elect to receive an Accrued Benefit in any optional form of payment.

(g)     In applying the provisions of Section 3 to a Special Retiree under the Program and to a Spouse of a Special Retiree, respectively, to whom those provisions

apply, the Special Retiree shall be deemed to have attained the age, on his or her

Qualified Retirement Date, that is attributed to him or her under Section A1.4(b)(i) of this

Appendix 1.

(h)     A Special Retiree's Final Average Salary shall not include any transition

payment in the nature of a separation or severance payment that is made as of June 30,

1989.

A1.5   Miscellaneous

(a)     If a Special Retiree is receiving temporary or long-term disability benefits

on June 30, 1989, he or she shall not receive any disability benefits after June 30, 1989.

(b)     If a Special Retiree is reemployed by MONY after his or her Qualified

Retirement Date, then the age and service with which he or she is credited for the purpose

of determining his or her eligibility for an annuity benefit, and the eligibility of his or her

Spouse for a Qualified Joint and Survivor Annuity Benefit, in respect of the period

preceding his or her Qualified Retirement Date, shall be the enhanced age and service

attributed to the former Special Retiree in accordance with Section A1.4(c) of this

Appendix 1; provided that, upon his or her retirement following his or her reemployment,

(i) the enhanced age and service provisions of Section A1.4(c) of this Appendix 1 shall

not apply for any other purpose under the Plan (including, without limitation, for the

purpose of computing, under Section 3, any annuity benefit payable in respect of the

former Special Retiree), and (ii) his or her Accrued Benefit shall be not less than the

actuarial equivalent of the benefit to which he or she was entitled, in accordance with the

provisions of the Plan including this Appendix 1, when he or she retired under the

Program.

(c)     The enhancement for any Special Retiree who is a highly compensated employee and is ineligible for the grandfather clause as explained in Section 3.3 of the Plan will be equal to .75% X 5 Years of Benefit Accrual Service X Final Average Salary, regardless of whether it is below or in excess of Covered Compensation.

(d)     In any case where a special provision set forth in a schedule to the Plan varies a Plan provision that is referred to in this Appendix 1 and that is set forth in a Section of the Plan that precedes this Appendix 1, each reference in this Appendix 1 to such Plan provision shall be deemed to refer to the provision as varied by the applicable special provision. This Section A1.5(d) shall be interpreted and applied by the Benefits Committee in a consistent and nondiscriminatory manner in accordance with the purposes of this Appendix 1 and of the Plan as a whole.

(e)     A Special Retiree may elect to receive a benefit in any of the forms specified in Section 9, regardless of age.

APPENDIX 2.  PENSION ENHANCEMENT PROGRAM

A2.1   Definitions

The following capitalized terms, when used in this Appendix 2, shall have the following meanings, notwithstanding any different definitions of such terms elsewhere in the Plan:

(a)    MONY means The Mutual Life Insurance Company of New York.

(b)    Election Period means the period from April 1, 1992 through April 15, 1992.

(c)    Eligible Participant for PEP means a Participant in the Plan who: (A) was actively employed by MONY on March 1, 1992;  (B) is not a highly compensated employee as defined by Code Section 414(q); and (C) is at least age 47 and whose age and Years of Vesting Service as of April 30, 1992, total at least 60 and who is vested under the Plan.  Specifically excluded from being Eligible Participants are those employees on salary continuance which commenced before March 1, 1992.

In addition, Eligible Participant includes those who satisfy the conditions of this paragraph (c) but who as of March 1, 1992, were receiving short term disability, long term disability, unpaid new child care leave, military leave, or were on jury duty.

Former Participants who terminated service prior to February 1, 1992 are ineligible to participate in the Program.  Participants who retired or whose employment was involuntarily terminated (other than for violation of law, MONY policy or for cause) during the period from January 2, 1992, through April 30, 1992 and would have been eligible for the Program had they still been employed by MONY will be considered

Appendix 2:1

Eligible Participants.

The Beneficiary of a Participant who elects a survivorship annuity or annuity with a period certain payable to his or her Beneficiary and retires during the period January 2, 1992 through April 30, 1992, and then dies during this period will be eligible under the Program to receive an enhanced benefit.  However, the Beneficiary of a Participant who elects a survivorship annuity payable to his or her Beneficiary and dies during this period but before payment commences will not be eligible for an enhanced benefit.  If a Participant elects a straight life annuity and then dies before payment commences, his or her benefit will not be eligible for an enhancement.

If a Participant is actively employed and dies, his or her estate or Beneficiary will not be eligible to receive a benefit under the Program.

(d)   PEP-Benefit Commencement Date means May 1, 1992, or such later date as elected by a Special Retiree.

(e)   PEP means the Pension Enhancement Program available exclusively for the benefit of Special Retirees.

(f)   PEP Qualified Retirement Date means May 1, 1992.  (Except for Participants not actively at work with MONY on April 30, 1992, whereby "Qualified Retirement Date" means the date of Termination from Service with MONY.)

(g)   Retire means to separate from employment with MONY.

(h)   Special Retiree means an Eligible Participant who has made an effective election under PEP and who retires under the Program on a Qualified Retirement Date in

accordance with the terms and conditions of the Program as set forth in PEP.

(i)     Corporate Benefits means the department of MONY designated to accept

documents.

All other capitalized terms when used in this Appendix 2 shall have the same meaning as

set forth in the Plan.

A2.2   Limited Application of this Section

(a)     This Appendix 2 is intended to be of limited applicability.  The sole purpose

of this Appendix 2 is to provide a special basis for the computation of retirement benefits

payable to Special Retirees, their beneficiaries and Spouses described in Section A2.4 of

this Appendix 2.  This Appendix 2 shall not affect, or be taken into account in

determining, the retirement benefits or any other benefits under the Plan of any Employee

other than a Special Retiree.

(b)     As of May 1, 1992, this Appendix 2 shall have no further force or effect;

except that, with respect to any Special Retiree who retires pursuant to this Appendix 2

after April 30, 1992, this Appendix 2 continues to be effective through the Special

Retiree's Qualified Retirement Date.  In addition, this Appendix 2 shall continue to apply

in determining the right to a benefit of each Special Retiree and his or her beneficiaries

and the computation of such retirement benefits.

(c)     The Program is voluntary and elective.  No Employee shall be required to

elect to retire under the Program.

A2.3   Elections

(a)     Any Eligible Participant shall be entitled to elect to retire under the Program as of the Qualified Retirement Date.  Any Eligible Participant who wishes to elect to Retire under the Program must submit to Corporate Benefits a completed and signed election form, in such manner as may be required by Corporate Benefits, designating the Qualified Retirement Date as his or her Retirement Date.

(b)     An election to retire under the Program shall not be effective unless a completed and signed election form designating a PEP-Benefit Commencement Date is received by Corporate Benefits before the expiration of the Election Period or is postmarked before the expiration of the Election Period and is subsequently received by Corporate Benefits.  An election to retire under the Program may be modified or revoked by giving written notice to Corporate Benefits in a form and in a manner acceptable to Corporate Benefits on or before the expiration of the Election Period.  An election to retire under the Program may be revoked, but only once, during the seven day period from April 16 to April 22, 1992.

(c)     Every Eligible Participant who does not elect to retire under the Program shall decline to retire under the Program by submitting to Corporate Benefits a completed and signed negative election, in such form as Corporate Benefits may require.  If, notwithstanding the requirements set forth above in this Section A2.3, an Eligible Participant, upon the expiration of the Election Period, has submitted to Corporate Benefits neither an election or a denial form, then the Eligible Participant shall be deemed to have declined to retire under the Program.

(d)     Corporate Benefits reserves the right to reject the application of any Eligible Participant if, based on communications from the IRS, rejection of the application is necessary to preserve the qualification of the Plan under Code Section 401(a). An election under this Section A2.3 by an Eligible Participant shall be effective only if Corporate Benefits does not reject his or her application to retire under the Program. Corporate Benefits may reject such an application before or after the Eligible Participant's PEP-Benefit Commencement Date. If an Eligible Participant's application is rejected after his or her retirement benefit has commenced in accordance with the terms of the Program, his or her Accrued Benefit shall be recalculated in accordance with the provisions of the Plan without regard to this Appendix 2, and his or her Accrued Benefit after such rejection shall be adjusted so that his or her entire Accrued Benefit shall be actuarial equivalent to the Accrued Benefit he or she would have received under the provisions of the Plan without regard to this Appendix 2, based on his or her actual Retirement Date and PEP-Benefit Commencement Date.

A2.4   Computation of Benefits Under the Program

(a)     Each Special Retiree shall be entitled to an enhanced retirement benefit, calculated in accordance with the provisions of the Plan as modified by this Appendix 2, instead of the Accrued Benefit that would be payable to him, without regard to this Appendix 2, under the other provisions of the Plan. In no event shall the total Accrued Benefit provided to a Special Retiree under such an enhanced retirement benefit be less than his or her Accrued Benefit as of his or her Retirement Date.

(b)     For the purpose of computing the straight life annuity retirement benefits in respect of each Special Retiree under the Program, the provisions of the Plan shall be applied to each Special Retiree as if, on his or her Qualified Retirement Date:

(i)     the Special Retiree's age were equal to his or her actual age on that date plus 5 additional years of age; and

(ii)     the Special Retiree's Years of Benefit Accrual Service of were equal to his or her years of service (determined in accordance with the provisions of the Plan other than this Appendix 2) plus 5 additional Years of Benefit Accrual Service.*

*Note:  For any Employee with any part-time service, additional Years of Benefit Accrual Service, as described above in Section A2.4(b)(ii), will be determined by using the following formulas:

For part-time Employees:

Average Hours of Service over the last 3 Years of Benefit Accrual Service multiplied by 5 divided by 1885

For Employees with part-time and full-time Service:

The greater of:

(a)     Average Hours of Service over the last 3 years multiplied by 5 divided by 1885 hours

or

(b)     (i)     Actual full-time Years of Benefit Accrual Service X 1885 hours plus

Appendix 2:6

(ii)     part-time Years of Benefit Accrual Service X Hours of Service;

divided by

(iii)     total Years of Benefit Accrual Service X 1,885.

(iv) The result of the above calculations [(i) - (iii)] is then multiplied by 5. Except to the extent otherwise provided in this Appendix 2, the provisions of the Plan shall be applied to each Special Retiree on the basis of his or her actual age and the Years of Benefit Accrual Service credited to him or her pursuant to the provisions of the Plan other than this Appendix 2.

(c)     The amounts payable to a Special Retiree and his or her Beneficiary under a Qualified Joint and Survivor Annuity Benefit shall be determined, in accordance with Section 3, by first computing the Special Retiree's Accrued Benefit under Section 3 and the other applicable provisions of the Plan, as modified by Section A2.4 of this Appendix 2; provided that, after the accrued annuity benefit has been computed in the manner provided above, then, in computing the Qualified Joint and Survivor Annuity benefit in respect of the Special Retiree, an actuarial equivalent benefit will be calculated.

(d)     The amount of a lump sum distribution payable to a Special Retiree under Section 9.2 shall be the actuarial equivalent of the present value of the Special Retiree's Accrued Benefit computed under Section 3 (such computation to be based on the enhanced age and service attributed to the Special Retiree in accordance with Section A2.4(b) of this Appendix 2) as a straight life annuity. In accordance with the provisions of the Plan as modified in accordance with this Section A2.4, for Special Retirees under

the age of 55, the actuarial equivalence shall be determined on the basis of a reduction factor for age 55.

(e)     An Eligible Participant who is credited with accrued and unused vacation with MONY as of April 30, 1992, shall receive a single sum payment for such accrued and unused vacation.  Neither the monetary amount nor period of time of such accrued and unused vacation shall be taken into account for the purposes of determining the Final Average Salary or Years of Benefit Accrual Service in computing the retirement benefit in respect of each Special Retiree under the Program.

(f)     Except as provided in Section A2.5(d) of this Appendix 2, this Appendix 2 shall not affect the provisions of the Plan that govern eligibility to elect to receive a Accrued Benefit in any optional form of payment.

(g)     In applying the provisions of Appendix 2 to a Special Retiree under the Program and to a Spouse of a Special Retiree, respectively, to whom those provisions apply, the Special Retiree shall be deemed to have attained the age, on his or her Qualified Retirement Date, that is attributed to him or her under Section A2.4(b)(i) of this Appendix 2.

(h)     A Special Retiree's Final Average Salary shall not include any transition payment in the nature of a separation or severance payment that is made as of April 30, 1992.

A2.5   <u>Miscellaneous</u>

(a)     If a Special Retiree is receiving temporary or long-term disability benefits

on April 30, 1992, he or she shall not receive any disability benefits after April 30, 1992.

(b)     If a Special Retiree is reemployed by MONY after his or her Qualified

Retirement Date, then the age and service with which he or she is credited for the purpose

of determining his or her eligibility for an annuity benefit, and the eligibility of his or her

Spouse for a Qualified Joint and Survivor Annuity Benefit, in respect of the period

preceding his or her Qualified Retirement Date, shall be the enhanced age and service

attributed to the former Special Retiree in accordance with Section A2.4(b) of this

Appendix 2; provided that, upon his or her Retirement following his or her

reemployment, (i) the enhanced age and service provisions of Section A2.4(b) of this

Appendix 2 shall not apply for any other purpose under the Plan (including, without

limitation, for the purpose of computing, under Section 3, any annuity benefit payable in

respect of the former Special Retiree), and (ii) his or her Accrued Benefit shall be not less

than the actuarial equivalent of the benefit to which he or she was entitled, in accordance

with the provisions of the Plan including this Appendix 2, when he or she Retired under

the Program.

(c)     In any case where a special provision set forth in a schedule to the Plan

varies a Plan provision that is referred to in this Appendix 2 and that is set forth in a

Section of the Plan that precedes this Appendix 2, each reference in this Appendix 2 to

such Plan provision shall be deemed to refer to the provision as varied by the applicable

special provision.  This Section A2.5(c) shall be interpreted and applied by the

Administrator in a consistent and nondiscriminatory manner in accordance with the

purposes of this Appendix 2 and of the Plan as a whole.

(d)     A Special Retiree may elect to receive a benefit in any of the forms specified in Section 9, regardless of age.

(e)     An individual who would be an Eligible Participant if such individual were not a Highly Compensated Employee will be eligible to retire under this Plan if his or her employment was involuntarily terminated (other than for violation of law or MONY policy) during the period from January 2, 1992 through April 30, 1992.

## APPENDIX 3.  VOLUNTARY ENHANCED RETIREMENT BENEFITS

A3.1  Definitions

The following capitalized terms, when used in this Appendix 3, shall have the following meanings, notwithstanding any different definitions of such terms elsewhere in the Plan.

(a)      MONY means The Mutual Life Insurance Company of New York.

(b)      Election Period means the period from April 22, 1996 through May 3, 1996, inclusive.

(c)      Eligible Participant means a Participant in the Plan who: (A) is actively employed by the Company as of February 1, 1996 and is not terminated for cause prior to May 31, 1996, (B) either (i) is at least age 45 with ten Years of Vesting Service on May 31, 1996, or (ii) has attained his or her Early Retirement Age or Normal Retirement Age as of May 31, 1996, under the terms of the Plan in effect on the day prior to such date. Specifically excluded from being Eligible Participants are those Employees who are (1)Highly Compensated Employees or (2) Field Underwriters.

In addition, Participants who:

(1)      satisfied the conditions of in (B)(i) or (B)(ii) but who as of August 31, 1999, or later are out on short term disability, long term disability, unpaid leave, military leave, FMLA leave, or jury duty; or

(2)      involuntarily Terminated from Service, unless terminated for cause, during the period September 1, 1995 through May 31, 1996.

Appendix 3:1

are Eligible Participants. For purposes of this definition "terminated for cause" generally means the Employee has been terminated as a result of the commission of any act of fraud, misrepresentation, dishonesty, theft or conversion; gross or intentional misconduct or negligence in performing job duties, conviction of a crime; or, flagrant violation of a critical MONY policy on conduct.

(d)     VERB-Benefit Commencement Date generally means June 1, 1996.

(e)     Program means the Voluntary Enhanced Retirement Benefits program provided for under this Appendix, which Program is available exclusively for the benefit of Special Retirees.

(f)     Qualified Retirement Date means June 1, 1996.

(g)     Special Retiree means an Eligible Participant who has made an effective election under Section A3.3 of this Appendix 3 and who retires under the Program on a Qualified Retirement Date in accordance with the terms and conditions of the Program as set forth in this Appendix 3.

(h)     Corporate Benefits means the Department or Employee of MONY designated to accept documents.

All other capitalized terms when used in this Appendix 3 shall have the same meaning as set forth in Section 1 of the Plan.

A3.2   Temporary and Limited Application of this Section

(a)     This Appendix 3 is intended to constitute a permanent part of the Plan, but is temporary duration and limited applicability. The sole purpose of this Appendix 3 is to

provide a special basis for the computation of retirement benefits payable to Special Retirees, their beneficiaries and Spouses. This Appendix 3 shall not affect, or be taken into account in determining, the retirement benefits or any other benefits under the Plan of any Employee other than a Special Retiree.

(b)     Immediately after June 1, 1996, this Appendix 3 shall be deemed to be deleted from the Plan automatically, without the necessity of any further amendment to the Plan or any other action by the Board of Directors or any other party, and this Appendix 3 shall thereafter have no further force or effect; provided that, with respect to any Special Retiree who retires pursuant to this Appendix 3 after June 1, 1996, this Appendix 3 continues to be effective through the Special Retiree's Qualified Retirement Date, and shall automatically cease to be effective immediately thereafter. After it has ceased to be effective and has been deemed to be deleted from the Plan, this Appendix 3 shall continue to apply to determining the right to an Accrued Benefit of each Special Retiree and his or her beneficiaries and the computation of such retirement benefits.

(c)     The Program is voluntary and elective. No Employee shall be required to elect to retire under the Program.

A3.3   Elections

(a)     Any Eligible Participant shall be entitled to elect to retire under the Program on the Qualified Retirement Date. Any Eligible Participant who wishes to elect to Retire under the Program must submit to Corporate Benefits a completed and signed election form, in such manner as may be required by the Administrator, designating a Qualified

Retirement Date as his or her Retirement Date.

(b)     An election to retire under the Program shall not be effective unless a completed and signed election form designating a VERB-Benefit Commencement Date is received by Corporate Benefits before the expiration of the Election Period or is postmarked before the expiration of the Election Period and is subsequently received by Corporate Benefits.  An election to retire under the Program may be modified or revoked by giving written notice to Corporate Benefits in a form and in a manner acceptable to Corporate Benefits on or before the expiration of the election period (and any applicable revocation period).  After a revocation, an election to retire under the Program may be made again at any time before the expiration of the Election Period.

(c)     Every Eligible Participant who does not elect to retire under the Program shall decline to retire under the Program by submitting to Corporate Benefits a completed and signed denial form in such manner as may be required by Corporate Benefits. A denial form may be revoked by submitting to Corporate Benefits before the expiration of the Election Period a completed and signed election to retire under the Program.  A denial becomes irrevocable, and an election to Retire under the Program may not be made, after the expiration of the Election Period.  If, notwithstanding the requirements set forth above in this Section A3.3, an Eligible Participant, upon the expiration of the Election Period, has submitted to Corporate Benefits neither a form election to retire under the Program nor a denial form declining to retire under the Program, then the Eligible Participant shall be deemed to have declined to retire under the Program.

(d)     Corporate Benefits reserves the right to reject the application of any Eligible Participant if, based on communications from the IRS, rejection of the application is necessary to preserve the qualification of the Plan under Code Section 401(a).  An election under this Section A3.3 by an Eligible Participant shall be effective only if Corporate Benefits does not reject his or her application to retire under the Program.  Corporate Benefits may reject such an application before or after the Eligible Participant's VERB-Benefit Commencement Date.  If an Eligible Participant's application is rejected after his or her Accrued Benefit has commenced in accordance with the terms of the Program, his or her Accrued Benefit shall be recalculated in accordance with the provisions of the Plan without regard to this Appendix 3, and his or her Accrued Benefit after such rejection shall be adjusted so that his or her entire Accrued Benefit shall be actuarial equivalent to the Accrued Benefit he or she would have received under the provisions of the Plan without regard to this Appendix 3, based on his or her actual Retirement Date and VERB-Benefit Commencement Date.

A3.4   Computation of Benefits Under the Program

(a)     Each Special Retiree shall be entitled to an enhanced retirement benefit, calculated in accordance with the provisions of the Plan as modified by this Appendix 3, instead of the Accrued Benefit that would be payable to him, without regard to this Appendix 3, under the other provisions of the Plan.  In no event shall the total pension benefit provided to a Special Retiree under such an enhanced retirement benefit be less than his or her Accrued Benefit as of his or her Retirement Date.

(b)     For the purpose of computing the retirement benefit in respect of each Special Retiree under the Program, the provisions of the Plan shall be applied to each Special Retiree as if, on his or her Qualified Retirement Date:

(i)     the Special Retiree's age were equal to his or her actual age on that date plus 5 additional years of age; and

(ii)     the Special Retiree's Years of Benefit Accrual Service were equal to his or her Years of Benefit Accrual Service (determined in accordance with the provisions of the Plan other than this Appendix 3) plus 5 additional Years of Benefit Accrual Service.

(c)     For the purpose of computing the early retirement adjustment factor under Section 3.4.1 in respect of each Special Retiree under the Program, the provisions of the Plan shall be applied to each Special Retiree as if, on his or her Qualified Retirement Date:

(i)     the Special Retiree's age were equal to his or her actual age on that date plus 5 additional years of age;

(ii)     the Special Retiree's Years of Benefit Accrual Service were equal to his or her Years of Benefit Accrual Service (determined in accordance with the provisions of the Plan other than this Appendix 3) plus 5 additional Years of Benefit Accrual Service; and

(iii)     no Special Retiree's early retirement adjustment factor under Section 3.4.1 shall be less than the age 55 reduction factor in such Section.

(d)     For the purpose of computing the supplement under Section 3.4.2, a Special Retiree shall be eligible for the supplement provide in Section 3.4.2 if he or she has attained age 45 as of his or her Qualified Retirement Date.

(e)     For purposes of subsections (b), (c), and (d) of this Section A3.4, any Employee with any part-time service, additional Years of Benefit Accrual Service, as described in such subsections, will be determined by using the following formulas:

For Employees with no full-time Service:

Average annual Hours of Service over the last 3 years of Service, multiplied by 5, and divided by 1,885 hours per year.

For Employees with part-time and full-time Service:

The greater of:

(i)     average annual Hours of Service over the last 3 years multiplied by 5 divided by 1,885 hours; and

(ii)     (1)     Actual full-time Years of Benefit Accrual Service X 1,885 plus

(2)     Part-time Years of Benefit Accrual Service X Hours of Service; divided by

(3) Total years of Service X 1,885.

(4) The result of the above calculations [(1) - (3)] is then multiplied by 5.

Except to the extent otherwise provided in this Appendix 3, the

Appendix 3:7

provisions of the Plan shall be applied to each Special Retiree on the basis of his or her actual age and the Years of Benefit Accrual Service credited to him or her pursuant to the provisions of the Plan other than this Appendix 3.

(f)     A Special Retiree may elect to defer his or her VERB Benefit Commencement Date until a later date, provided, however, that such later date may not be prior to the date on which the Special Retiree attains age 55. In the event that a Special Retiree elects to defer his or her VERB Benefit Commencement Date until a later date, his or her supplement under Section 3.4.2 shall be forfeited until his or her VERB Benefit Commencement Date.

(g)     An Special Retiree who is credited with accrued and unused vacation with MONY as of May 31, 1996, shall receive a single sum payment for such accrued and unused vacation. Neither the monetary amount nor period of time of such accrued and unused vacation shall be taken into account for the purposes of determining the Final Average Salary in computing the retirement benefit in respect of each Special Retiree under the Program.

(h)     A Special Retiree's Final Average Salary shall not include any transition payment in the nature of a separation or severance payment that is made as of his or her Qualified Retirement Date

(i)     A Special Retiree shall be eligible to receive his or her Accrued Benefit in his or her normal form of benefit described in Section 9.1 or in an optional form of benefit described in Section 9.2, provided, however, that the following additional

Appendix 3:8

restrictions shall apply:

(i)      A Special Retiree who is less than age 55 at his or her VERB Benefit Commencement Date will receive his or her pension benefits in his or her normal form of retirement benefit in Section 9.1.  When such Special Retiree attains age 55, he or she shall be eligible to elect to receive the future payments of his or her pension benefits in an optional form of benefit described in Section 9.2.

(ii)     Amount payable from a Special Retiree's Employer Contribution Account and/or Cash Balance Account on or after age 55 shall only be paid in the Special Retiree's normal form of retirement benefit under Section 9.1 or in an option form of benefit described in Section 9.2.

A3.5    Miscellaneous

(a)      If a Special Retiree dies after his or her Qualified Retirement Date, but prior to the date that payment of his or her normal retirement benefit under Section 9.1 would have commenced, his or her Surviving Spouse shall receive a Qualified Preretirement Survivor Annuity based on the Special Retiree's enhanced benefit under this Appendix 3.

(b)      In any case where a special provision set forth in a schedule to the Plan varies a Plan provision that is referred to in this Appendix 3 and that is set forth in a Section of the Plan that precedes this Appendix 3, each reference in this Appendix 3 to such Plan provision shall be deemed to refer to the provision as varied by the applicable special provision.  This Section A3.5(b) shall be interpreted and applied by the Benefits Committee in a consistent and nondiscriminatory manner in accordance with the purposes

of this Appendix 3 and of the Plan as a whole.

## APPENDIX 4.  VOLUNTARY ENHANCED PENSION PROGRAM

A4.1   Definitions

The following capitalized terms, when used in this Appendix 4, shall have the following meanings, notwithstanding any different definitions of such terms elsewhere in the Plan.

(a)      MONY means MONY Life Insurance Company.

(b)      Election Period means the period from July 22, 1999 through August 17, 1999, inclusive.

(c)      Eligible Participant means a Participant in the Plan who: (A) is actively employed by the Company on August 31, 1999, (B) either (i) is at least age 45 with ten Years of Vesting Service on August 31, 1999, or (ii) has attained his or her Early Retirement Age or Normal Retirement Age as of August 31, 1999, under the terms of the Plan in effect on the day prior to such date.  Specifically excluded from being Eligible Participants are those Employees who are (1) in a position of Executive Vice President or above, (2) Highly Compensated Employees, or (3) Field Underwriters.

In addition, Participants who:

(1)      satisfied the conditions of in (B)(i) or (B)(ii) but who as of August 31, 1999, or later are out on short term disability, long term disability, unpaid leave, military leave, FMLA leave, or jury duty; or

(2)      were Non-Highly Compensated Employees, other than Grade 200 Employees who meet the eligibility criteria in (B) and who voluntarily Terminate

Appendix 4:1

from Service during the period March 1, 1999 through June 30, 1999 or who

involuntarily Terminate from Service, unless terminated for cause, during the

period March 1, 1999 through August 31, 1999.

are Eligible Participants.  For purposes of this definition "terminated for cause" generally

means the Employee has been terminated as a result of the commission of any act of

fraud, misrepresentation, dishonesty, theft or conversion; gross or intentional misconduct

or negligence in performing job duties, conviction of a crime; or, flagrant violation of a

critical MONY policy on conduct.

    (d)    <u>VEPP-Benefit Commencement Date</u> generally means September 1, 1999.

Notwithstanding the foregoing the following special rules shall govern an Eligible

Participant's VEPP Benefit Commencement Date:

    (i)    Certain Highly Compensated Employees, and using objective

business classifications and due to bona fide business reasons, Non-Highly

Compensated Employees identified as part of a departmental group, project team

or unit requiring such date due to bona fide business reasons, will be given a VEPP

Benefit Commencement Date of March 1, 2000.  In the event of an Employee

being subject to such later VEPP Benefit Commencement Date, the Accrued

Benefit as of such date will be increased by the enhancement calculated as of

September 1, 1999.

    (ii)    The following classifications of Non-Highly Compensated

Employees have been identified for the delayed VEPP Benefit Commencement

Appendix 4:2

Date described in (d)(i):

| DEPARTMENT | BUSINESS CLASSIFICATION |
|---|---|
| Information Technology | Employees responsible for Y2K remediation work.<br>Employees supporting the New Products Platform.<br>Employees responsible for Year-End Project work.<br>WEB re-design, NOTES 5.0 or Data Analyst Employees. |
| Field Offices | MONY's Top Producer Support (TPS) Program Employees.<br>Tier 1 & Tier 2 Marketing Managers.<br>Tier 3 Business Managers. |
| IFS/Association, Selection & Policyholder Services | Business Analysts, Life/Medical Claims Personnel.<br>Life Underwriters and Underwriting Correspondents.<br>Training/TPS Training, Health Office, and Issue Management, Annuity Service and PHS Account Teams. |

(e)    Program means the Voluntary Enhanced Pension Program provided for under this Appendix, which Program is available exclusively for the benefit of Special Retirees.

(f)    Qualified Retirement Date means September 1, 1999, or, if applicable on account of (d)(i) and (ii) above, March 1, 2000.

(g)    Special Retiree means an Eligible Participant who has made an effective election under Section A4.3 of this Appendix 4 and who retires under the Program on a

Appendix 4:3

Qualified Retirement Date in accordance with the terms and conditions of the Program as set forth in this Appendix 4.

(h)    Corporate Benefits means the Department or Employee of MONY designated to accept documents.

All other capitalized terms when used in this Appendix 4 shall have the same meaning as set forth in Section 1 of the Plan.

A4.2   Temporary and Limited Application of this Section

(a)    This Appendix 4 is intended to constitute a permanent part of the Plan, but is temporary duration and limited applicability. The sole purpose of this Appendix 4 is to provide a special basis for the computation of retirement benefits payable to Special Retirees, their beneficiaries and Spouses. This Appendix 4 shall not affect, or be taken into account in determining, the retirement benefits or any other benefits under the Plan of any Employee other than a Special Retiree.

(b)    Immediately after March 1, 2000, this Appendix 4 shall be deemed to be deleted from the Plan automatically, without the necessity of any further amendment to the Plan or any other action by the Board of Directors or any other party, and this Appendix 4 shall thereafter have no further force or effect; provided that, with respect to any Special Retiree who retires pursuant to this Appendix 4 after March 1, 2000, this Appendix 4 continues to be effective through the Special Retiree's Qualified Retirement Date, and shall automatically cease to be effective immediately thereafter. After it has ceased to be effective and has been deemed to be deleted from the Plan, this Appendix 4

shall continue to apply to determining the right to an Accrued Benefit of each Special

Retiree and his or her beneficiaries and the computation of such retirement benefits.

(c)     The Program is voluntary and elective.  No Employee shall be required to

elect to retire under the Program.

A4.3   Elections

(a)     Any Eligible Participant shall be entitled to elect to retire under the Program

on the Qualified Retirement Date.  Any Eligible Participant who wishes to elect to Retire

under the Program must submit to Corporate Benefits a completed and signed election

form, in such manner as may be required by the Administrator, designating a Qualified

Retirement Date as his or her Retirement Date.

(b)     An election to retire under the Program shall not be effective unless a

completed and signed election form designating a VEPP-Benefit Commencement Date is

received by Corporate Benefits before the expiration of the Election Period or is

postmarked before the expiration of the Election Period and is subsequently received by

Corporate Benefits.  An election to retire under the Program may be modified or revoked

by giving written notice to Corporate Benefits in a form and in a manner acceptable to

Corporate Benefits on or before the expiration of the election period (and any applicable

revocation period).  After a revocation, an election to retire under the Program may be

made again at any time before the expiration of the Election Period.

(c)     Every Eligible Participant who does not elect to retire under the Program

shall decline to retire under the Program by submitting to Corporate Benefits a completed

and signed denial form in such manner as may be required by Corporate Benefits. A denial form may be revoked by submitting to Corporate Benefits before the expiration of the Election Period a completed and signed election to retire under the Program. A denial becomes irrevocable, and an election to Retire under the Program may not be made, after the expiration of the Election Period. If, notwithstanding the requirements set forth above in this Section A4.3, an Eligible Participant, upon the expiration of the Election Period, has submitted to Corporate Benefits neither a form election to retire under the Program nor a denial form declining to retire under the Program, then the Eligible Participant shall be deemed to have declined to retire under the Program.

(d)     Corporate Benefits reserves the right to reject the application of any Eligible Participant if, based on communications from the IRS, rejection of the application is necessary to preserve the qualification of the Plan under Code Section 401(a). An election under this Section A4.3 by an Eligible Participant shall be effective only if Corporate Benefits does not reject his or her application to retire under the Program. Corporate Benefits may reject such an application before or after the Eligible Participant's VEPP-Benefit Commencement Date. If an Eligible Participant's application is rejected after his or her Accrued Benefit has commenced in accordance with the terms of the Program, his or her Accrued Benefit shall be recalculated in accordance with the provisions of the Plan without regard to this Appendix 4, and his or her Accrued Benefit after such rejection shall be adjusted so that his or her entire Accrued Benefit shall be actuarial equivalent to the Accrued Benefit he or she would have received under the

provisions of the Plan without regard to this Appendix 4, based on his or her actual Retirement Date and VEPP-Benefit Commencement Date.

A4.4   Computation of Benefits Under the Program

(a)      Each Special Retiree shall be entitled to an enhanced retirement benefit, calculated in accordance with the provisions of the Plan as modified by this Appendix 4, instead of the Accrued Benefit that would be payable to him, without regard to this Appendix 4, under the other provisions of the Plan.  In no event shall the total pension benefit provided to a Special Retiree under such an enhanced retirement benefit be less than his or her Accrued Benefit as of his or her Retirement Date.

(b)      For the purpose of computing the retirement benefit in respect of each Special Retiree under the Program, the provisions of the Plan shall be applied to each Special Retiree as if, on his or her Qualified Retirement Date:

(i)      the Special Retiree's age were equal to his or her actual age on that date plus 5 additional years of age; and

(ii)      the Special Retiree's Years of Benefit Accrual Service were equal to his or her Years of Benefit Accrual Service (determined in accordance with the provisions of the Plan other than this Appendix 4) plus 5 additional Years of Benefit Accrual Service.

(c)      For the purpose of computing the early retirement adjustment factor under Section 3.4.1 in respect of each Special Retiree under the Program, the provisions of the Plan shall be applied to each Special Retiree as if, on his or her Qualified Retirement

Appendix 4:7

Date:

      (i)     the Special Retiree's age were equal to his or her actual age on that date plus 5 additional years of age;

      (ii)    the Special Retiree's Years of Benefit Accrual Service were equal to his or her Years of Benefit Accrual Service (determined in accordance with the provisions of the Plan other than this Appendix 4) plus 5 additional Years of Benefit Accrual Service; and

      (iii)   no Special Retiree's early retirement adjustment factor under Section 3.4.1 shall be less than the age 55 reduction factor in such Section.

      (d)    For the purpose of computing the supplement under Section 3.4.2 in respect of each Special Retiree under the Program, the provisions of the Plan shall be applied to each Special Retiree as if, on his or her Qualified Retirement Date, the Special Retiree's Years of Benefit Accrual Service were equal to his or her Years of Benefit Accrual Service (determined in accordance with the provisions of the Plan other than this Appendix 4) plus 5 additional Years of Benefit Accrual Service.  In addition, notwithstanding the restrictions of the first sentence of Section 3.4.2, a Special Retiree shall be eligible for the supplement provide in Section 3.4.2 if he or she has attained age 45 as of his or her Qualified Retirement Date.

      (e)    For purposes of subsections (b), (c), and (d) of this Section A4.4, any Employee with any part-time service, additional Years of Benefit Accrual Service, as described in such subsections, will be determined by using the following formulas:

For Employees with no full-time Service:

Average annual Hours of Service over the last 3 years of Service, multiplied by 5, and divided by 1,885 hours per year.

For Employees with part-time and full-time Service:

The greater of:

(i)     average annual Hours of Service over the last 3 years multiplied by 5 divided by 1,885 hours; and

(ii)     (1)     Actual full-time Years of Benefit Accrual Service X 1,885

plus

(2)     Part-time Years of Benefit Accrual Service X Hours of Service; divided by

(3) Total years of Service X 1,885.

(4) The result of the above calculations [(1) – (3)] is then multiplied by 5.

Except to the extent otherwise provided in this Appendix 4, the provisions of the Plan shall be applied to each Special Retiree on the basis of his or her actual age and the Years of Benefit Accrual Service credited to him or her pursuant to the provisions of the Plan other than this Appendix 4.

(f)     A Special Retiree may elect to defer his or her VEPP Benefit Commencement Date until a later date, provided, however, that such later date may not be prior to the date on which the Special Retiree attains age 55.  In the event that a Special

Retiree elects to defer his or her VEPP Benefit Commencement Date until a later date, his or her supplement under Section 3.4.2 shall be forfeited until his or her VEPP Benefit Commencement Date.

(g)     An Special Retiree who is credited with accrued and unused vacation with MONY as of August 31, 1999, shall receive a single sum payment for such accrued and unused vacation.  Neither the monetary amount nor period of time of such accrued and unused vacation shall be taken into account for the purposes of determining the Final Average Salary in computing the retirement benefit in respect of each Special Retiree under the Program.

(h)     A Special Retiree's Final Average Salary shall not include any transition payment in the nature of a separation or severance payment that is made as of his or her Qualified Retirement Date

(i)     A Special Retiree shall be eligible to receive his or her Accrued Benefit in his or her normal form of benefit described in Section 9.1 or in an optional form of benefit described in Section 9.2, provided, however, that the following additional restrictions shall apply:

(i)     A Special Retiree who is less than age 55 at his or her VEPP Benefit Commencement Date will receive his or her pension benefits in his or her normal form of retirement benefit in Section 9.1.  When such Special Retiree attains age 55, he or she shall be eligible to elect to receive the future payments of his or her pension benefits in an optional form of benefit described in Section 9.2.

Appendix 4:10

   (ii) Amount payable from a Special Retiree's Employer Contribution Account and/or Cash Balance Account on or after age 55 shall only be paid in the Special Retiree's normal form of retirement benefit under Section 9.1 or in an option form of benefit described in Section 9.2.

A4.5 <u>Miscellaneous</u>

   (a) If a Special Retiree dies after his or her Qualified Retirement Date, but prior to the date that payment of his or her normal retirement benefit under Section 9.1 would have commenced, his or her Surviving Spouse shall receive a Qualified Preretirement Survivor Annuity based on the Special Retiree's enhanced benefit under this Appendix 4.

   (b) In any case where a special provision set forth in a schedule to the Plan varies a Plan provision that is referred to in this Appendix 4 and that is set forth in a Section of the Plan that precedes this Appendix 4, each reference in this Appendix 4 to such Plan provision shall be deemed to refer to the provision as varied by the applicable special provision.  This Section A4.5(b) shall be interpreted and applied by the Benefits Committee in a consistent and nondiscriminatory manner in accordance with the purposes of this Appendix 4 and of the Plan as a whole.

## APPENDIX 5. HISTORICAL PROVISIONS

The following are historical provisions that have been removed from the restatement of the Plan document. The terms used in these provisions of the Plan may have been amended in this restatement and thus the version of the Plan in effect at the time these provisions were applicable should be looked to for further detail.

A5.1   Participation – Participation for Employees Hired After 1975 and Prior to 1985

Each Employee of MONY whose Service begins on or after January 1, 1976, and prior to January 1, 1985, shall become a Participant in this Plan on his or her Employment Commencement Date if he or she then:

(a)     is employed as a salaried Employee,

(b)     has attained age 25,

(c)     is hired by MONY as an Employee at least 5 years prior to his or her Normal Retirement Date, and

(d)     is expected to complete 1 Year of Vesting Service.

If the Employee does not become a Participant in this Plan on his or her Employment Commencement Date, because he or she has not yet attained age 25, then he or she shall become a Participant in this Plan upon the occurrence of his or her 25th birthday, if he or she is still then employed as a salaried Employee, and he or she is then expected to complete or has actually completed 1 Year of Vesting Service. That part of the preceding sentence which refers to "age 25" and "25th birthday" is applicable only if such Employee was no longer an Employee of MONY on January 1, 1985. As of January 1, 1985, in the

case of any Employee, described in this Section A5.1, who has not yet become a Participant in this Plan solely because he or she has not yet attained age 25, such Employee instead need only attain age 21 to satisfy this Plan's age requirement.  If the Employee does not become a Participant in this Plan on his or her Employment Commencement Date because he or she was not then expected to complete 1 Year of Vesting Service, then he or she shall become a Participant in this Plan on the earliest anniversary of his or her Employment Commencement Date on which he or she has actually completed 1 Year of Vesting Service, if he or she is then still employed as a salaried Employee, has attained age 25, (or age 21, whichever is applicable, as discussed in the preceding sentence), and has not yet attained his or her Normal Retirement Date.

A5.2   Participation – Participation for Employees Hired After 1984 and Prior to 1989

Each Employee of MONY whose service begins on or after January 1, 1985, but before January 1, 1989, shall become a Participant in this Plan on his or her Employment Commencement Date if he or she then:

(a)   is employed as a salaried Employee,

(b)   attains age 21, and

(c)   is expected to complete 1 Year of Vesting Service.

If the Employee does not become a Participant in this Plan on his or her Employment Commencement Date, because he or she has not yet attained age 21, then he or she shall become a Participant in this Plan upon the occurrence of his or her 21st birthday, if he or she is still then employed as a salaried Employee, and he or she is then expected to

Appendix 5:2

complete or has actually completed 1 Year of Vesting Service during an eligibility computation period measured from his or her Employment Commencement Date.  If the Employee does not become a Participant in this Plan on his or her Employment Commencement Date because he or she was not then expected to complete 1 Year of Vesting Service, then he or she shall become a Participant in this Plan on the earliest anniversary of his or her Employment Commencement Date on which he or she has actually completed 1 Year of Vesting Service, if he or she is then still employed as a salaried Employee and has attained age 21.

As of January 1, 1989, in the case of any Employee described in this Section A5.2, who has not yet become a Participant in this Plan solely because he or she has not yet attained age 21, such Employee shall become a Participant in the Plan as of January 1, 1989.

A5.3   Participation – Participation for Employees Hired After 1989 and Prior to August 26, 1999

Each Employee of MONY whose service begins on or after January 1, 1989, but prior to August 26, 1999, shall become a Participant in this Plan on his or her Employment Commencement Date if he or she then:

(a)    is employed as a salaried Employee, and

(b)    is expected to complete 1 Year of Vesting Service.

If the Employee does not become a Participant in this Plan on his or her Employment Commencement Date because he or she was not then expected to complete 1 Year of Vesting Service, then he or she shall become a Participant in this Plan on the earliest

anniversary of his or her Employment Commencement Date on which he or she has actually completed 1 Year of Vesting Service, if he or she is then still employed as an Employee.

A5.4   Participation – Participation for Employees Hired On or After August 26, 1999 and Prior to January 1, 2001

Each Employee of MONY whose service begins on or after August 26, 1999, but prior to January 1, 2001, shall become a Participant in this Plan on his or her Employment Commencement Date as follows:

Each Employee shall automatically become a Participant in the Plan on the date on which the Employee becomes an Eligible Employee.  The Administrator shall take any necessary or appropriate action to enroll each Eligible Employee who has met the requirements of this Section 2 and, if it is determined that an Eligible Employee has for any reason not been a Participant in the Plan, such Eligible Employee shall be considered a Participant retroactively.

A5.5   Accrued Benefit – Calculation After January 1, 1989 and Prior to January 1, 1994

Effective January 1, 1989 through December 31, 1993, a Participant's Accrued Benefit equaled the sum of:

for Participants born before January 1, 1938:

(a) (i)  .75 percent of Final Average Salary not in excess of the Covered Compensation; plus (ii) 1.5 percent of Final Average Salary in excess of the Covered Compensation;

multiplied by

(b)     Years of Benefit Accrual Service, but not to exceed 35 Years of Benefit Accrual Service.

for Participants born after December 31, 1937 and before January 1, 1955:

(a) (i)  .8 percent of Final Average Salary not in excess of the Covered Compensation; plus (ii) 1.5 percent of Final Average Salary in excess of the Covered Compensation;

multiplied by

(b)     Years of Benefit Accrual Service, but not to exceed 35 Years of Benefit Accrual Service.

for Participants born after December 31, 1954:

(a) (i)  .85 percent of Final Average Salary not in excess of the Covered Compensation; plus (ii) 1.5 percent of Final Average Salary in excess of the Covered Compensation;

multiplied by

(b)     Years of Benefit Accrual Service, but not to exceed 35 Years of Benefit Accrual Service.

A5.6   Employer Contributions to Participants' Employer Contribution Accounts On or Prior to May 28, 1999

Subject to the limitations in this Section 3, for each Plan Year where applicable, the Employer shall allocate Defined Contributions and Company Contributions to each Participant's Employer Contribution Account.  A Defined Contribution shall be allocated to a Participant's Defined Contribution Subaccount in the amount of 2% of a Participant's

Compensation each payroll period.  A Company Contribution shall be allocated to a Participant's Company Contribution Account in an amount, if any, equal to 100% of the percentage of Compensation up to 3% which an Eligible Employee has elected to defer under MIP as of each payroll period.

## APPENDIX 6.  GUST AMENDMENTS

A6.1   Repeal of Family Aggregation Rules – Compensation

Prior to January 1, 1997, the definition of Compensation in Section 1.22 of the Plan was subject to the following limitation:

In determining Compensation for purposes of this dollar limitation, the Family Member rules of Code Section 414(q)(6) shall apply with respect to an Employee who is a 5% owner or one of the ten Highly Compensated Employees paid the greatest Compensation during the Plan Year for purposes of the adjusted Code Section 401(a)(17) limitation, except that in applying such rules, the term "family" shall include only the Employee's Spouse and any lineal descendants who have not attained age 19 before the close of the Plan Year.  If, as a result of the application of such Family Member rules, the adjusted Code Section 401(a)(17) limitation is exceeded, then the adjusted Code Section 401(a)(17) limitation shall be prorated among the affected individuals in proportion to each such individual's Compensation as determined under this definition prior to the application of the adjusted Code Section 401(a)(17) limitation.

A6.2   Change in Definition of Actuarial Equivalent for GATT

Prior to January 1, 2000, the definition of Actuarial Equivalent in Section 1.3 of the Plan read as follows:

Actuarial Equivalent means, unless otherwise specified in the Plan, a benefit of equivalent value to another form of benefit; provided, however, that the

interest rate used to determine the Actuarial Equivalent of any lump-sum payment that may be made under the Plan shall not be greater than:

(a) the applicable interest rate if the accrued benefit (using such rate) is not in excess of $25,000; or

(b) 120 percent of the applicable interest rate if the lump-sum payment exceeds $25,000 (as determined under Section 1.3(a)).

In no event shall the present value determined under Section 1.3(b) be less than $25,000.

For purposes of Sections 1.3(a) and 1.3(b) and determining whether an involuntary cash out may be made, the applicable interest rate shall mean the interest rate or rates which would be used by the PBGC as of 120 days prior to the Benefit Commencement Date in which a distribution occurs for purposes of determining the present value of a Participant's benefits under the Plan according to PBGC rules for deferred benefits on that date. For purposes of determining the lump sum value of a retirement benefit, the PBGC immediate annuity rate as of 120 days prior to the Benefit Commencement Date is used. In no event shall the amount of any benefit or annuity determined hereunder exceed the maximum benefit permitted under Code Section 415.

For other purposes, including when determining the normal form of benefit for the Employer Contribution Account Balance, the following assumptions shall be used in calculating Actuarial Equivalent value:  7.5% interest and the 1951

Group Annuity Table Projected to 1972 by Scale C, with a 3-year setback for both males and females.

A6.3   Repeal of Family Aggregation Rules – Excess Aggregate Contributions

Prior to January 1, 1997, the definition of Excess Aggregate Contributions in Section 1.43 of the Plan was subject to the following limitation:

Excess Aggregate Contributions means, with respect to any Plan Year, the amount of Company Contributions, if any, in excess of the maximum amount permitted by the Contribution Percentage Test of Section 3.12 allocable to a Participant who is a Highly Compensated Employee or Family Member.

A6.4   Repeal of Family Aggregation Rules – Family Member

Prior to January 1, 1997, the Plan included a definition of Family Member in Section 1 of the Plan that read as follows:

Family Member means the Spouse or a lineal ascendant or descendant of a 5% owner of the Company or an Affiliate or one of the top-10 paid Highly Compensated Employees, or the Spouse of any such lineal ascendant or descendant.  The determination of who is a Family Member will be made in accordance with Code Section 414(q).

A6.5   Modification of Definition of Highly Compensated Employee

Prior to January 1, 1997, the definition of Highly Compensated Employee in Section 1.49 of the Plan read as follows:

Highly Compensated Employees means, with respect to any Plan Year, an

Employee who performs services for the Company or an Affiliate during the Plan Year, and during the Plan Year (1) is a 5% owner; (2) receives compensation in excess of $75,000, as adjusted pursuant to Code Section 415(d); (3) receives compensation in excess of $50,000, as adjusted pursuant to Code Section 415(d) and is in the top-paid 20% of Employees; or (4) is an officer of the Company or an Affiliate and receives compensation during such year in excess of 50% of the dollar limitation in effect under Code Section 415(b)(1)(A). The determination of who is a Highly Compensated Employee, including the determination of who is an officer, the top-paid 20% of Employees, and the compensation that is considered will be made in accordance with Code Section 414(q).

A6.6   Repeal of Family Aggregation Rules – Non-Highly Compensated Employee

Prior to January 1, 1997, the definition of Non-Highly Compensated Employee in Section 1.58 of the Plan read as follows:

Non-Highly Compensated Employee means an Employee of the Company or an Affiliate who is neither a Highly Compensated Employee nor a Family Member of a Highly Compensated Employee.

A6.7   Switch to Prior Year Testing for ACP Test

Prior to January 1, 1997, the contribution percentage test in Section 3.12 of the Plan read as follows:

Company Contributions made on behalf of Highly Compensated Employees for each Plan Year must satisfy one of the following tests:

(a)     The Average Contribution Percentage for Participants who are Highly Compensated Employees for the Plan Year shall not exceed the Average Contribution Percentage for Participants who are Non-Highly Compensated Employees for the Plan Year multiplied by 1.25; or

(b)     The Average Contribution Percentage for Participants who are Highly Compensated Employees for the Plan Year shall not exceed the Average Contribution Percentage for Participants who are Non-Highly Compensated Employees for the Plan Year multiplied by two, provided that the Average Contribution Percentage for Participants who are Highly Compensated Employees does not exceed the Average Contribution Percentage for Participants who are Non-Highly Compensated Employees by more than two percentage points.

A6.8    Repeal of Family Aggregation Rules – ACP Test

Prior to January 1, 1997, Section 3.12.1(b) of the Plan read as follows:

(b)     For purposes of determining the Contribution Percentage of a Participant who is a 5% owner or who is one of the ten most highly paid Highly Compensated Employees, the contributions and Compensation of such Participant shall include the contributions and Compensation of Family Members.  Such Family Members shall be disregarded in determining the Contribution Percentage for eligible Participants who are Non-Highly Compensated Employees.

A6.9    Repeal of Code Section 415(e) – 415 Limits

Prior to January 1, 2000, an additional last paragraph of Section 4 of the Plan read

as follows:

If the sum of a Participant's Defined Benefit Fraction (as defined in Section 415) and Defined Contribution Fraction (as defined in Section 415) otherwise would exceed 1.0, then the Participant's Defined Benefit Fraction shall be reduced, to the extent necessary, by limiting benefits provided under this plan until such sum equals 1.0. Prior to January 1, 1994, the Participant's Defined Contribution Fraction shall be reduced.

A6.10 Repeal of Code Section 415(e) – Top Heavy Rules

Prior to January 1, 2000, Section 8.5 of the Plan read as follows:

(a)    For each Plan Year that the Plan is a Top Heavy Plan, 1.0 shall be substituted for 1.25 as the multiplicand of the dollar limitation in determining the denominator of the defined benefit plan fraction and of the defined contribution plan fraction for purposes of Section 4 of the Plan and Section 415(e) of the Code.

(b)    If, after substituting 90% for 60% wherever the latter appears in Section 416(g) of the Code, the Plan is not determined to be a Top Heavy Plan then the provisions of Section 8.5(a) shall not be applicable if the Accrued Benefit for each Participant who is not a Key Employee is determined in accordance with Section 8.4(a) by substituting "three percent" for "two percent" in Section 8.4(a) and increasing "20%" in Section 8.4(a) by one for each Plan Year described in the last sentence of Section 8.4(a), but not beyond "30%".

A6.11 Implementation of Permissible Waiver of Plan Distribution Waiting Period

Prior to September 27, 1999, Section 6.5.2 of the Plan read as follows:

If the value of a Participant's vested Accrued Benefit exceeds (or at the time of any prior distribution exceeded) $3,500, and the Accrued Benefit is immediately distributable, the Participant and the Participant's Spouse must consent to any distribution of such Accrued Benefit. The consent of the Participant shall be obtained in writing within the 90-day period ending on the Benefit Commencement Date. The Plan Administrator shall notify the Participant of the right to defer any distribution. Such notification shall include a general description of the material features, and an explanation of the relative values of, the optional forms of benefit available under the Plan in a manner that would satisfy the notice requirements of section 417(a)(3) of the Code, and shall be provided no less than 30 days and no more than 90 days prior to the Benefit Commencement Date. However, distribution may commence less than 30 days after the notice described in the preceding sentence is given, provided the distribution is one to which sections 401(a)(11) and 417 of the Internal Revenue Code do not apply, the Plan Administrator clearly informs the Participant that the Participant has a right to a period of at least 30 days after receiving the notice to consider the decision of whether or not to elect a distribution (and, if applicable, a particular distribution option), and the Participant, after receiving the notice, affirmatively elects a distribution.

## APPENDIX 7.  EGTRRA "GOOD FAITH" AMENDMENTS

A7.1   Preamble

(a)    This Appendix 7 is adopted to reflect certain provisions of the Economic Growth and Tax Relief Reconciliation Act of 2001 ("EGTRRA").  This Section is intended as good faith compliance with the requirements of EGTRRA and is to be construed in accordance with EGTRRA and guidance issued thereunder.  Except as otherwise provided, this Section shall be effective as of the first day of the first Plan Year beginning after December 31, 2001, and shall end December 31, 2010, unless otherwise extended by law or otherwise.

(b)    This Appendix 7 shall supersede the provisions of the Plan to the extent those provisions are inconsistent with the provisions of this Appendix.

A7.2   Increase in Compensation Limit

(a)    Notwithstanding any provision in the Plan to the contrary, for Plan Years beginning on or after January 1, 2002, the annual Compensation of each Participant taken into account in determining benefit accruals in any Plan Year shall not exceed $200,000. Annual Compensation means Compensation during the Plan Year or such other consecutive 12-month period over which Compensation is otherwise determined under the Plan (the determination period).  For purposes of determining benefit accruals in a Plan Year beginning after December 31, 2001, Compensation for any prior determination period shall be limited to $200,000.

(b)    The $200,000 limit on annual compensation in paragraph (a) shall be

adjusted for cost of living increases in accordance with Code Section 401(a)(17)(B).  The

cost of living adjustment in effect for a calendar year applies to annual Compensation for

the determination period that begins with or within such calendar year.

A7.3   Limitations on Benefits

(a)   Effective Date

Notwithstanding Section 4, this Section A7.3 shall apply for Plan Years ending

after December 31, 2001.

(b)   Effect on Participants

Benefit increases resulting from the increase in the limitations of Code Section

415(b) will be provided to all current and former Participants (with benefits limited by

Code Section 415(b)) who have a Defined Benefit under the Plan immediately prior to the

effective date of this Section A7.3 (other than a Defined Benefit resulting from a benefit

increase solely as a result of the increases in limitations under Code Section 415(b)).

(c)   Definitions

(i)   Defined Benefit Dollar Limitation

The "defined benefit dollar limitation" is $160,000, as adjusted, effective

January 1 of each year, under Code Section 415(d) in such manner as the Secretary

of the Treasury shall prescribe, and payable in the form of a Straight Life Annuity.

A defined benefit dollar limitation as adjusted under Code Section 415(d) will

apply to Plan Years ending with or within the calendar year for which the

adjustment applies.

(ii)     Defined Benefit Compensation Limitation

100 percent of a Participant's average Compensation for his or her high 3 years.  In the case of a Participant who has separated from service, the defined benefit compensation limitation applicable to the Participant will be automatically adjusted by multiplying such limitation by the cost of living adjustment factor prescribed by the Secretary of the Treasury under Code Section 415(d) in such manner as the Secretary of the Treasury shall prescribe.  The adjusted compensation limit will apply to Plan Years ending with or within the calendar year of the date of the adjustment.

(iii)     Maximum Permissible Benefit

The "maximum permissible benefit" is the lesser of the defined benefit dollar limitation or the defined benefit compensation limitation (both adjusted where required, as provided in (1) and, if applicable, in (2) or (3) below).

(1)     If the Participant has fewer than 10 years of participation in the Plan, the defined benefit dollar limitation shall be multiplied by a fraction, (i) the numerator of which is the number of years (or part thereof) of participation in the Plan and (ii) the denominator of which is 10. In the case of a Participant who has fewer than 10 years of service with the Company and its Affiliates, the defined benefit compensation limitation shall be multiplied by a fraction, (i) the numerator of which is the number of Years of Vesting Service (or part thereof) with the Company and its

Affiliates and (ii) the denominator of which is 10.

(2)      If payment of a Participant's Defined Benefit begins prior to age 62, the defined benefit dollar limitation applicable to the Participant at such earlier age is an annual benefit payable in the form of a Straight Life Annuity beginning at the earlier age that is the Actuarial Equivalent of the defined benefit dollar limitation applicable to the participant at age 62 (adjusted under (1) above, if required).  The defined benefit dollar limitation applicable at an age prior to age 62 is determined as the lesser of (i) the Actuarial Equivalent (at such age) of the defined benefit dollar limitation computed using the interest rate and mortality table (or other tabular factor) specified in the definition of Actuarial Equivalent and (ii) the actuarial equivalent (at such age) of the defined benefit dollar limitation computed using a 5 percent interest rate and the applicable mortality table as defined in the definition of Actuarial Equivalent.  Any decrease in the defined benefit dollar limitation determined in accordance with this paragraph (2) shall not reflect a mortality decrement if benefits are not forfeited upon the death of the Participant.  If any benefits are forfeited upon death, the full mortality decrement is taken into account.

(3)      If payment of a Participant's Defined Benefit begins after the Participant attains age 65, the defined benefit dollar limitation applicable to the Participant at the later age is the annual benefit payable in the form of a

Straight Life Annuity beginning at the later age that is the Actuarial Equivalent of the defined benefit dollar limitation applicable to the Participant at age 65 (adjusted under (1) above, if required). The Actuarial Equivalent of the defined benefit dollar limitation applicable at an age after age 65 is determined as (i) the lesser of the Actuarial Equivalent (at such age) of the defined benefit dollar limitation computed using the interest rate and mortality table (or other tabular factor) specified in the definition of Actuarial Equivalent and (ii) the Actuarial Equivalent (at such age) of the defined benefit dollar limitation computed using a 5 percent interest rate assumption and the applicable mortality table as defined in the definition of Actuarial Equivalent. For these purposes, mortality between age 65 and the age at which benefits commence shall be ignored.

A7.4   Modification of Top Heavy Rules

(a)   Effective Date

This Section A7.4 shall apply for purposes of determining whether the Plan is a top heavy plan under Code Section 416(g) for Plan Years beginning after December 31, 2001, and whether the plan satisfies the minimum benefits requirements of Code Section 416(c) for such years. This Section A7.4 amends Section 8 of the Plan.

(b)   Determination of Top Heavy Status

(i)   Key Employee

Key Employee means any Employee or former Employee (including any

deceased Employee) who at any time during the Plan Year that includes the determination date was an officer of the Employer having annual compensation greater than $130,000 (as adjusted under Code Section 416(i)(1) for Plan Years beginning after December 31, 2002), a 5-percent owner of the Employer, or a 1-percent owner of the Employer having annual compensation of more than $150,000. The determination of who is a key Employee will be made in accordance with Code Section 416(i)(1) and the applicable regulations and other guidance of general applicability issued thereunder.

(ii)     Determination of Present Values and Amounts

This Section A7.4(b)(ii) shall apply for purposes of determining the present values of Defined Benefits of Participants as of the determination date.

(1)     Distributions During Year Ending on the Determination Date

The present values of an Employee's Defined Benefit as of the determination date shall be increased by the distributions made with respect to the Employee under the Plan and any plan aggregated with the Plan under Code Section 416(g)(2) during the 1-year period ending on the determination date. The preceding sentence shall also apply to distributions under a terminated plan which, had it not been terminated, would have been aggregated with the Plan under Code Section 416(g)(2)(A)(i). In the case of a distribution made for a reason other than separation from service, death, or disability, this provision shall be applied by substituting 5-year

period for 1-year period.

(2)    Employees not Performing Services During Year Ending on the Determination Date

The Defined Benefit of any individual who has not performed services for the Company or an Affiliate during the 1-year period ending on the determination date shall not be taken into account.

(c)    Minimum Benefits

For purposes of satisfying the minimum benefit requirements of Code Section 416(c)(1) and the Plan, in determining Years of Vesting Service with the Company or an Affiliate, any service with the Company or an Affiliate shall be disregarded to the extent that such service occurs during a Plan Year when the Plan benefits (within the meaning of Code Section 410(b)) no key employee or former key employee.

(d)    Contributions Under Other Plans

The Plan shall satisfy the minimum benefit requirement to the extent not met by the Investment Plan Supplement For Employees and Field Underwriters of MONY Life Insurance Company or the Retirement Plan for Field Underwriters of MONY Life Insurance Company, for Participants covered under such plans. The catch-all provision of the preceding sentence shall be subordinate to a similar catch-all provision provided in any of the plans listed in the preceding sentence.